COPY

1 | COUGHLIN STOIA GELLER
RUDMAN & ROBBINS LLP
2 | SHAWN A. WILLIAMS (213113)
100 Pine Street, Suite 2600
3 | San Francisco, CA 94111
Telephone: 415/288-4545
4 | 415/288-4534 (fax)
shawnw@csgrr.com
5 | – and –
DARREN J. ROBBINS (168593)
6 | DAVID C. WALTON (167268)
CATHERINE J. KOWALEWSKI (216665)
7 | 655 West Broadway, Suite 1900
San Diego, CA 92101
8 | Telephone: 619/231-1058
619/231-7423 (fax)
9 | darrenr@csgrr.com
davew@csgrr.com
10 | katek@csgrr.com

E-filing

11 | Attorneys for Plaintiff

12 | [Additional counsel appear on signature page.]

13

CRB

14 | UNITED STATES DISTRICT COURT

15 | NORTHERN DISTRICT OF CALIFORNIA

CV 09 5473

16 | HARRY W. PLICHTA, Individually and on ) No.
Behalf of All Others Similarly Situated, )
17 | ) CLASS ACTION
Plaintiff, )
18 | ) COMPLAINT FOR VIOLATION OF THE
vs. ) FEDERAL SECURITIES LAWS
19 | )
SUNPOWER CORPORATION, THOMAS H. )
20 | WERNER and DENNIS V. ARRIOLA, )
)
21 | Defendants. )
————————————————————— ) DEMAND FOR JURY TRIAL
22

23

24

25

26

27

28

**INTRODUCTION**

1.      This is a federal securities class action on behalf of persons who purchased or otherwise acquired the publicly traded securities of SunPower Corporation ("Sun" or the "Company") from April 17, 2008 through November 16, 2009, inclusive (the "Class Period"), seeking to recover damages caused by defendants' violations of the Securities Exchange Act of 1934 (the "1934 Act").

2.      Sun engages in the design, manufacture and marketing of solar electric power technologies worldwide.

3.      Throughout the Class Period, defendants issued materially false and misleading financial statements, press releases, and Securities and Exchange Commission ("SEC") filings. Specifically, the financial statements and information issued by the Company in its press releases, quarterly reports for 2008 and 2009 and annual report for the fiscal year 2008 were false and misleading because defendants included unsubstantiated accounting entries related to cost of goods sold in Sun's Philippines operations and issued false and misleading certifications, required by the Sarbanes-Oxley Act of 2002 ("SOX"), attesting to the accuracy of Sun's financial statements and the adequacy of its internal controls over financial reporting.  As a result of defendants' false and misleading statements, Sun's publicly traded securities traded at artificially inflated prices during the Class Period.

4.      On November 16, 2009, after the market closed, Sun filed a report on Form 8-K with the SEC stating that, because of accounting improprieties, the Company's previously issued interim financial statements for each of the 2009 quarterly periods, the previously reported financial results for the fiscal year ending December 28, 2008, the financial information in its quarterly reports on Form 10-Q for the 2009 quarters, the financial information in the 2008 annual report on Form 10-K,

1    and the guidance provided by the Company for the 2009 fiscal year, should no longer be relied upon.

2    On this news, Sun's stock price fell.

3                                  **JURISDICTION AND VENUE**

4        5.      Jurisdiction is conferred by §27 of the 1934 Act.  The claims asserted herein arise

5    under §§10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5.

6        6.      Venue is proper in this District pursuant to §27 of the 1934 Act.  Many of the false

7    and misleading statements were made in or issued from this District.

8        7.      Sun's principal executive offices are located at 3939 North First Street, San Jose,

9    California.

10                                      **PARTIES**

11       8.      Plaintiff, Harry W. Plichta, as set forth in the accompanying certification,

12   incorporated by reference herein, purchased Sun securities at artificially inflated prices during the

13   Class Period and has been damaged thereby.

14       9.      Defendant Sun has its principal executive offices located in San Jose, California.  Sun

15   has operations throughout the world.  Sun manufactures its solar cells at two facilities in the

16
17   Philippines.  The first facility, or FAB1, has 215,000 square feet and began operations in the fall of

18   2004.  Sun operates four solar cell manufacturing lines, with a total rated manufacturing capacity of

19   108 megawatts per year at FAB1.  In August 2006, Sun purchased a 344,000 square foot building in

20
21   the Philippines, or FAB2.  This building is approximately 20 miles from FAB1 and was constructed

22   to house up to twelve solar cell manufacturing lines.  FAB2 began operations in the summer of 2007

23   and operates eight solar cell manufacturing lines, with a total rated manufacturing capacity of 306

24   megawatts per year. By the end of 2009, Sun plans to operate 16 solar cell manufacturing lines in

25   total with an aggregate manufacturing capacity of 574 megawatts per year.  During the Class Period,

26   the Company's common stock traded on the NasdaqGS under the ticker SPWRA.

27
28

10. Defendant Thomas H. Werner ("Werner"), is and was during the Class Period, Sun's Chief Executive Officer ("CEO"). Werner signed the certifications required by SOX and was quoted in Sun's press releases.

11. Defendant Dennis V. Arriola ("Arriola"), is and has been Sun's Chief Financial Officer ("CFO"), Principal Accounting Officer and Senior Vice President since October 20, 2008 and reports directly to defendant Werner. Arriola signed Sun's SEC Forms 10-Q and the certifications required by SOX commencing with Sun's Form 10-K for fiscal year 2008, dated February 26, 2009.

12. Werner and Arriola are referred to herein as the Individual Defendants.

13. During the Class Period, the Individual Defendants, because of their positions within the Company, were privy to non-public information concerning the Company's business, finances, products, markets, and present and future business prospects, as they had access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to him in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

14. The Individual Defendants, because of their positions of control and authority were able to and did control the content of Sun's financial statements, SEC filings, press releases and other public statements pertaining to the Company during the Class Period. They were provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, the Individual Defendants are responsible for the accuracy of the public reports and

press releases detailed herein and are therefore primarily liable for the representations contained therein.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

15.    Plaintiff brings this action as a class action pursuant to Rules 23 of the Federal Rules of Civil Procedure on behalf of a class consisting of all persons who purchased or otherwise acquired the publicly traded securities of Sun during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

16.    The members of the Class are so numerous that joinder of all members is impracticable. Sun has over 54 million shares of Class A common stock outstanding and over 42 million shares of Class B common stock outstanding. Throughout the Class Period, Sun's common stock was actively traded on the NasdaqGS. In addition, Sun sold nine million shares of common in a stock offering dated May 4, 2009. While the exact number of Class members is unknown to plaintiff a this time and can only be ascertained through appropriate discovery, plaintiff believes that there are at least hundreds, if not thousands, of members in the proposed Class. Members of the Class may be identified from records maintained by Sun and/or its transfer agent and may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in securities class actions.

17.    Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class were similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

18.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

19.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts and omissions as alleged herein;

(b)     whether statements made by defendants to the investing public during the Class Period misrepresented and/or omitted material facts about the business, financial performance, and management of Sun;

(c)     whether the prices of Sun publicly traded securities were artificially inflated during the Class Period; and

(d)     the extent to which the members of the Class have sustained damages and the proper measure of damages.

20.     As class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to redress individually the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

21.     On April 17, 2008, Sun issued a press release announcing its financial results for the first quarter of 2008 and included its financial statements for that quarter in the release.

22.     On May 9, 2008, Sun filed a quarterly report with the SEC that contained its quarterly financial statements consistent with the financial information included in its April 17, 2008 press release.  In addition, the Form 10-Q contained the certifications required by SOX, signed by defendant Werner attesting that:

(a)      the financial statements, and other financial information included in the report, fairly presented in all material respects the financial condition, results of operation and cash flows of Sun;

(b)      that Sun's internal controls over financial reporting were designed to ensure the reliability of its financial reporting and the preparation of its financial statements; and

(c)      the information in the 10-Q fairly presented the financial condition and results of operations of Sun.

23.      On July 17, 2008, Sun issued a press release announcing its financial results for the second quarter of 2008 and included its financial statements for that quarter.

24.      On August 8, 2008, Sun filed a quarterly report with the SEC that contained its quarterly and six month financial statements consistent with the financial information included in its July 17, 2008 press release.  In addition, the Form 10-Q contained the certifications required by SOX, signed by defendant Werner attesting that:

(a)      the financial statements, and other financial information included in the report, fairly presented in all material respects the financial conditions, results of operation and cash flows of Sun;

(b)      that Sun's internal controls over financial reporting were designed to ensure the reliability of its financial reporting and the preparation of its financial statements; and

(c)      the information in the 10-Q fairly presented the financial condition and results of operations of Sun.

25.      On October 16, 2008, Sun issued a press release announcing its financial results for the third quarter of 2008 and included its financial statements for that quarter in the release.

26.      On November 7, 2008, Sun filed a quarterly report with the SEC that contained its quarterly and nine month financial statements consistent with the financial information included in

1    its October 16, 2008 press release.  In addition, the Form 10-Q contained the certifications required

2    by SOX, signed by defendant Werner attesting that:

3                  (a)     the financial statements, and other financial information included in the report,

4    fairly presented in all material respects the financial condition, results of operation and cash flows of

5    Sun;

6

7                  (b)     that Sun's internal controls over financial reporting were designed to ensure

8    the reliability of its financial reporting and the preparation of its financial statements; and

9                  (c)     the information in the 10-Q fairly presented the financial condition and results

10   of operations of Sun.

11          27.     On January 29, 2009, Sun issued a press release accounting its financial results for the

12   fourth quarter and full fiscal year 2008.

13

14          28.     On February 26, 2009, Sun filed its Annual Report on Form 10-K with the SEC that

15   contained its financial statements for fiscal year 2008.  In addition, the Form 10-K contained the

16   certifications required by SOX, signed by the Individual Defendants attesting that:

17                 (a)     the financial statements, and other financial information included in the report,

18   fairly presented in all material respects the financial condition, results of operation and cash flows of

19   Sun;

20

21                 (b)     that Sun's internal control over financial reporting were designed to ensure the

22   reliability of its financial reporting and the preparation of its financial statements; and

23                 (c)     the information in the 10-K fairly presented the financial condition and results

24   of operations of Sun.

25          29.     The financial statements and information issued by defendants in Sun's press

26   releases, quarterly reports and annual report for fiscal year 2008 set forth above in ¶¶21-28 were

27   false and misleading because Sun's financial statements included unsubstantiated accounting entries

28

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS                                          - 7 -

relating to cost of goods sold from its Philippine manufacturing operations in the approximate amount of $9 million which made those financial statements unreliable and because Sun's internal controls over financial reporting, as falsely certified by the Individual Defendants, were materially deficient.

30.    On April 23, 2009, Sun issued a press release announcing its financial results for the first quarter of 2009 and included its financial statements for that quarter in the release.

31.    On May 8, 2009, Sun filed a quarterly report with the SEC that contained its quarterly financial statements consistent with the financial information in its April 23, 2009 press release.  In addition, the Form 10-Q contained the certifications required by SOX signed by the Individual Defendants attesting that:

(a)    the financial statements, and other financial information included in the report, fairly presented in all material respects the financial condition, results of operation and cash flows of Sun;

(b)    that Sun's internal controls over financial reporting were designed to ensure the reliability of its financial reporting and the preparation of its financial statements; and

(c)    the information in the 10-Q fairly presented the financial condition and results of operations of Sun.

32.    The financial statements and information issued by defendants in Sun's press release and quarterly report for the first quarter of fiscal 2009 set forth above in ¶¶30-31, were false and misleading because Sun's financial statements included unsubstantiated accounting entries relating to cost of goods sold from its Philippine manufacturing operations in the approximate amount of $1 million which made those financial statements unreliable and because Sun's internal controls over financial reporting, as falsely certified by the Individual Defendants, were materially deficient.

33.     On July 23, 2009, Sun issued a press release announcing its financial results for the second quarter of 2009 and included its financial statements for that quarter in the release.

34.     On August 3, 2009, Sun filed a quarterly report with the SEC that contained its quarterly financial statements consistent with the financial information in its July 23, 2009 press release.  In addition, the Form 10-Q contained the certifications required by SOX, signed by the Individual Defendants attesting that:

(a)     the financial statements, and other financial information included in the report, fairly presented in all material respects the financial condition, results of operation and cash flows of Sun;

(b)     that Sun's internal controls over financial reporting were designed to ensure the reliability of its financial reporting and the preparation of its financial statements; and

(c)     the information in the 10-Q fairly presented the financial condition and results of operations of Sun.

35.     The financial statements and information issued by defendants in Sun's press release and quarterly report for the second quarter of fiscal 2009 set forth above in ¶¶33-34, were false and misleading because Sun's financial statements included unsubstantiated accounting entries relating to cost of goods sold from its Philippine manufacturing operations in the approximate amount of $14 million which made those financial statements unreliable and because Sun's internal controls over financial reporting, as falsely certified by the Individual Defendants, were materially deficient.

36.     On October 22, 2009, Sun issued a press release announcing its financial results for the third quarter of fiscal 2009 and included its financial statements for that quarter.

37.     On November 2, 2009, Sun filed a quarterly report with the SEC that contained its quarterly financial statements consistent with the financial information in its October 22, 2009 press

release.  In addition, the Form 10-Q contained the certifications required by SOX, signed by the Individual Defendants attesting that:

> (a)    the financial statements, and other financial information included in the report, fairly presented in all material respects the financial condition, results of operation and cash flows of Sun;

> (b)    that Sun's internal controls over financial reporting were designed to ensure the reliability of its financial reporting and the preparation of its financial statements; and

> (c)    the information in the 10-Q fairly presented the financial condition and results of operations of Sun.

38.    The financial statements and information issued by defendants in Sun's press release and quarterly report for the third quarter of fiscal 2009 set forth above in ¶¶36-37, were false and misleading because Sun's financial statements included unsubstantiated accounting entries relating to cost of goods sold from its Philippine manufacturing operations in the approximate amount of $2 million which made those financial statements unreliable and because Sun's internal controls over financial reporting, as falsely certified by the Individual Defendants, were materially deficient.

39.    Then, on November 16, 2009, after the market closed, defendants issued a press release and filed a Form 8-K with the SEC stating that

> based upon an internal review of its Philippine manufacturing operations, the company believes there may have been unsubstantiated accounting entries made in the first three quarters of 2009, some of which relate to the company's fiscal year ended December 28, 2008.  Management informed the Audit Committee of the Board of Directors of these entries and the Audit Committee immediately commenced an investigation of the matter, which is ongoing.  The company's Audit Committee and management have discussed these issues with the company's independent auditors.

> Based upon the preliminary findings of the ongoing investigation, the Audit Committee to date has identified accounting entries in the Philippines that may have overstated expenses in its costs of goods sold of approximately $1 million in the first quarter ended March 29, 2009, and understated expenses in its cost of goods sold of approximately $14 million in the second quarter ended June 28, 2009 and approximately $2 million in the third quarter ended September 27, 2009.  The company previously reported 2009 quarterly revenues and operating income under

Generally Accepted Accounting Principles (GAAP) of $213.8 million and a loss of $2.5 million, respectively, in the first quarter, $297.6 million and $9.9 million, respectively, in the second quarter and $466.3 million and $34.6 million, respectively, in the third quarter. Full-year 2008 revenues were reported of $1,434.9 million and GAAP operating income of $167.5 million.

If the preliminary investigation findings prove to be final, they could impact the company's previously reported interim 2009 financial results. The company is also in the process of evaluating the financial impact of these adjustments on its previously reported results for the fiscal year and interim periods ended December 28, 2008. The company currently estimates that approximately $9 million of the identified accounting entries should have been recorded in 2008.

The company is working with the Audit Committee, the Committee's outside experts, and with the company's independent auditors to determine if any restatements of the 2009 interim financial reports and the 2008 annual report will be necessary. Until the investigation is complete and such a determination is made, there can be no assurance that broader issues do not exist. Therefore, the company's previously issued interim financial statements for each of the 2009 quarterly periods, the previously reported financial results for the fiscal year ending December 28, 2008, the financial information in its quarterly reports on Form 10-Q for the 2009 quarters, the financial information in the 2008 annual report on Form 10-K, and the guidance provided by the company for the 2009 fiscal year, should no longer be relied upon.

40.     As a result of this news, Sun's Class A common stock fell from $27.23 per share on November 16, 2009 to $22.19 per share on November 17, 2009 – a one-day decline of 19% on volume over nine times that three-month daily average.

## SUN'S FALSE FINANCIAL
## REPORTING DURING THE CLASS PERIOD

41.     In order to inflate the price of Sun's publicly traded securities, defendants caused the Company to falsely report its results for fiscal year 2008 and for the first, second and third quarters of fiscal year 2009 by improperly accounting for its costs of goods sold, which overstated the Company's reported net income. The Company will restate its financial statements due to its improper accounting.

42.     Sun's Class Period financial results were included in a Form 10-K and Form 10-Qs filed with the SEC. The results were also included in press releases disseminated to the public. Defendants' SEC filings claimed that the financial information presented therein was a fair statement

1   of Sun's financial results and that the results were prepared in accordance with Generally Accepted

2   Accounting Principles ("GAAP").[1]

3        43.   Defendants' representations were false and misleading as to the financial information

4   reported, as such financial information was not prepared in conformity with GAAP, nor was the

5   financial information a "fair representation" of Sun's financial condition and operations, causing the

6   financial results to be presented in violation of GAAP and SEC rules.

7        44.   The adverse information concealed by defendants during the Class Period and

8   detailed above also was in violation of Item 303 of Regulation S-K under the federal securities law

9   (17 C.F.R. §229.303).  This regulation sets forth the requirements of management's discussion and

10  analysis of financial condition and results of operations including detailed and accurate discussion

11  pertaining to any material changes affecting the state of or trend of a company's liquidity and its

12  capital resources.  Moreover, this regulation requires that a company describe any known trends or

13  uncertainties that have had or that the registrant reasonably expects will have a material favorable or

14  unfavorable impact on net sales or revenues or income from continuing operations.

15                                    **LOSS CAUSATION**

16       45.   Defendants' wrongful conduct, as alleged herein, directly and proximately caused the

17  economic loss suffered by plaintiff and the Class.

18       46.   During the Class Period, plaintiff and the Class purchased Sun's publicly traded

19  securities at artificially inflated prices and were damaged thereby.  The price of the Company's

20  securities significantly declined when the misrepresentations made to the market, and/or the

21  information alleged herein to have been concealed from the market, and/or the effects thereof, were

22  revealed, causing investors' losses.

23  _____

24  [1]    GAAP are those principles recognized by the accounting profession as the conventions, rules
    and procedures necessary to define accepted accounting practices at a particular time.  SEC
25  Regulation S-X (17 C.F.R. §210.4-01(a)(1)) states that financial statements filed with the SEC which
    are not prepared in compliance with GAAP are presumed to be misleading and inaccurate, despite
26  footnote or other disclosure.  Regulation S-X requires that interim financial statements, such as
    quarterly financial statements, must also comply with GAAP, with the exception that interim
27  financial statements need not include disclosures which would be duplicative of disclosures
    accompanying annual financial statements.  17 C.F.R. §210.10-01(a).

28

## SCIENTER ALLEGATIONS

47.     Defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

### APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET DOCTRINE

48.     At all relevant times, the market for Sun's publicly traded securities was an efficient market for the following reasons, among others:

(a)     Sun stock met the requirements for listing, and was listed and actively traded on the NasdaqGS, a highly efficient and automated market;

(b)     During the Class Period, on average, millions of shares of Sun stock were traded on a weekly basis, demonstrating a very active and broad market for Sun common stock and permitting a very strong presumption of an efficient market;

(c)     As a regulated issuer, Sun filed periodic public reports with the SEC and the NasdaqGS;

(d)     Sun regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(e)     Sun was followed by securities analysts employed at brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period.  Each of these reports was publicly available and entered the public marketplace; and

(f)     Unexpected material news about Sun was rapidly reflected and incorporated into the Company's stock price during the Class Period.

49.     As a result of the foregoing, the market for Sun's securities promptly digested current information regarding Sun from all publicly available sources and reflected such information in Sun's share prices.  Under these circumstances, all purchasers of Sun's publicly traded securities during the Class Period suffered similar injury through their purchase of Sun's publicly  traded securities at artificially inflated prices and a presumption of reliance applies.

### COUNT I

**Violation of §10(b) of the 1934 Act and Rule 10b-5**
**Promulgated Thereunder Against All Defendants**

50.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51.     During the Class Period, each of the defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did:  (i) deceive the investing public, including plaintiff and other Class members, as alleged herein; and (ii) cause plaintiff and other members of the Class to purchase Sun's publicly traded securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

52.     During the Class Period, defendants, with knowledge of or reckless disregard for the truth, disseminated or approved the false statements specified above, which were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

53.     Defendants have violated §10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder in that they (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the

statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices, and a course of business that operated a fraud or deceit upon plaintiff and the other purchasers of Sun securities during the Class Period.

54.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Sun securities, which subsequently declined in value as a result of the revelation of the misrepresentations and omissions alleged herein.  Plaintiff and the Class would not have purchases Sun securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by defendants' misleading statements.

55.    As a direct and proximate result of these defendants' wrongful conduct, plaintiff and the other members of the Class suffered damages in connection with their purchases of Sun publicly traded securities during the Class Period.

## COUNT II

### Violation of §20(a) of the 1934 Act
### Against All Defendants

56.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

57.    The Individual Defendants acted as controlling persons of Sun within the meaning of §20(a) of the 1934 Act as alleged herein.  By virtue of their high-level positions, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power and authority to cause the Company to engage in the wrongful conduct complained of herein.  Sun controlled the Individual Defendants and all of its other employees.

1  58.    By reason of such wrongful conduct, the defendants are liable pursuant to §20(a) of

2  the 1934 Act. As a direct and proximate result of the defendants' wrongful conduct, plaintiff and

3  other members of the Class suffered damages in connection with their purchases of the Company's

4  publicly traded securities during the Class Period.

5

6                                    **PRAYER FOR RELIEF**

7        WHEREFORE, plaintiff prays for relief and judgment, as follows:

8        A.    Determining that this action is a proper class action under Rule 23 of the Federal

9  Rules of Civil Procedure;

10       B.    Awarding compensatory damages in favor of plaintiff and the other Class members

11 against all defendants, jointly and severally, for all damages sustained as a result of defendants'

12 wrongdoing, in an amount to be proven at trial, including interest thereon;

13       C.    Awarding plaintiff and the Class their reasonable costs and expenses incurred in this

14 action, including counsel fees and expert fees; and

15       D.    Such other and further relief as the Court may deem just and proper.

16

17                                  **JURY TRIAL DEMANDED**

18       Plaintiff hereby demands a trial by jury.

19 DATED: November 18, 2009                    COUGHLIN STOIA GELLER
                                               RUDMAN & ROBBINS LLP
20                                             SHAWN A. WILLIAMS

21

22                                                 SHAWN A. WILLIAMS

23                                             100 Pine Street, Suite 2600
24                                             San Francisco, CA 94111
                                               Telephone: 415/288-4545
25                                             415/288-4534 (fax)

26

27

28

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS                          - 16 -

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
DARREN J. ROBBINS
DAVID C. WALTON
CATHERINE J. KOWALEWSKI
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

LAW OFFICES BERNARD M. GROSS, P.C.
DEBORAH R. GROSS
ROBERT P. FRUTKIN
Suite 450, Wanamaker Bldg.
100 Penn Square East
Philadelphia, PA  19107
Telephone:  215/561-3600
215/561-3000 (fax)

Attorneys for Plaintiff

S:\CptDraft\Securities\Cpt SunPower.doc

COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2      Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

3   named parties, there is no such interest to report.

4

5

                        _____
6                        ATTORNEY OF RECORD FOR PLAINTIFF
                         HARRY W. PLICHTA

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28