| | |
|---|---|
| 1 | Richard M. Heimann (State Bar No. 063607) |
|  | rheimann@lchb.com |
| 2 | Joy A. Kruse (State Bar No. 142799) |
|  | jakruse@lchb.com |
| 3 | LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP |
|  | Embarcadero Center West |
| 4 | 275 Battery Street, 29th Floor |
|  | San Francisco, CA  94111-3339 |
| 5 | Telephone:  (415) 956-1000 |
|  | Facsimile:  (415) 956-1008 |
| 6 | |
|  | Arthur N. Abbey |
| 7 | aabbey@abbeyspanier.com |
|  | Nancy Kaboolian |
| 8 | nkaboolian@abbeyspanier.com |
|  | ABBEY SPANIER RODD & ABRAMS, LLP |
| 9 | 212 East 39th Street |
|  | New York, NY  10016 |
| 10 | Telephone:  (212) 889-3700 |
|  | Facsimile:  (212) 684-5191 |
| 11 | |
|  | Counsel for Proposed Lead Plaintiff |
| 12 | Pembroke Pines Pension Fund |

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| HARRY W. PLICHTA, Individually and on Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SUNPOWER CORPORATION, THOMAS H. WERNER AND DENNIS V. ARRIOLA,<br><br>Defendants.<br><br>*[Caption continued on next page]* | Case No.  09-CV-05473 CRB<br><br>**NOTICE OF MOTION AND MOTION; MEMORANDUM IN SUPPORT OF THE PEMBROKE PINES PENSION FUND MOTION TO CONSOLIDATE ALL RELATED ACTIONS; TO BE APPOINTED LEAD PLAINTIFF; AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL**<br><br>Date:      February 26, 2010<br>Time:      10:00 a.m.<br>Judge:    Charles R. Breyer<br>Ctrm:     8 |

853331.2

| | |
|---|---|
| STEVEN PARRISH, Individually and on Behalf Of All Others Similarly Situated, | Civil Action No.: 09-cv-05520 CRB |
| Plaintiff, | CLASS ACTION |
| v. | |
| SUNPOWER CORPORATION, THOMAS H. WERNER AND DENNIS V. ARRIOLA, | |
| Defendants. | |
| CHENGXIAO CAO, Individually and on Behalf Of All Others Similarly Situated, | Civil Action No.: 09-cv-05488 BZ |
| Plaintiff, | CLASS ACTION |
| v. | |
| SUNPOWER CORPORATION, PRICEWATERHOUSECOOPERS LLP, THOMAS H. WERNER, DENNIS V. ARRIOLA, EMMANUEL T. HERNANDEZ and MARTY T. NEESE, | |
| Defendants. | |

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION AND MOTION ................................................................................................ 1

STATEMENT OF ISSUES TO BE DECIDED .................................................................................... 2

SUMMARY OF ARGUMENT ............................................................................................................... 2

MEMORANDUM IN SUPPORT OF THE PEMBROKE PINES PENSION FUND TO BE APPOINTED LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL ............................................................. 3

    I.      INTRODUCTION ................................................................................................... 3

    II.     PROCEDURAL HISTORY .................................................................................... 4

    III.    SUMMARY OF FACTS ......................................................................................... 5

    IV.    ARGUMENT ........................................................................................................... 8

           A.     The Pembroke Pines Pension Fund Should Be Appointed Lead Plaintiff ....................................................................................................... 8

                1.    The Procedures Required By The PSLRA ........................................ 8

                2.    The Pembroke Pines Fund Has Complied With The PSLRA .......... 9

                3.    The Pembroke Pines Fund Has The Largest Financial Interest In The Action ................................................................... 10

                4.    The Pembroke Pines Pension Fund Otherwise Satisfies Rule 23 ................................................................................. 10

           B.     The Court Should Approve The Pembroke Pines Pension Fund's Selection Of Lead Counsel ............................................................................. 13

    V.     CONCLUSION ...................................................................................................... 13

# TABLE OF AUTHORITIES
**Page**

## CASES

*Ferrari v. Gisch*,
  225 F.R.D. 599 (C.D. Cal. 2004) .......................................................................................... 10

*In re Cavanaugh*,
  306 F. 3d 726 (9th Cir. 2002) ............................................................................................... 10

*Schlagell v. Learning Tree Int'l*,
  1999 WL 672306
  (C.D. Cal. February 23, 1999) ............................................................................................. 11

*Siegall v. Tibco Software, Inc.*,
  2006 U.S. Dist. Lexis 26780
  (N.D. Cal. Feb. 24, 2006) .................................................................................................... 11

*Slaven v. BP America, Inc.*,
  190 F.R.D. 649 (C.D. Cal. 2000) ................................................................................... 11, 12

*Takada v. Turbodyne Tech. Inc.*,
  67 F. Supp. 2d 1129 (C.D. Cal. 1999) .................................................................................. 12

## STATUTES

15 U.S.C.
  § 78u-4(a)(3)(A) ..................................................................................................................... 8

15 U.S.C.
  § 78u-4(a)(3)(B) ........................................................................................................ 9, 10, 11

PLSRA
  § 21D(a)(3)(B) ................................................................................................................ 9, 13

## OTHER AUTHORITIES

H.R. Conf. Rep. No. 104-369 (1995),
  *reprinted* in 1995 U.S.C.C.A.N. 730 ..................................................................................... 3

Rep. No. 104-98 (1995),
  *reprinted* in 1995 U.S.C.C.A.N. 679 ..................................................................................... 3

## NOTICE OF MOTION AND MOTION

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE** that on February 26, 2010 at 10:00 a.m. or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Charles R. Breyer located at United States District Court, 450 Golden Gate Ave, San Francisco, CA 94102 pursuant to Fed. R. Civ. P. 42(a), and Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the City Pension Fund for Firefighters and Police Officers in the City of Pembroke Pines (the "Pembroke Pines Pension Fund" or "Movant") will move the Court for an Order: (i) consolidating all Related Actions (defined below) and any subsequently related actions pursuant to Rule 42(a); (ii) appointing the Pembroke Pines Pension Fund as Lead Plaintiff in the consolidated securities class action and any subsequently filed related class action cases; and (iii) approving the Pembroke Pines Pension Fund's selection of Abbey Spanier Rodd & Abrams, LLP ("Abbey Spanier") as lead counsel.

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Joy A. Kruse in Support of the Pembroke Pines Pension Fund Motion to Be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel ("Kruse Decl."), the pleadings on file in this action, oral argument and such other matters as the Court may consider in hearing this motion.

**STATEMENT OF ISSUES TO BE DECIDED**

Whether these cases should be consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure as actions involving a common question of law or fact pending before the Court;

Whether the Pembroke Pines Pension Fund should be appointed Lead Plaintiff in the consolidated action against SunPower Corporation pursuant to the lead plaintiff provisions of the Section 21D(a)(3)(B) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"); and

Whether the Court should approve the Pembroke Pines Pension Fund's selection of Abbey Spanier to represent the class in this action, also pursuant to the lead plaintiff provisions of the PSLRA.

**SUMMARY OF ARGUMENT**

The Pembroke Pines Pension Fund makes this Motion on the belief that Movant is the most "adequate plaintiff" as defined by the PSLRA because:

1. Movant has the largest financial interest in the relief sought by the Class and has incurred substantial losses in the amount of $135,511.00 as a result of Movant's purchase and/or acquisition of shares of SunPower Corporation from April 17, 2008 to November 16, 2009, and

2. Movant satisfies the typicality and adequacy requirements of the Fed. R. Civ. P. Rule 23.

Pembroke Pines Pension Fund requests that the Court approve its selection of Counsel, Abbey Spanier as Lead Counsel for the Class. Abbey Spanier is a nationally recognized law firm with significant class action, fraud and complex litigation experience and has the resources to effectively and properly pursue this action.

For all the foregoing reasons, the Pembroke Pines Pension Fund respectfully requests that this Court: (1) consolidate all related actions; (2) appoint it to serve as the Lead Plaintiff in this action; (3) approve its selection of Lead Counsel for the Class; and (4) grant such other and further relief as the Court may deem just and proper.

**MEMORANDUM IN SUPPORT OF THE PEMBROKE PINES PENSION FUND TO BE APPOINTED LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL**

## I. INTRODUCTION

The Pembroke Pines Pension Fund respectfully submits this memorandum pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for entry of an order appointing it as the Lead Plaintiff in the consolidated action, and approving the Pembroke Pines Pension Fund's choice of counsel as Lead and Liaison Counsel for the Class.

This motion advances one of the primary goals of Congress in enacting the PSLRA (15 U.S.C. § 78u-4(a)(3)) – to encourage institutional investors to serve as lead plaintiffs in class actions brought under the federal securities laws. The Conference Committee's explanatory report expressly states that:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff." . . .
>
> The Conference Committee believes, however, that . . . in many cases the **beneficiaries of pension funds – small investors – ultimately have the greatest stake in the outcome of the lawsuit**. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted* in 1995 U.S.C.C.A.N. 730, 733 (emphasis added). Similarly, the Senate Report on the PSLRA states in pertinent part:

> The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts. Institutions with large stakes in class actions have much the same interests as the plaintiff class generally.

Rep. No. 104-98, at 11 (1995), *reprinted* in 1995 U.S.C.C.A.N. 679, 690.

The Pembroke Pines Pension Fund, suffered losses of approximately $135,511.00 from its purchase and/or acquisition of SunPower Corporation ("SunPower" or the "Company") common stock. The Pembroke Pines Pension Fund believes that it has sustained the largest loss of any

853331.2                                  - 3 -                    NOT. OF MOT. & MOT., MPA. ISO OF PEMBROKE PINES
                                                                                 PENSION FUND MTN TO BE APPOINTED LEAD PLTF
                                                                                                                   09-CV-05473 CRB

1 qualified investor seeking to be appointed Lead Plaintiff for the consolidated class action. The
2 Pembroke Pines Pension Fund is familiar with the applicable provisions governing the
3 appointment of the Lead Plaintiff in securities class actions, understands its responsibilities to the
4 class, and is willing and able to oversee the prosecution of this action.

5       The Pembroke Pines Pension Fund believes that it has the largest financial interest in the
6 relief sought by the Class. The Pembroke Pines Pension Fund will ensure that the litigation is
7 conducted in the best interests of the members of the Class and is not subject to any unique
8 defenses that would render them incapable of adequately representing the Class.

9       The first steps in a securities class action are consolidation of related actions, appointment
10 of a lead plaintiff and approval of the lead plaintiff's selection of lead counsel. Consolidation is
11 appropriate pursuant to Fed. R. Civ. P. Rule 42(a) because all of the actions raise common issues
12 of law – all allege claims pursuant to the Exchange Act and are governed by the PSLRA. The
13 claims all arise from the same core facts relating to statements made by defendant SunPower and
14 certain of its officers and directors in filings with the Securities and Exchange Commission, press
15 releases and conference calls. The consolidation of similar securities class actions is a
16 prerequisite to the appointment of lead plaintiff and approval of lead counsel, and is routinely
17 done in these types of cases.

18       Therefore, the Pembroke Pines Pension Fund respectfully requests that the Court
19 consolidate all related actions, grant its motion to be appointed lead plaintiff, and approve its
20 selection of lead counsel.

21 **II.**    **PROCEDURAL HISTORY**

22       The first lawsuit against defendants, *Plichta v. SunPower Corp., et al.*, was filed on
23 November 18, 2009 in this Court by Harry W. Plichta, individually and on behalf of all persons or
24 entities that purchased or otherwise acquired SunPower securities from April 17, 2008 to
25 November 16, 2009 (the "Class Period"). The gravamen of the complaint is that defendants
26 violated the violations of Sections 10(b) and 20(a) of the Exchange Act and Securities and
27 Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder during the Class Period by
28 issuing a series of materially false and misleading statements and that these misrepresentations of

omissions caused the price of SunPower securities to be artificially inflated, and thereby resulted in the damages suffered by the Pembroke Pines Pension Fund and the other members of the Class. On November 18, 2009, Counsel for plaintiff Plichta published a notice of pendency of plaintiff's case over the Business Wire. *See* Kruse Decl., Ex. A. Thereafter at least 2 related actions (the "Related Actions") were been filed, and each of the Related Actions is reflected above. Movant brings the instant motion pursuant to plaintiff Plichta's notice of pendency, and files this motion prior to the expiration of the 60-day period from publication of the November 18, 2009, notice.

### III. SUMMARY OF FACTS

Presently pending in this District are at least 3 related securities class action lawsuits. Each of these Related Actions alleges claims for violations of Sections 10(b) and 20(a) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder during the "Class Period".[1]

SunPower designs, manufactures and delivers high-performance solar electric systems worldwide for residential, commercial and utility-scale power plant customers. SunPower has its principal executive offices in San Jose, California. As of October 28, 2009, the Company had over 54.94 million shares of Class A common stock under the symbol SPWRA and 42.03 million shares of Class B common stock under the symbol SPWRB issued and outstanding. Throughout the Class Period, SunPower common shares were actively traded on the NASDAQ.

The Company manufactures its solar cells at two facilities in the Philippines, and almost all of the solar cells are then combined into solar panels at a solar panel assembly facility located in the Philippines. According to the 2008 Form 10-K, almost all of the Company's manufacturing and corporate activity occurs in the Philippines:

> We manufacture our solar cells through our subsidiary, SunPower Philippines Manufacturing Limited, in two facilities located near Manila in the Philippines. Our first facility, or FAB1, has 215,000 square feet and began operations in the fall of 2004. We currently operate four solar cell manufacturing lines, with a total rated manufacturing capacity of 108 megawatts per year at this FAB1. In August 2006, we purchased a 344,000 square foot building in the Philippines, or FAB2. This building is approximately 20 miles from FAB1 and was constructed to house up to twelve solar cell

---

[1] All three complaints allege the same Class Period.

> manufacturing lines. FAB2 began operations in the summer of 2007 and we currently operate eight solar cell manufacturing lines, with a total rated manufacturing capacity of 306 megawatts per year at this FAB2. By the end of 2009, we plan to operate 16 solar cell manufacturing lines in total with an aggregate manufacturing capacity of 574 megawatts per year.
>
>         \*     \*     \*
>
> In January 2008, we completed the construction of an approximately 175,000 square foot building in the Philippines. This facility serves as our solar panel assembly facility that currently operates seven solar panel manufacturing lines with a rated manufacturing capacity of 210 megawatts of solar panels per year.
>
>         \*     \*     \*
>
> As of December 28, 2008, we had approximately 5,400 employees worldwide, including approximately 540 employees located in the United States, 4,710 employees located in the Philippines and 150 employees located in other countries.

Throughout the Class Period, SunPower presented itself as a company that was achieving substantial growth in revenues and earnings and had significant cost controls in place. Throughout this time, SunPower issued a series of statements that both raised forward guidance and reported purported "record setting" financial and operational results for the periods.

On November 16, 2009, SunPower shocked investors when it announced an internal investigation by its audit committee of certain unsubstantiated accounting entries related to cost of goods sold in the Company's Philippines operations. SunPower disclosed that its audit committee had concluded that the Company's previously issued interim financial statements for each of the 2009 quarterly periods, the previously reported financial results for the fiscal year ending December 28, 2008, the financial information in its quarterly reports on Form 10-Q for the 2009 quarters, the financial information in the 2008 annual report on Form 10-K, and the guidance provided by the Company for the 2009 fiscal year should no longer be relied upon and were being evaluated for potential restatement. The Company cautioned that until its investigation was completed, it could offer no assurances that "broader issues do not exist."

As revealed on November 16, 2009, the financial statements and information issued by the Company in its press releases, quarterly reports for 2008 and 2009 and annual report for fiscal

year 2008 were false and misleading because SunPower included unsubstantiated accounting entries related to cost of goods sold in SunPower's Philippines operations.  As a result, SunPower may have to restate its financial statements for all of 2008 and for the first three quarters of 2009. Moreover, the SEC filings throughout the Class Period included false and misleading certifications, required by the Sarbanes-Oxley Act of 2002 ("SOX"), attesting to the accuracy of SunPower's financial statements and the adequacy of its internal controls over financial reporting.

As a result of this news, shares of SunPower's Class A common stock declined $5.04 per share, or approximately 18.51%, to close on November 17, 2009, at $22.19 per share, on heavy volume, and shares of SunPower's Class B common stock declined $4.43 per share, approximately 18.54%, to close on November 17, 2009, at $19.47 per share, on heavy volume.

On December 15, 2009, SunPower provided an update on its audit committee's investigation of the accounting irregularities. The Company did not hold a call with analysts as some had hoped – or, really, say much about the investigation. According to Dow Jones Newswire, SunPower in a "tersely worded press release" stated that:

> [i]t had made "significant progress in its internal investigation of unsubstantiated accounting entries previously announced on November 16, 2009." SunPower continued: "The investigation to date is consistent with the preliminary findings announced on November 16, 2009. The audit committee is working with its experts and appropriate SunPower personnel to promptly complete a thorough investigation."
>
> And that was about all SunPower said.  Where does that leave investors in trying to figure out if things are going to get worse before they get better . . . .

The Defendants are: Thomas H. Werner, is and, at all relevant times, has been SunPower's Chief Executive Officer.  Dennis V. Arriola, is and, at all relevant times, has been SunPower's Chief Financial Officer, Principal Accounting Officer and Senior Vice President since October 20, 2008.  Emmanuel T. Hernandez was until his departure from the Company on or about November 2008, Chief Financial Officer, Principal Accounting Officer and Senior Vice President.  One action names PricewaterhouseCoopers LLP ("PWC") as a defendant.  PWC served as the Company's Independent Outside Auditor throughout the Class Period.

Plaintiff alleges that defendants materially misrepresented and/or failed to disclose, among

1  other things: (1) that the Company improperly accounted for the cost of its goods sold in the
2  fiscal year ending December 28, 2008 and the quarters ending March 29, 2009, June 28, 2009 and
3  September 27, 2009; (2) that the Company incorrectly reported its revenues and operating income
4  for the fiscal year ending December 28, 2008 and the quarters ending March 29, 2009, June 28,
5  2009 and September 27, 2009; (3) that the Company's financial results were not prepared in
6  accordance with GAAP; (4) that the Company lacked adequate internal and financial controls;
7  (5) that as a result of the above, the Company's financial statements were materially false and
8  misleading at all relevant times; (6) that defendants acted with the required state of mind; and
9  (7) that plaintiff's reliance on defendant's false statements caused plaintiff injury (loss causation).

## IV. ARGUMENT

### A. The Pembroke Pines Pension Fund Should Be Appointed Lead Plaintiff

#### 1. The Procedures Required By The PSLRA

Section 21D of the Exchange Act, as amended by the PSLRA, sets forth the procedure for the selection of Lead Plaintiff to oversee class actions brought under the federal securities laws. Specifically, § 21D(a)(3)(A)(i) provides that within 20 days after the date on which the first class action is filed under the PSLRA, the plaintiff shall cause to be published, in a widely circulated national business oriented publication or wire service, a notice informing class members of the action and their right to file a motion for the appointment of lead plaintiff.

The PSLRA provides that within 60 days after the publication of the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Section 21D(a)(3)(B) of the Exchange Act directs the Court to consider any motions by a plaintiff or purported class members to serve as Lead Plaintiff in response to any such notice by not later than 90 days after the date of publication pursuant to § 21D, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims. Under this section the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members that the Court determines to be most capable of adequately representing the interests of class members.

In determining the "most adequate plaintiff" the PSLRA provides that:

> [T]he Court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –
>
> (aa)   has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

§ 21D(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Only by a showing that a Lead Plaintiff will not fairly and adequately represent the Class, or is subject to unique defenses that will render such plaintiff incapable of adequately representing the Class will this presumption be overcome.  21D(a)(3)(B)(iii)(II); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

**2.   The Pembroke Pines Fund Has Complied With The PSLRA**

The first complaint filed against defendants was the *Plichta v. Sunpower Corp., et al.*, 09-cv-5473, which was filed on November 18, 2009.  On November 18, 2009, a notice was published over *Business Wire* that informed potential class members of the pendency of the action and their right to move to be appointed lead plaintiff and to designate their choice of lead counsel within 60 days.  *See* Kruse Decl., Exh. A.

The time period in which class members may move to be appointed lead plaintiff herein under 15 U.S.C. § 78u-4(a)((3)(A) and (B) expires on January 19, 2010.  Pursuant to the PSLRA, and within the requisite time frame after publication of the required notice, the Pembroke Pines Pension Fund herein timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

Steven Dougherty, as Chairman of the Board of Trustees for the Pembroke Pines Pension Fund signed a certification stating that he reviewed a complaint filed in the Action, and that the Pembroke Pines Pension Fund is willing to serve as a representative party on behalf of the Class. *See* Kruse Decl., Exh. B.  The certification demonstrates that the Pembroke Pines Pension Fund

has suffered losses of approximately $135,511.00 in connection with its purchase of SunPower common stock. *See id*. Pembroke Pines Pension Fund is a motivated shareholder who has express its willingness to pursue this litigation. In addition, the Pembroke Pines Pension Fund has selected and retained experienced and competent counsel to represent them and the Class. *See* Kruse Decl., Exh. D.

### 3.  The Pembroke Pines Fund Has The Largest Financial Interest In The Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u 4(a)(3)(B)(iii). "So long as the plaintiff with the largest losses satisfies the adequacy requirements, he is entitled to lead plaintiff status . . . . " *Ferrari v. Gisch*, 225 F.R.D. 599, 602 (C.D. Cal. 2004) (citing *In re Cavanaugh*, 306 F. 3d 726, 732 (9th Cir. 2002).

Here, the certification demonstrates that the Pembroke Pines Pension Fund purchased SunPower stock at prices artificially inflated by defendants' false and misleading statements and suffered losses of over $135,511.00.[2] *See* Kruse Decl., Exh. C. To the best of its knowledge, the Pembroke Pines Pension Fund has the largest financial interest in the relief sought by the Class. The Pembroke Pines Pension Fund, therefore, is presumptively the most adequate plaintiff pursuant to the PSLRA. 15 U.S.C.§ 78u-4(a)(3)(B)(iii)(I)(bb). Moreover, the Pembroke Pines Pension Fund has expressed a desire and willingness to serve as a lead plaintiff in the consolidated action. Because the Pembroke Pines Pension Fund has suffered approximately $135,511.00 in losses, it is presumptively the most adequate Lead Plaintiff.

### 4.  The Pembroke Pines Pension Fund Otherwise Satisfies Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, the

---

[2] Pursuant to § 21D(e)(1) of the 1934 Act, the damages for Plaintiff holding their shares through the end of the class period are calculated as "the difference between the purchase or sale price paid or received and the mean trading price of SunPower during the 90 day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." 15 U.S.C. § 78u-4(e)(1). This mean trading price for the 90-day period following November 17, 2004 is estimated at $23.95.

1   PSLRA provides that the Lead Plaintiff must also "otherwise satisfy the requirements of Rule 23
2   of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  With respect to
3   the qualifications of the class representative, Rule 23(a) requires that the claims be typical of the
4   claims of the class and that the representative will fairly and adequately protect the interests of the
5   class. *Siegall v. Tibco Software, Inc.*, 2006 U.S. Dist. Lexis 26780, *15 (N.D. Cal. Feb. 24, 2006)
6   ("In the context of determining the appropriate lead plaintiff, the requirements of 'typicality' and
7   adequacy of representation are the key factors.")  As detailed below, the Pembroke Pines Pension
8   Fund satisfies the typicality and adequacy requirements of Rule 23(a).

          a.      **The Claims of the Pembroke Pines Pension Fund are Typical of the Claims of the Class**

11   The typicality requirement of Rule 23(a)(3) is satisfied when a named plaintiff has:
12   (a) suffered the same injuries as the absent class members; (b) as a result of the same course of
13   conduct by defendants; and their claims are based on the same legal issues. *Schlagell v. Learning*
14   *Tree Int'l*, 1999 WL 672306 *3 (C.D. Cal. February 23, 1999) (the typicality requirement is met
15   "if the representatives' claims stem from the same event or course of conduct as other class
16   members' claims and are based on the same legal theory as the absent members"); *Slaven v. BP*
17   *America, Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000) (a party satisfies the typicality standard where his
18   claims stem from the same event or course of conduct as other class members' claims and are
19   based on the same legal theory).

20   The questions of law and fact common to the class members here, which predominate
21   over questions that may affect individual claims, include: (a) whether the federal securities laws
22   were violated by defendants' acts; (b) whether defendants' statements during the Class Period
23   omitted and/or misrepresented material facts; (c) whether the defendants acted intentionally or
24   recklessly; (d) whether the market price of SunPower stock was artificially inflated due to the
25   activities complained of; and (e) the extent of damages class members sustained and the
26   appropriate measure of those damages. The Pembroke Pines Pension Fund's claims are typical of
27   the claims of the members of the proposed class. The Pembroke Pines Pension Fund, as do all
28   members of the class, asserts that certain of SunPower directors and high ranking officers violated

1  the Exchange Act by publicly disseminating false and misleading statements, and by failing to
2  disclose material adverse facts about SunPower.  Further, the Pembroke Pines Pension Fund as
3  did all of the members of the proposed class, acquired SunPower stock at prices inflated by
4  defendants' misrepresentations and omissions and was damaged thereby.  The typicality
5  requirement is satisfied here because the claims asserted by the Pembroke Pines Pension Fund are
6  based on the same legal theory and arise from the same event or practice or course of conduct that
7  gives rise to the claims of the class members, and is based on the same legal theory.  *Slaven*, 190
8  F.R.D. 649 (C.D. Cal. 2000).

### b. **The Pembroke Pines Pension Fund will Adequately Represent the Interests of the Class**

The adequacy of representation requirement of Rule 23 is satisfied where it is established that a representative party "will fairly and adequately protect the interests in the class."  Accordingly:

> The Ninth Circuit has held that representation is "adequate" when counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive.

*Takada v. Turbodyne Tech. Inc.*, 67 F. Supp. 2d 1129, 1133 (C.D. Cal. 1999).  The interests of Movant are clearly aligned with the members of the proposed class.  There is no evidence of any antagonism between Movant and the proposed class members.  As detailed above, the Pembroke Pines Pension Fund shares substantially similar questions of law and fact with the members of the proposed class, their claims are typical of the members of the class, and they have taken significant steps to advance this litigation.  In addition, it has amply demonstrated its adequacy to serve as class representatives by signing a certification affirming its willingness to serve as, and assume the responsibilities of lead plaintiff.  Finally, Movant has selected and retained counsel highly experienced in prosecuting securities class actions such as this to represent them.  For these reasons, the Pembroke Pines Pension Fund should be appointed Lead Plaintiff in the consolidated action.

### B. The Court Should Approve The Pembroke Pines Pension Fund's Selection Of Lead Counsel

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to court approval. § 21D(a)(3)(B)(v). The Pembroke Pines Pension Fund selected the law firm of Abbey Spanier to serve as Lead Counsel. The law firm of Lieff, Cabraser, Heimann & Bernstein, LLP ("Lieff Cabraser") has been asked to serve as Liaison Counsel. These firms have extensive experience in the area of securities litigation and have successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See* Kruse Decl., Exhs. D and E.

## V. CONCLUSION

For the foregoing reasons, the Pembroke Pines Pension Fund respectfully requests that the Court: (i) consolidate all Related Actions and any subsequently filed actions pursuant to Rule 42(a); (ii) appoint the Pembroke Pines Pension Fund as Lead Plaintiff in the consolidated action; and (iii) approve Lead Plaintiff's selection of Abbey Spanier to serve as Lead Counsel for the Class.

Dated: January 19, 2010               Respectfully submitted,

                                      LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


                                      By: _____
                                              Joy A. Kruse

                                      Richard M. Heimann
                                      Joy A. Kruse
                                      LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                      275 Battery Street, 29th Floor
                                      San Francisco, CA  94111-3339
                                      Telephone:  (415) 956-1000
                                      Facsimile:  (415) 956-1008

                                      Proposed Liaison Counsel

| | |
|---|---|
| 1 | Arthur N. Abbey |
| | Nancy Kaboolian |
| 2 | ABBEY SPANIER RODD & ABRAMS, LLP |
| | 212 East 39th Street |
| 3 | New York, NY  10016 |
| | Telephone:  (212) 889-3700 |
| 4 | Fax:  (212) 684-5191 |
| 5 | Attorneys for Proposed Lead Plaintiff Pembroke Pines Pension Fund |