1   JORDAN ETH (CA SBN 121617)
    JEth@mofo.com
2   JUDSON E. LOBDELL (CA SBN 146041)
    JLobdell@mofo.com
3   ANGELA E. KLEINE (CA SBN 255643)
    AKleine@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California 94105-2482
    Telephone:  (415) 268-7000
6   Facsimile:  (415) 268-7522

7   Attorneys for Defendants SUNPOWER CORPORATION,
    THOMAS H. WERNER, DENNIS V. ARRIOLA,
8   EMMANUEL T. HERNANDEZ, JOHN B. RODMAN,
    T.J. RODGERS, W. STEVE ALBRECHT, BETSY S. ATKINS,
9   PATRICK WOOD, III, and UWE-ERNST BUFE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SUNPOWER SECURITIES LITIGATION | Case No. CV 09-5473-RS (Consolidated)<br><br>**CLASS ACTION**<br><br>**SUNPOWER DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CONSOLIDATED COMPLAINT**<br><br>Judge:        Hon. Richard Seeborg<br>Courtroom:   3<br>Hearing Date:  August 11, 2011<br>Hearing Time:  1:30 p.m. |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.      THE SECTION 10(b) CLAIMS SHOULD BE DISMISSED. ........................................ 2

      A.    Plaintiffs' Allegations Do Not Support a Strong Inference of Scienter.................................................................................................................. 3

            1.    The CW statements do not support an inference of scienter.................... 3

                a.    The FAC does not allege "massive end of quarter adjustments." ............................................................................... 3

                b.    The superuser allegations do not support an inference of scienter. ..................................................................... 5

                c.    The employment termination allegations do not support an inference of scienter. ...................................... 6

            2.    The remaining allegations do not support an inference of scienter. ..................................................................................................... 6

                a.    The core operations inference does not apply.............................. 6

                b.    The Sarbanes-Oxley certifications still do not support an inference of scienter. ....................................... 7

            3.    A holistic analysis undermines, rather than supports, a strong inference of scienter. ....................................................... 8

            4.    Plaintiffs fail to plead SunPower's scienter. ......................................... 10

      B.    The Employee Defendants Did Not Make any Statements, and Plaintiffs' "Scheme" Allegations Contribute Nothing to the Analysis.................................................................................................................. 11

      C.    Plaintiffs' Claims Based on Forward-Looking Statements and Vague Statements of Corporate Optimism Fail. ................................................. 14

II.    THE SECTION 20(a) CLAIMS SHOULD BE DISMISSED. ...................................... 15

III.   THIS ACTION SHOULD BE DISMISSED WITH PREJUDICE............................... 15

CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Allstate Life Ins. Co. v. Robert W. Baird & Co., Inc.*,
  756 F. Supp. 2d 1113 (D. Ariz. 2010) .................................................................................. 10

*Batwin v. Occam Networks, Inc.*,
  No. CV 07-2750 CAS, 2008 U.S. Dist. LEXIS 52365 (C.D. Cal. July 1, 2008) ..................... 7

*Central Bank of Denver v. First Interstate Bank of Denver*,
  511 U.S. 164 (1994) ............................................................................................................ 10

*Desai v. Deutsche Bank Sec. Ltd.*,
  573 F.3d 931 (9th Cir. 2009) .............................................................................................. 12

*Frank v. Dana Corp.*,
  No. 09-4233, 2011 U.S. App. LEXIS 10437 (6th Cir. May 25, 2011) .................................... 3

*Haw. Ironworkers Annuity Trust Fund v. Cole*,
  No. 3:10CV371, 2011 U.S. Dist. LEXIS 35506 (N.D. Ohio Mar. 31, 2011) ........................ 13

*In re Able Labs. Sec. Litig.*,
  No. 05-2681 (JAG), 2008 U.S. Dist. LEXIS 23538 (D.N.J. Mar. 24, 2008) ......................... 13

*In re BISYS Sec. Litig.*,
  397 F. Supp. 2d 430 (S.D.N.Y. 2005) .................................................................................. 11

*In re Cabletron Sys., Inc.*,
  311 F.3d 11 (1st Cir. 2002) .................................................................................................. 11

*In re Cadence Design Sys., Inc. Sec. Litig.*,
  654 F. Supp. 2d 1037 (N.D. Cal. 2009) ............................................................................... 10

*In re Cadence Design Sys., Inc. Sec. Litig.*,
  692 F. Supp. 2d 1181 (N.D. Cal. 2010) ................................................................. 11, 13, 15

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*,
  416 F. Supp. 2d 779 (N.D. Cal. 2005) ................................................................................. 11

*In re Cutera Sec. Litig.*,
  610 F.3d 1103 (9th Cir. 2010) .............................................................................................. 14

*In re Dura Pharms., Inc. Sec. Litig.*,
  548 F. Supp. 2d 1126 (S.D. Cal. 2008) ................................................................................ 12

# TABLE OF AUTHORITIES

**Page(s)**

*In re Hansen Natural Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ................................................................. 8

*In re Immersion Corp. Sec. Litig.*,
No. C-09-4073 MMC, 2011 U.S. Dist. LEXIS 24886
(N.D. Cal. Mar. 11, 2011) ...................................................................................... 12

*In re Infineon Techs. AG Sec. Litig.*,
No. 5:04-cv-04156-JW (N.D. Cal. Jan. 25, 2008) ................................................ 13

*In re Int'l Rectifier Corp. Sec. Litig.*,
No. CV 07-02544-JFW (VBKx), 2008 U.S. Dist. LEXIS 106929
(C.D. Cal. Dec. 31, 2008) ...................................................................................... 13

*In re Lattice Semiconductor Corp. Sec. Litig.*,
No. 04-CV-1255-AA, 2006 U.S. Dist. LEXIS 262 (D. Or. Jan. 3, 2006) ............. 11

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
501 F. Supp. 2d 452 (S.D.N.Y. 2006) .................................................................. 11

*In re Micron Tech., Sec. Litig.*,
No. CV-06-85-S-BLW, 2009 U.S. Dist. LEXIS 13793
(D. Idaho Feb. 23, 2009) ....................................................................................... 13

*In re Northpoint Commc'ns Grp., Inc. Sec. Litig.*,
221 F. Supp. 2d 1090 (N.D. Cal. 2002) ................................................................. 7

*In re ProQuest Sec. Litig.*,
527 F. Supp. 2d 728 (E.D. Mich. 2007) ................................................................. 7

*In re Royal Dutch/Shell Transp. Sec. Litig.*,
No. 04-374 (JAP), 2006 U.S. Dist. LEXIS 56778 (D.N.J. Aug. 14, 2006) ........... 14

*In re Sonus Networks, Inc. Sec. Litig.*,
No. 04-10294-DPW, 2006 U.S. Dist. LEXIS 28272 (D. Mass. May 10, 2006)..... 11

*In re Tibco Software, Inc. Sec. Litig.*,
No. C 05-2146 SBA, 2006 U.S. Dist LEXIS 36666 (N.D. Cal. May 25, 2006)..... 14

*In re VeriFone Holdings, Inc. Sec. Litig.*,
No. C-07-06140 MHP, 2009 U.S. Dist. LEXIS 44132
(N.D. Cal. May 26, 2009) ....................................................................................... 8

*In re VeriFone Holdings, Inc. Sec. Litig.*,
No. C-07-6140 MHP, 2011 U.S. Dist. LEXIS 24964 (N.D. Cal. Mar. 8, 2011) .... 12

## TABLE OF AUTHORITIES

**Page(s)**

*Janus Capital Grp., Inc. v. First Derivative Traders*,
  564 U.S. ___, 180 L. Ed. 2d 166 (2011) ................................................................ 10, 11, 13

*Lynch v. Rawls*,
  No. 09-17379, 2011 U.S. App. LEXIS 8503 (9th Cir. Apr. 26, 2011) ..................................... 9

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
  513 F.3d 702 (7th Cir. 2008) ...................................................................................... 11

*Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*,
  576 F.3d 172 (4th Cir. 2009) ...................................................................................... 11

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. ___, 131 S. Ct. 1309 (2011) ............................................................................ 2

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ................................................................................. 11

*N.M. State Inv. Council v. Ernst & Young LLP*,
  641 F.3d 1089 (9th Cir. 2011) ................................................................................. 2, 5

*N.Y.C. Emps.' Ret. Sys. v. Berry*,
  616 F. Supp. 2d 987 (N.D. Cal. 2009) ....................................................................... 13

*No. 84 Emp'r-Teamster Joint Council Pension Trust Fund v. Am. West Holding
Corp.*, 320 F.3d 920 (9th Cir. 2003) ........................................................................... 13

*Pa. Ave. Funds v. Inyx, Inc.*,
  No. 08-CV-6857 (PKC), 2010 U.S. Dist. LEXIS 19177
  (S.D.N.Y. Mar. 1, 2010) ........................................................................................... 11

*Pittleman v. Impac Mortg. Holdings, Inc.*,
  No. SACV 07-0970 AG (MLGx), 2009 U.S. Dist. LEXIS 18213
  (C.D. Cal. Mar. 9, 2009) ........................................................................................... 10

*Plichta v. SunPower Corp.*,
  No. C 09-5473 RS, 2011 U.S. Dist. LEXIS 55330 (N.D. Cal. Mar. 1, 2011) ................. *passim*

*SEC v. Zandford*,
  535 U.S. 813 (2002) ................................................................................................ 13

*South Ferry LP, #2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) .................................................................................. 2, 6

*Steed v. Warrior Capital, LLC*,
  No. CIV-06-348-F, 2007 U.S. Dist. LEXIS 27308 (W.D. Okla. Apr. 11, 2007) ................... 13

## TABLE OF AUTHORITIES

**Page(s)**

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
  552 U.S. 148 (2008) .................................................................................................... 10

*TCS Capital Mgmt., LLC v. Apax Partners, L.P.*,
  No. 06-CV-13447 (CM), 2008 U.S. Dist. LEXIS 19854
  (S.D.N.Y. Mar. 7, 2008) .............................................................................................. 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .................................................................................................... 2, 9

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) ................................................................................... *passim*


**OTHER AUTHORITIES**

Fed. R. App. P.
  9th Cir. R. 36-3(a) ......................................................................................................... 9

1

**INTRODUCTION**

2     As demonstrated in Defendants' Opening Memorandum ("OM"), the FAC fails to remedy

3 the deficiencies identified in this Court's March 1, 2011 Order.  Plaintiffs' Opposition largely

4 ignores Defendants' arguments, repeats arguments that this Court considered and rejected in its

5 Order, and misrepresents both the allegations in the FAC and the governing law.

6     Plaintiffs do not dispute that the only substantive additions to the FAC are six new

7 confidential witnesses' ("CW") statements.  None of the CWs even addresses the unsubstantiated

8 accounting entries, the challenged investor communications, or the involvement of any Insider

9 Defendant in the preparation of either.  Plaintiffs insist that the CWs show the Insider Defendants

10 "must have" known about unsubstantiated entries because there were "sudden and inexplicable

11 massive decreases in expenses to meet . . . cost reduction targets at the end of ***seven*** consecutive

12 quarters."  That is fiction.  Neither the CWs nor any other source describe end-of-quarter

13 adjustments.

14     Plaintiffs argue that the Insider Defendants' "superuser" access means that at least one of

15 them "must have" made the unsubstantiated entries, but Plaintiffs ignore each of the four

16 independent reasons that theory makes no sense, including their own suggestion that the entries

17 were made on spreadsheets that did *not* require "superuser" access and their own admission that

18 "superuser" access was *not* limited to the Insider Defendants.

19     Plaintiffs point to unsupported speculation from CWs that the two Employee Defendants

20 were fired because of "involvement" in the unauthorized entries.  As demonstrated in the OM,

21 however, *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1001-02 (9th Cir. 2009), holds

22 that such speculation contributes nothing meaningful to the scienter analysis.  Plaintiffs'

23 remaining scienter arguments, including those based on SOX certifications and the "core

24 operations inference," were all made and rejected last time.

25     While acknowledging that they must present a "cogent and compelling" theory of scienter,

26 Plaintiffs still allege no motive for any Insider Defendant to commit fraud, other than to raise cash

27 for the company, which Plaintiffs now say the company did not even need.  Plaintiffs continue to

28 insist that the Court turn a blind eye to the results of the Audit Committee investigation even

1  though they themselves rely exclusively on the results of that investigation when alleging

2  accounting irregularities.  Their argument, which is inconsistent with *Tellabs, Inc. v. Makor*

3  *Issues & Rights, Ltd.*, 551 U.S. 308 (2007), is based on an unpublished decision that did not apply

4  the Reform Act, did not address scienter, and has no precedential value.

5       Finally, Plaintiffs argue that the FAC asserts "new claims" because it alleges a Rule 10b-5

6  "scheme" to defraud investors.  This claim is not new:  the "scheme" alleged in the FAC is

7  exactly the same "scheme" alleged in the Consolidated Complaint ("CC"), and it falls far short of

8  the Reform Act's requirements for pleading securities fraud.

9                                    **ARGUMENT**

10 **I.     THE SECTION 10(b) CLAIMS SHOULD BE DISMISSED.**

11      As the Court explained, to comply with the Reform Act, the FAC must plead

12 particularized facts supported by reliable sources creating a cogent and compelling inference that

13 "the corporation and management intended to mislead potential investors" when they made the

14 alleged misstatements.  *Plichta v. SunPower Corp.*, No. C 09-5473 RS, 2011 U.S. Dist. LEXIS

15 55330, at *14-15 (Mar. 1, 2011) ("Order").  Plaintiffs imply that *Matrixx Initiatives, Inc. v.*

16 *Siracusano*, 563 U.S. ___, 131 S. Ct. 1309, 1323-24 (2011), loosened this standard.  It did not.

17      The issue presented in *Matrixx* was the role of statistical significance in assessing

18 materiality; with respect to scienter, the Court applied *Tellabs* without modification.  131 S. Ct. at

19 1313, 1323-25.  The two-step *Zucco* procedure for applying *Tellabs*, which this Court followed in

20 its Order, remains the law in the Ninth Circuit.  *See N.M. State Inv. Council v. Ernst & Young*

21 *LLP*, 641 F.3d 1089, 1095 (9th Cir. 2011) (applying two-part *Zucco* test).

22      Plaintiffs' assertion that this Court "rejected Defendants' *Zucco* arguments" on scienter

23 (Opp. 6 n.6) is incorrect—in fact, the Order repeatedly cites *Zucco* as precedent.  That is hardly

24 surprising given that *Zucco* is controlling authority directly on point with respect to many of the

25 issues presented in this motion.[1]

---

[1] Plaintiffs attempt to downplay their pleading burden.  Citing *South Ferry LP, #2 v. Killinger*,
542 F.3d 776, 784 (9th Cir. 2008), Plaintiffs argue that Defendants "set[] too high a burden for
pleading scienter."  (Opp. 3-4 n.4.)  *Zucco*, decided *after South Ferry* and cited by this Court,
articulates the Ninth Circuit standard.  *Ernst & Young*, does not, as Plaintiffs imply, change the
*[Footnote continues on next page.]*

A.     **Plaintiffs' Allegations Do Not Support a Strong Inference of Scienter.**

1.     **The CW statements do not support an inference of scienter.**

As Defendants showed, Plaintiffs' new CW statements do not survive scrutiny under *Zucco*. (OM 7-8.) Plaintiffs claim that the statements are not subject to the *Zucco* "reliability and personal knowledge" test, 552 F.3d at 995, because they are independently "corroborat[ed]." (Opp. 12.)  In truth, however, the FAC does not allege any "corroborative facts" for any of its scienter allegations:  it does not cite a single internal document or named witness.  (*See id*; OM 7.)

Plaintiffs argue that the FAC presents "detailed information demonstrating Defendants' knowledge of, and involvement in, the deliberate falsification of SunPower's financial results for nearly two years."  (Opp. 1.)  As discussed below, and as is apparent from a review of Appendix A to the OM, this claim is false.

a.     **The FAC does not allege "massive end of quarter adjustments."**

Invoking the "core operations" inference (*see* Order at *21-22), Plaintiffs argue that accounting fraud was "obvious" to all the Insider Defendants because "SunPower was not performing to budget throughout the quarter, followed by sudden and inexplicable massive decreases in expenses to meet its cost reduction targets at the end of ***seven*** consecutive quarters." (Opp. 7.)  This is nonsense.  Plaintiffs' repeated assertions that there were "massive," "sudden," "multi-million dollar" adjustments at the end of each quarter are made up—they are not supported by the CWs or any other source.[2]

_____

[Footnote continued from previous page.]

standard either—it sets out the same standard as *Zucco*.  641 F.3d at 1095.  *Frank v. Dana Corp.*, No. 09-4233, 2011 U.S. App. LEXIS 10437 (6th Cir. May 25, 2011), does not even address the Ninth Circuit test.

[2] These allegations also constitute impermissible "group pleading" because, as Defendants showed, the allegations are made against "Defendants" or "SunPower management" as a group without specifying the involvement of each Insider Defendant.  (OM 21-22.)  That failure, which is itself fatal to Plaintiffs' claims (*id.*), is particularly significant here because the Employee Defendants—Rodman and Trinidad—did not make any of the alleged misstatements, rendering their state of mind irrelevant to the claims at issue.  (*Id.*)  Plaintiffs make no attempt to defend group pleading, yet they continue to make sweeping, undifferentiated assertions about "Defendants.'"  (*See, e.g.*, Opp. 6, 8.)

Plaintiffs cite CWs 4 and 6, but neither CW says there were "end of quarter adjustments." (*See* OM App'x A.)  CW4 says he raised "concerns" with Rodman about "cost adjustments from the Philippines every quarter."  (Opp. 8, 21.)  The FAC does not identify what the "concerns" were, when CW4 raised them, the size of the alleged adjustments, what (if any) basis they had in fact, what (if anything) they had to do with the unsubstantiated accounting entries, or what Rodman did about them.  (OM 11.)  Plaintiffs falsely argue that CW4 said "the accounting improprieties were never corrected"; but CW4 did not identify any "accounting improprieties," and with respect to the unknown "concerns," he said only that he did not "receive[] an answer," which is hardly surprising since it was CW4's job to identify and report issues to Rodman, not the other way around.  (*See* OM 11; FAC ¶¶ 82, 83.)

CW6 refers only to spreadsheets used to track "budgets" for unidentified "projects."  (OM 10, 12-13.)  CW6 does not describe the content of the spreadsheets at any point in time, does not say that the "projects" had anything to do with the unsubstantiated accounting entries, and does not identify the executives who received or reviewed the spreadsheets.  (*Id.*)[3]  In short, the CWs do not describe any quarter-end adjustments, let alone "massive" ones occurring for seven consecutive quarters.

Plaintiffs also misrepresent that SunPower's restatement "admitted" quarter-end adjustments.  (Opp. 7.)  SunPower made no such "admission."  (*See* Ex. 19.)  Indeed, the allegation that there were "massive" adjustments for seven quarters running is *inconsistent* with the restatement itself, which states that, for four of the seven Class Period quarters, SunPower's gross margin was either *understated* or overstated by no more than 3%.  (*See* FAC ¶¶ 144, 154, 173, 183, 192; Ex. 19.)

Absent facts showing "sudden and inexplicable" end-of-quarter adjustments, Plaintiffs' allegations that the Insider Defendants "obsessively monitored" expenses contribute nothing.  In any event, the CW statements do not describe "obsessive" monitoring.  The CWs identify routine

---

[3] Plaintiffs' Opposition claims that it was "clear" that "CW6 was referring generally to SunPower's five-year plan"; in fact, CW6 does not say that.  (*See* Opp. 6 n.7; FAC ¶ 91.)

1  periodic meetings and reports concerning expenses.[4]  As explained in the OM, however, the CWs

2  do not describe the content of any meeting or report; they certainly do not describe information

3  revealing accounting irregularities.  As before, "[n]one of those allegations . . . rise[s] to the level

4  of an admission that the Insider Defendants . . . had reason to, or did, monitor recordkeeping and

5  accounting functions down to the level of detail where the falsification allegedly occurred."

6  (Order at *22-23.)  These allegations do not, therefore, show that the Insider Defendants "must

7  have" known about GAAP violations.  *See id.*  They fall far short of the allegations held sufficient

8  in *Ernst & Young* (Opp. 8-9).[5]

9           **b.    The superuser allegations do not support an inference of scienter.**

10         Plaintiffs insist that CW7's "superuser" allegations show that one or more Insider

11  Defendant must have made the unsubstantiated entries.  (Opp. 9.)  As explained in the OM,

12  however, CW7's narrative shows that *anyone* at SunPower could have made those entries—not

13  just "superusers."  (OM 9.)  Furthermore, according to CW7, "superuser" access extended well

14  *beyond* the Insider Defendants.  (*See id.*)

15         Similarly, Plaintiffs argue that because "Rodman ultimately approved" all entries over ten

16  thousand dollars, he must have knowingly authorized the unsubstantiated entries.  (*See* Opp. 9.)

17  As explained in the OM, however, this conclusion does not support an inference of scienter for at

18  least four reasons.  (OM 10.)  Plaintiffs offer no response to any of these arguments or to the fact

19  that similar (and more detailed) allegations were rejected in *Zucco*.  (OM 8-10.)

20

21  _____

22  [4] CW4 alleges that "Rodman paid close attention to expenses" and received "monthly reports."
    (FAC ¶ 83.)  CW5 described "quarterly" meetings and "weekly or bi-weekly meetings" in which
    staff discussed Philippines operations.  (*Id.* ¶¶ 84-89.)  CW5 states that the Insider Defendants

23  met "2-3 times per week *during the last two weeks of each quarter*."  (Opp. 1-2.)  CW6 described
    "spreadsheets . . . circulated to SunPower executives" to track "costs" for unidentified "projects."

24  (FAC ¶ 91.)  And CW7 described weekly "VAR" meetings.  (*Id.* ¶ 95.)

    [5] That case held that scienter had been adequately pled against an auditor based on particularized
25  facts supported by e-mails.  For example, emails showed that the auditor had focused on a grant
    of seven million options (that should have resulted in a $700 million charge), asked for

26  documents supporting management's accounting for the grant (taking no charge), received no
    documents in response, but gave a clean audit opinion nevertheless.  The result was a restatement

27  of $2.2 billion covering eight years.  *Ernst & Young LLP*, 641 F.3d at 1098.  No emails or other
    sources provide anything close to the "in your face facts," *id.* at 1103, present in *Ernst & Young*.

28

### c. The employment termination allegations do not support an inference of scienter.

As the OM explained, the CW statements relating to rumors and speculation about how or why the Employee Defendants left SunPower fall far short of the *Zucco* reliability test. (*See* OM 8-9.) CWs 7 and 8 say they "understood" that Trinidad was fired but do not explain when, how, or why they reached that "understanding." CW7's "understanding" is particularly suspect, as he is a former "shift manager" who worked in the Philippines and left ten months before the alleged terminations. (OM 8.) Departures following a finding of accounting impropriety will, almost inevitably, generate rumors. Dressing up these rumors by attributing them to unnamed CWs contributes nothing to the scienter inquiry. *See Zucco*, 552 F.3d at 996-97.

Plaintiffs also point to CW9's artfully worded statement that Rodman said "he was fired *because of* the accounting *issues*." (FAC ¶ 133 (emphasis added); Opp. 9-10.) Tellingly, CW9 does *not* say Rodman was aware of or participated in any wrongdoing. (FAC ¶ 133.) Plaintiffs argue this is a "factual dispute that should not be resolved on a motion to dismiss." (Opp. 9-10 n.12.) That is incorrect. "[A] plaintiff must plead facts refuting the reasonable assumption that [a] resignation occurred as a result of [the] restatement's issuance itself in order for [it] to be strongly indicative of scienter." *Zucco*, 552 F.3d at 1002.

In any event, these allegations concern Rodman and Trinidad only. As discussed below, they do not contribute to an inference that the alleged misstatements were made with scienter because neither Rodman nor Trinidad made those statements.

### 2. The remaining allegations do not support an inference of scienter.

### a. The core operations inference does not apply.

This case does not fall within the "exceedingly rare category of cases" where failure to present particularized facts demonstrating scienter may be excused based on the "core operations inference." *South Ferry LP, #2 v. Killinger*, 542 F.3d 776, 785 n.3 (9th Cir. 2008); *see also Zucco*, 552 F.3d at 1000 (inference applies only under "narrow conditions"). As discussed above, the CWs do not present "detailed and specific allegations about management's exposure to factual information within the company" revealing the fraud. (Order at *21-27.) And the FAC alleges

1    nothing so "patently obvious" to SunPower's management that it would be "absurd to suggest"

2    they missed it.  Indeed, as this Court observed, "plaintiffs have alleged that the [journal] entries

3    were falsified for the very purpose of conforming the results to the company's projections and

4    expectations . . . it is hardly 'absurd' to suggest that the falsifications likely were accepted without

5    question."  (Order at *25.)

6         Unchanged from last time is Plaintiffs' argument that the Insider Defendants "must have

7    known" because of the magnitude of the restatement over "seven consecutive quarters" and

8    SunPower's "relatively small size."  (Opp. 6-7, 11, 14-15.)  This Court has already rejected those

9    arguments.  (Order at *21-27.)  And SunPower is not a "small" company—in 2008, it had 5,400

10   employees in offices in North America, Europe, and Asia; $1.8 billion in income; and quarterly

11   revenues between $211 and $547 million.[6]  (FAC ¶ 69; Ex. 19 at 40, 144; Ex. 2; Ex. 5 at 3.)

12   Indeed, the total impact of SunPower's restatement was a fraction of that in *Zucco*.  (OM 13.)[7]

### b.    The Sarbanes-Oxley certifications still do not support an inference of scienter.

14        The Court has already rejected Plaintiffs' SOX allegations, which are unchanged from the

15   original complaint.  (OM 16; Order at *19-20.)  The new CWs do not describe SunPower's

16   internal controls or the SOX certification process, and the Opposition does not identify any new

17   legal authority.[8]  It simply repeats the "core operations" arguments, which fail for the reasons

18   discussed above, and claims, without support, that SunPower had previously "represented that [it]

19   was fixing its internal controls."  (Opp. 12-13, 15.)  Plaintiffs' argument that SunPower

20   previously identified internal control deficiencies over accounting has no basis in fact and has

22   [6] *Compare Batwin v. Occam Networks, Inc.,* No. CV 07-2750 CAS (SHx), 2008 U.S. Dist.
     LEXIS 52365, at *34 (C.D. Cal. July 1, 2008) (company had "at all relevant times . . . 80 to 100
23   employees"); *In re Northpoint Commc'ns Grp., Inc. Sec. Litig.,* 221 F. Supp. 2d 1090, 1096 (N.D.
     Cal. 2002) (company's quarterly revenues were $24 million).
24   [7] Plaintiffs also make a misleading argument that the "temporal proximity" between SunPower's
     third quarter 2009 financial results and the disclosure of the unsubstantiated accounting entries
25   supports an inference of scienter.  (Opp. 10.)  But that quarter SunPower actually *understated* its
     pre-tax income by $11.7 million (32%), its EPS by $0.07 (33%), and its gross margin by $10
26   million (11%).  (Ex. 17 at 4; Ex. 18.)  The FAC omits these results, which contradict Plaintiffs'
     argument, and instead quotes the *combined* results for 2009.  (*See* FAC ¶ 200(a).)
27   [8] Plaintiffs rely on the same decision as last time, *In re ProQuest Securities Litigation*, 527 F.
     Supp. 2d 728, 745 (E.D. Mich. 2007), which is contrary to the Court's Order and *Zucco*.

SUNPOWER DEFS.' REPLY ISO MTD FAC          7
Case No. CV 09-5473-RS

1   already been rejected by the Court.  (OM 14.)

2           **3.     A holistic analysis undermines, rather than supports, a strong
                      inference of scienter.**
3

4           As the OM showed, when considered holistically, the facts alleged fall short of

5   establishing an inference of scienter that is both cogent and compelling.  Indeed, Plaintiffs have

6   not even described a coherent theory of securities fraud.

7           Plaintiffs again speculate that the Insider Defendants lied in order to boost SunPower's

8   stock price on the eve of the Company's stock and debenture offering.  The Court has already

9   found that argument falls far short.  (OM 15; Order at *20-21.)  Plaintiffs now argue that

10  SunPower's April 2009 offering was "inexplicable" because SunPower had "repeatedly assured

11  investors" it did not need to raise additional capital.  (Opp. 13.)  First, SunPower gave no

12  "assurances"—the statement Plaintiffs cite came from a stock analyst.  (FAC ¶ 111; *see also* Ex.

13  6; Ex. 23 at 1.)  Second, showing SunPower did not need cash *undermines*, rather than supports,

14  the theory that the Insider Defendants had to resort to fraud.  Third, Plaintiffs fail to explain why

15  the Insider Defendants would assume the personal risks of committing securities fraud—

16  including potential civil and criminal liability—just to generate more (surplus) cash for their

17  employer.  Fourth, a single offering hardly explains a seven-quarter "scheme."

18          The OM also showed that the Plaintiffs' allegations regarding the departure of CFO

19  Hernandez not only fail to support an inference that a fraudulent scheme existed; they undermine

20  such an inference.  (OM 8 n.4.)  Plaintiffs do not explain how or why one black-hearted CFO was

21  swapped out for another in the midst of the scheme.

22          Plaintiffs also persist in ignoring that PricewaterhouseCoopers continued to certify

23  SunPower's financial statements after the restatement, while the CEO and CFO retained their

24  positions.  "It is particularly unlikely that [the Corporation] would have kept [defendant] on . . . if

25  the auditors, directors or other officers had suspected him of securities fraud."  *In re VeriFone*

26  *Holdings, Inc. Sec. Litig.*, No. C-07-06140 MHP, 2009 U.S. Dist. LEXIS 44132, at *29 (N.D.

27  Cal. May 26, 2009); *accord In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1157-

28  58 (C.D. Cal. 2007) (auditor's "unqualified opinion [was] 'highly probative' of an absence of

1   scienter").  Here again, the Opposition offers no response.

2        The OM further explains how the Audit Committee's conclusions, upon which Plaintiffs

3   rely *exclusively* to allege falsity, undermine Plaintiffs' theory of scienter.  (OM 6, 18.)  Plaintiffs

4   offer no explanation for why the Court must (1) accept the Audit Committee's conclusions

5   concerning the unsubstantiated entries as if they were gospel truth, yet (2) reject out of hand the

6   Committee's conclusion that the entries were made without the knowledge or involvement of

7   executive management and with no intent to achieve overall financial results.[9]  Plaintiffs plead no

8   facts impugning the integrity or competence of the Committee, composed entirely of independent

9   outside directors, and disclaim any accusation of fraud against any committee member.  (FAC

10  ¶¶ 45, 283, 296; Opp. 12 n.16.)[10]

11       Plaintiffs insist that *Lynch v. Rawls*, No. 09-17379, 2011 U.S. App. LEXIS 8503 (9th Cir.

12  Apr. 26, 2011), "forecloses" consideration of the Committee's conclusions Plaintiffs dislike.

13  (Opp. 2, 11.)  First, *Lynch* does not "foreclose" anything—"[u]npublished dispositions and orders

14  of [the Ninth Circuit] are not precedent."  9th Cir. R. 36-3(a).  Second, *Lynch* is not a Reform Act

15  case, does not address scienter, and does not apply the *Tellabs* holistic analysis.  Third,

16  Defendants have never argued that the court must blindly accept the Audit Committee's final

17  conclusions as true; rather, because Plaintiffs themselves rely exclusively on the Committee's

18  conclusions, *Tellabs* requires that the Court consider these conclusions in their entirety.  *Tellabs*,

19  551 U.S. at 322.  (*See* Opp. 11-12; Mot. to Dismiss Hr'g Tr. 54:10-55:2, Nov. 4, 2010; OM 6.)[11]

20

21  _____

    [9] Plaintiffs argue that "the Audit Committee Report (and Defendants' Motion) fails to identify
22  SunPower's 'executive management'" (Opp. 11 n.13), but SunPower identified its "executive
    officers" in numerous SEC filings, which Plaintiffs rely on and incorporate into the FAC.  (*See,*
23  *e.g.*, Ex. 5 at 69; Ex. 8 at 74.)

    [10] Contrary to Plaintiffs' argument, the Audit Committee members were not named as section 11
24  defendants until two months after they announced the investigation results.  (*See* Dkt. Nos. 1, 92.)
    The Opposition refers to unidentified "other litigation" (Opp. 12), apparently the related
25  derivative action, which is based on a boilerplate complaint filed days after the restatement and
    has been voluntarily stayed.  (*See* Case No. 09-05731-RS, Dkt. Nos. 1, 40, 44.)

26  [11] Furthermore, the audit committee in *Lynch* "consisted of some of the same directors [p]laintiffs
    allege[d] backdated options," 2011 U.S. App. LEXIS 8503, at *5.  Here, the FAC goes out of its
27  way to disclaim any accusation that the Audit Committee members participated in the alleged
    "scheme."
28

**4.      Plaintiffs fail to plead SunPower's scienter.**

Having failed to plead scienter against any Insider Defendant alleged to have made misstatements to investors, Plaintiffs have also failed to state a section 10(b) claim against SunPower.  (OM 18 n.9; Order at *26 n.8 (citing *Glazer*, 549 F.3d at 744).)  "[A] defendant corporation is deemed to have the requisite scienter for fraud only if the individual corporate officer making the statement has the requisite level of scienter."  *Pittleman v. Impac Mortg. Holdings, Inc.*, No. SACV 07-0970 AG (MLGx), 2009 U.S. Dist. LEXIS 18213, at *9-10 (C.D. Cal. Mar. 9, 2009); *In re Cadence Design Sys., Inc. Sec. Litig.*, 654 F. Supp. 2d 1037, 1046 n.7 (N.D. Cal. 2009).

Plaintiffs emphasize their (inadequate) allegations of scienter against Employee Defendants Rodman and Trinidad (*see* Opp. 16), but these do not matter because Plaintiffs concede that neither Employee Defendant made the alleged misstatements (*see id.* at 24).

Plaintiffs vaguely assert that "corporate scienter" can be "derived" from any of the Company's "employees and agents."  Whatever that means, insofar as it exceeds the rule set out above, it is incorrect.[12]  In any event, the cases Plaintiffs cite do not support the notion that SunPower could have scienter even absent scienter on the part of the officers who made the alleged misrepresentations.  The decision in *Allstate Life Ins. Co. v. Robert W. Baird & Co., Inc.*, 756 F. Supp. 2d 1113, 1144 (D. Ariz. 2010), merely describes collective scienter, which, if it exists at all, applies only in "narrow" circumstances not present here, such as were a company

---

[12] Plaintiffs also suggest that SunPower "may" be liable under the doctrine of respondeat superior. (Opp. 16 n.18 (citing *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564 (9th Cir. 1990)).)  There are two fatal problems with this argument.  First, the FAC does not allege an underlying section 10(b) violation against any Insider Defendant, thereby precluding respondeat superior liability. Second, later Supreme Courts cases make clear that there is no "secondary liability" for a section 10(b) violation.  *See Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 200 (1994); *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 162-63 (2008); *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. ___, 180 L. Ed. 2d 166, 175 n.6 (2011) ("[F]or *Central Bank* to have any meaning, there must be some distinction between those who are primarily liable (and thus may be pursued in private suits) and those who are secondarily liable (and thus may not be pursued in private suits).").  Moreover, it is not, as Plaintiffs claim, "undisputed" that the unsubstantiated accounting entries were made by someone acting "within the scope of their employment . . . and for the benefit of SunPower."  (Opp. 16.) As discussed above, the entries were made to meet internal targets, not to "achiev[e] the company's overall financial results or financial analysts' projections."  (Exs. 18, 19 at 39; FAC ¶¶ 124, 126.)

1  that sold no cars announces it sold a million of them. (*See* Order at \*26 n.8.) The other cases

2  Plaintiffs cite either discuss the million-car hypothetical,[13] involve officers who made the alleged

3  misstatements,[14] and/or apply a Second Circuit standard explicitly rejected in *Glazer*.[15]

4  **B.    The Employee Defendants Did Not Make any Statements, and Plaintiffs'**
       **"Scheme" Allegations Contribute Nothing to the Analysis.**

5

6  The OM showed that Plaintiffs' claims against the Employee Defendants should be

7  dismissed for the additional reason that neither made any of the alleged misstatements. (OM 21-

8  23.) The Supreme Court has since made clear that "[f]or purposes of Rule 10b-5, the maker of a

9  statement is the person or entity with ultimate authority over the statement, including its content

10  and whether and how to communicate it. . . . One who prepares . . . a statement on behalf of

11  another is not its maker. . . ." *Janus*, 180 L. Ed. 2d at 175. Plaintiffs now abandon any claim that

12  the Employee Defendants made any of the alleged misstatements. (*See* Opp. 24-25.)[16] Instead,

13  they argue that all Defendants are liable for advancing a "scheme" to defraud investors, which

14  they describe as "new claims" based on Rule 10b-5(a) and (c). (*Id.* 19-23.)

15  The scheme claim is not new. The claim asserted in the CC was one for violation of

16  section 10(b) and Rule 10b-5 generally, and Plaintiffs accused Defendants of engaging in a

17  _____

   [13] *See Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 190 (4th Cir. 2009);
18  *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 710 (7th Cir. 2008).

   [14] *See In re Cabletron Sys., Inc.*, 311 F.3d 11, 40-41 (1st Cir. 2002); *Mizzaro v. Home Depot, Inc.*,
19  544 F.3d 1230, 1254 (11th Cir. 2008); *In re Cadence Design Sys., Inc. Sec. Litig.*, 692 F. Supp.
   2d 1181, 1192 n.8 (N.D. Cal. 2010); *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 416 F.
20  Supp. 2d 779, 791 (N.D. Cal. 2005); *In re Lattice Semiconductor Corp. Sec. Litig.*, No. 04-CV-
   1255-AA, 2006 U.S. Dist. LEXIS 262, at \*54-56 (D. Or. Jan. 3, 2006).

21  [15] *See In re Sonus Networks, Inc. Sec. Litig.*, No. 04-10294-DPW, 2006 U.S. Dist. LEXIS 28272,
   at \*81-83 (D. Mass. May 10, 2006) (declining to adopt the Ninth Circuit rule that "only the
22  knowledge of the officer making the statement at issue can be imputed to the corporation"); *In re
   BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 442-43 (S.D.N.Y. 2005); *Pa. Ave. Funds v. Inyx, Inc.*, 08-
23  CV-6857 (PKC), 2010 U.S. Dist. LEXIS 19177, at \*37-38 (S.D.N.Y. Mar. 1, 2010); *In re Marsh
   & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 481-82 (S.D.N.Y. 2006).

24  [16] Indeed, Plaintiffs concede that SunPower's CEO and CFO had "ultimate authority and control
   over the content and communication of SunPower's" allegedly false statements—not the
25  Employee Defendants. (Opp. 24-25.) Plaintiffs misleadingly quote a 2006 press release as
   saying that Rodman was "responsible for oversee[ing] all accounting and financial reporting for
26  the Company," while omitting the preceding text, which makes it clear that Rodman would be
   "reporting to the CFO" in that capacity. (Opp. 16, 20.) *See* Jan. 17, 2006 Press Release at
27  http://files.shareholder.com/downloads/SPWR/0x0x28194/0d22649d-7244-42c3-80e4-
   4a999cb0caa8/184502.pdf.

28

1   "scheme" eighteen times.[17]  The scheme alleged in the FAC—to deceive investors by misstating

2   earnings in SunPower's publicly released financial statements in order to artificially inflate

3   SunPower's stock price—is exactly the same as the scheme alleged in the CC.[18]  (*See* CC ¶¶ 228-

4   31; Shapiro Decl. Ex. A at 121.)  As discussed above, the facts pled in the FAC do not establish a

5   cogent and compelling inference that such a scheme existed.

6          Plaintiffs argue that Rule 10b-5(a) and (c) prohibit schemes to defraud investors through

7   conduct *other than* false statements.  (Opp. 19.)  While a private right of action may be based on

8   violations of Rule 10b-5(a) and (c) to redress harm caused by manipulative conduct, such as wash

9   sales, matched orders, or rigged sales, *see Desai v. Deutsche Bank Securities Ltd.*, 573 F.3d 931,

10  938-39 (9th Cir. 2009), the FAC alleges nothing of that nature.  The scheme alleged in the FAC is

11  to deceive investors through false statements and Plaintiffs do not contend that Defendants

12  induced reliance on the part of investors in any other way.  (*See* FAC ¶¶ 6, 38, 255, 273-78.)

13         As set forth in the OM, courts in this Circuit have consistently rejected attempts to use

14  Rule 10b-5(a) and (c) in false-statement cases against defendants who did not make the

15  statements.  (OM 22-23.)  Plaintiffs either ignore these cases, as with *In re Dura*

16  *Pharmaceuticals, Inc. Securities Litigation*, 548 F. Supp. 2d 1126 (S.D. Cal. 2008), or attempt to

17  distinguish them by mischaracterizing their facts and holdings.  Plaintiffs argue that the defendant

18  in *Immersion* was not accused of deceptive acts, but that is untrue.  *See In re Immersion Corp.*

19  *Sec. Litig.*, No. C-09-4073 MMC, 2011 U.S. Dist. LEXIS 24886, at *11 (N.D. Cal. Mar. 11,

20  2011).  They argue that the defendant in *VeriFone* was a "low level" employee, when he was

21  really a controller with "primary responsibility for preparing VeriFone's company-wide gross

22  margin forecasts, its core financial metric."  *In re VeriFone Holdings, Inc. Sec. Litig.*, No. C-07-

23  6140 MHP, 2011 U.S. Dist. LEXIS 24964, at *32 (N.D. Cal. Mar. 8, 2011).  And they argue that

24  *International Rectifier* is distinguishable because the court "ultimately sustained Section 10(b)

25  _____

    [17]  *See* CC ¶¶ 6, 7, 8, 32, 55, 69, 70, 86, 115, 125, 135, 144, 154, 163, 172, 217, 230.

26  [18]  *See* CC ¶ 6, FAC ¶ 6 ("SunPower and the Insider Defendants' . . . scheme was simple—they
    intentionally made improper adjustments to the Company's accounting records to remove current
27  operating expenses . . . thereby inflating SunPower's earnings and sales margins and enabling
    SunPower to publicly report 'record' financial results during the Class Period."); FAC ¶ 38.
28

1    claims," ignoring the fact that the court dismissed all claims against the defendants who did not

2    make the alleged misstatements.  *See In re Int'l Rectifier Corp. Sec. Litig.*, No. CV 07-02544-

3    JFW (VBKx), 2008 U.S. Dist. LEXIS 106929, at *37 (C.D. Cal. Dec. 31, 2008).

4             Plaintiffs cite no case in this Circuit finding a non-speaking defendant liable for alleged

5    misstatements to investors.  Plaintiffs focus on *New York City Employees' Retirement System v.*

6    *Berry*, 616 F. Supp. 2d 987 (N.D. Cal. 2009), but in that case Chief Judge Ware dismissed all the

7    section 10(b) claims against Berry—a general counsel who backdated stock options—except for

8    claims based on the false investor communications she personally signed.  *Id.* at 994, 1001-03.[19]

9    Consistent with that decision, Chief Judge Ware also dismissed scheme claims against non-

10   speaking employees who pled guilty to criminal charges for orchestrating a price-fixing scheme,

11   because their "deceptive acts, which were not disclosed to the investing public, [were] too remote

12   to satisfy the requirement of reliance to sustain a § 10(b) private cause of action."  *In re Infineon*

13   *Techs. AG Sec. Litig.*, No. 5:04-cv-04156-JW, slip op. at 16 (N.D. Cal. Jan. 25, 2008) (quoting

14   *Stoneridge*).

15            In short, "a misrepresentation (or omission) claim under subsection (b) [of Rule 10b-5]

16   may not be recast as a claim under subsection (a) or (c) so as to evade the pleading requirements

17   which apply in misrepresentation cases."  *Steed v. Warrior Capital, LLC*, No. CIV-06-348-F,

18   2007 U.S. Dist. LEXIS 27308, at *15-16 (W.D. Okla. Apr. 11, 2007); *accord TCS Capital Mgmt.,*

19   *LLC v. Apax Partners, L.P.*, No. 06-CV-13447 (CM), 2008 U.S. Dist. LEXIS 19854, at *62-63

20

---

21   [19] Plaintiffs describe *Cadence*, 692 F. Supp. 2d at 1192-94, as "instructive."  But *Cadence* does
     not even address scheme liability; instead, it applies the now defunct "substantial participation"
22   rule for determining who made a statement.  *Id.* at 1192 n.8.  Plaintiffs' other cases all present
     market manipulation claims, not repackaged misstatement claims like Plaintiffs' here.  *See SEC v.*
23   *Zandford*, 535 U.S. 813, 815-16 (2002) (securities broker who misappropriated customer
     investments); *No. 84 Emp'r-Teamster Joint Council Pension Trust Fund v. Am. West Holding*
24   *Corp.,* 320 F.3d 920, 924 (9th Cir. 2003) (insider trading scheme); *In re Able Labs. Sec. Litig.,*
     No. 05-2681 (JAG), 2008 U.S. Dist. LEXIS 23538, at *8 (D.N.J. Mar. 24, 2008) (scheme to
25   falsify reports to the FDA); *In re Micron Tech., Sec. Litig.*, No. CV-06-85-S-BLW, 2009 U.S.
     Dist. LEXIS 13793, at *4 (D. Idaho Feb. 23, 2009) (price-fixing scheme).  Moreover, Chief Judge
26   Ware dismissed scheme claims regarding the same exact price-fixing "scheme" as alleged in
     *Micron*.  *See Infineon*, slip op. at 16.  Finally, in *Hawaii Ironworkers Annuity Trust Fund v. Cole*,
27   No. 3:10CV371, 2011 U.S. Dist. LEXIS 35506, at *11 (N.D. Ohio Mar. 31, 2011), the court
     relies on the fact that defendants "substantially participated" in making the alleged misstatements,
28   a standard since rejected in *Janus*, 180 L. Ed. 2d at 178.

1   (S.D.N.Y. Mar. 7, 2008) (dismissing section 10(b) claim where it was apparent that the "so-called

2   'deception'" that formed the basis of the scheme liability claim "[was] nothing more than a

3   reiteration of the misrepresentations and omissions that underlie [the] disclosure claim"); *In re*

4   *Royal Dutch/Shell Transp. Sec. Litig.*, No. 04-374 (JAP), 2006 U.S. Dist. LEXIS 56778, at *31

5   (D.N.J. Aug. 14, 2006) ("a plaintiff claiming violations of Rule 10b-5(a) or (c) must allege that

6   the defendant engaged in a manipulative or deceptive scheme or conduct that encompasses acts

7   beyond misrepresentations").

8         C.    **Plaintiffs' Claims Based on Forward-Looking Statements and Vague**

9                   **Statements of Corporate Optimism Fail.**

10         The OM showed that dozens of the alleged misstatements are not actionable because they

11   are (1) vague statements of corporate optimism or (2) forward-looking statements protected by

12   the Reform Act's Safe Harbor and the "bespeaks caution" doctrine.  (OM 19-20.)  Plaintiffs

13   present no argument in response to the first point.  (*See* Opp. 17-18.)  Responding to the second

14   point, Plaintiffs appear to abandon their claims regarding forward-looking statements such as

15   financial projections.  (*See* OM 19; Opp. 15.)  Plaintiffs address a few statements they say are

16   "concerning historical or current facts."  (Opp. 17 (citing *In re Tibco Software, Inc. Sec. Litig.*,

17   No. C 05-2146 SBA, 2006 U.S. Dist LEXIS 36666 (N.D. Cal. May 25, 2006)).)  But those

18   statements are also protected by the Safe Harbor because they are present-tense statements whose

19   truth or falsity cannot be discerned until after the statements are made.  *See Tibco*, 2006 U.S. Dist.

20   LEXIS 36666, at *76.

21         Finally, Plaintiffs argue that the Safe Harbor does not protect the forward-looking

22   statements because they were made with actual knowledge of their falsity.  (Opp. 17 n.21.)

23   Again, Plaintiffs are wrong.  "If a forward-looking statement is identified as such and

24   accompanied by meaningful cautionary statements, then the state of mind of the individual

25   making the statement is irrelevant, and the statement is not actionable *regardless of the plaintiff's*

26   *showing of scienter*."  *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112 (9th Cir. 2010) (emphasis

27   added).

28

1   **II.     THE SECTION 20(a) CLAIMS SHOULD BE DISMISSED.**

2          As explained in the OM, all section 20(a) claims should be dismissed because the FAC

3   fails to allege a section 10(b) claim.  The section 20(a) claims against the Employee Defendants

4   should also be dismissed for the independent reason that Plaintiffs have failed to allege

5   particularized facts showing that they were controlling persons of SunPower.  (OM 23-24.)

6   Plaintiffs do not oppose this argument.  (*See* Opp. 25.)[20]

7   **III.    THIS ACTION SHOULD BE DISMISSED WITH PREJUDICE.**

8          The OM showed that the FAC should be dismissed with prejudice because Plaintiffs have

9   filed two amended complaints and have not presented any support, in the form of witnesses,

10  documents, or otherwise, for their conclusory allegations of fraud.  (*See* OM 24-25.)  Plaintiffs'

11  failure to make any progress toward meeting the standard set in the Order provides a "strong

12  indication that the plaintiffs have no additional facts to plead."  (OM 25 (citing *Zucco*, 552 F.3d at

13  1007).)[21]  Dismissal should, therefore, be with prejudice.  *Zucco*, 552 F.3d at 1007.

14                                    **CONCLUSION**

15         For the reasons set forth above, the SunPower Defendants respectfully request that the

16  Court dismiss Plaintiffs' First Amended Complaint with prejudice.

17  Dated:  July 27, 2011              MORRISON & FOERSTER LLP

18                                     By:     /s/ *Judson E. Lobdell*
19                                             Judson E. Lobdell

20                                     Attorneys for Defendants SUNPOWER
                                       CORPORATION, THOMAS H. WERNER, DENNIS V.
21                                     ARRIOLA, EMMANUEL T. HERNANDEZ, JOHN B.
                                       RODMAN, T.J. RODGERS, W. STEVE ALBRECHT,
22                                     BETSY S. ATKINS, PATRICK WOOD, III, and UWE-
                                       ERNST BUFE

23

24  [20] Plaintiffs argue that Rule 9(b)'s heightened pleading requirements do not apply to their section
    20(a) claims, but the cases they cite do not support that.  (*See* Opp. 25.)  Plaintiffs also suggest
25  that SunPower is a control person of itself, but that makes no sense and is not what the FAC
    alleges.  (*See id.*; FAC ¶¶ 280-81.)  The only case they cite on the issue of section 20(a) liability
26  involves defendants who were executive officers and "substantially participated" in the alleged
    misstatements, a standard *Janus* rejected.  *See Cadence*, 692 F. Supp. 2d at 1192 n.8.
27  [21] Plaintiffs' section 11 and 15 claims, which Plaintiffs repeat only to preserve their appellate
    rights, should also be dismissed with prejudice.  (*See* OM 5, 25 n.15; Opp. 3 n.3.)
28