**\*\*E-filed 12/19/11\*\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

IN RE SUNPOWER SECURITIES
LITIGATION

No. C 09-5473 RS

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**

## I. INTRODUCTION

In this shareholders' putative class action, plaintiffs contend that defendant SunPower made numerous public statements, and filings with the Securities and Exchange Commission, that were false and misleading because they contained information predicated on improperly manipulated accounting data. Plaintiffs' initial consolidated complaint alleged facts sufficient at the pleading stage to support a strong inference that the company's costs of goods sold had been deliberately understated. The complaint was dismissed with leave to amend, however, because the allegations did not adequately show that SunPower and its management had knowledge of the falsified accounting entries. As a result, the initial consolidated complaint did not give rise to the requisite cogent and compelling inference that SunPower and its management acted with scienter in making the alleged misrepresentations to the public in violation of the securities laws.

The First Amended Consolidated Complaint ("the FAC") buttresses plaintiffs' original allegations largely through the use of additional "confidential witnesses" and additional detail regarding the involvement of U.S. management personnel in overseeing operations and accounting

functions in the Philippines, where the alleged accounting manipulations took place. The FAC also names as additional defendants two SunPower employees who are implied to have been primarily responsible for carrying out the accounting improprieties, and alleges their connections to the corporate officer defendants. Pointing to certain generalities in the allegations as amended, and to the lack of any direct evidence that SunPower's officers *necessarily* knew of the accounting manipulation or acted with deliberate recklessness, defendants contend the FAC still does not state a claim.

Although the question is somewhat close, plaintiffs have now alleged enough circumstantial facts to support a strong inference of scienter, given that this is not a case where it is arguable that the underlying accounting discrepancies were only inadvertent. Accordingly, defendants' motion to dismiss the FAC will be denied, except as to the two new individual defendants and as to certain previously-dismissed claims that plaintiffs elected to reassert without amendments solely to preserve their appellate rights.

## II. BACKGROUND

As described in more detail in the prior order, SunPower designs, manufactures, and markets various devices for use in converting sunlight into electricity, and also offers engineering and development services for large solar power plant installations. While SunPower is a Delaware corporation headquartered in San Jose, California, its manufacturing operations and the bulk of its personnel and assets are located in the Philippines.

Plaintiffs have alleged that, as a result of a variety of circumstances and competitive pressures in the industry, SunPower was unusually focused on closely monitoring and containing its costs. In November of 2009, however, SunPower announced that its prior financial statements were no longer to be considered reliable, and that its audit committee had commenced an investigation of "unsubstantiated accounting entries." Ultimately, SunPower restated its earnings for the fiscal year ending December 28, 2008, each quarterly period in 2008, and the first three quarters of the fiscal year ending January 3, 2010.

SunPower also disclosed:

[T]he Audit Committee's investigation found that unsubstantiated entries (a) were made at the direction of the Philippines-based finance personnel in order to report results for manufacturing operations that would be consistent with internal expense projections, (b) generally resulted in an *understatement of the Company's cost of goods sold*, and (c) were not directed or encouraged by, or done with the knowledge of, executive management . . . .

The investigation found that certain expenses were understated by (a) not sufficiently accruing expenses or (b) *reversing previously recorded expenses through manual journal entries that were not based on actual transactions or reasonable estimates of expenses* . . . .

The investigation found that *unsubstantiated entries were made to increase inventory and decrease cost of goods sold by adjusting variance capitalization amounts*.

FAC ¶ 124 (emphases by plaintiffs).

Even standing alone, but certainly in the context of plaintiffs' other allegations, the audit committee's conclusions are sufficient to create a strong inference that the person or persons who authorized and carried out the accounting manipulations did so with the knowledge that the entries were false, and with an intent to mislead. As observed in the prior order, however, the fact that one or more SunPower employees may have intentionally falsified internal reports for the purpose of misleading their direct audience does not automatically create a strong inference that the company and its officers acted with scienter when using such false information. In particular, the initial complaint did not link senior management's use of those reports in SEC filings and public statements regarding the company's financial results and prospects to knowledge of the underlying falsity. Plaintiffs have attempted to bridge that gap by adding two basic kinds of allegations. First, the FAC includes averments based on interviews plaintiffs conducted with six "confidential witnesses" (in addition to the three confidential witnesses mentioned in the initial complaint). Second, plaintiffs have added as named defendants John B. Rodman, the former Corporate Controller, and Mariano M. Trinidad, the former "Philippines Finance Director."

The new allegations lay out in greater detail how the accounting operations in the Philippines allegedly were controlled and closely monitored by SunPower's CEO Thomas H.

Werner, its former CFO Emmanuel T. Hernandez, and its current CFO Dennis V. Arriola. The complaint stops short of expressly alleging that either Rodman or Trinidad necessarily were the individuals who personally made the "manual journal entries" and other improper adjustments to the accounting figures, but it asserts that they were directly responsible for carrying out the scheme. Plaintiffs then rely on allegations that Rodman and Trinidad were in close and continual communication with Werner, Hernandez, and Arriola to tie management in the United States into the alleged misconduct in the Philippines.

### III. DISCUSSION

#### A. Sufficiency of scienter allegations

As discussed in more detail in the prior order, the familiar pleading requirements of Rule 8 of the Federal Rules of Civil Procedure, as articulated in *Twombly*[1] and *Iqbal*[2] and as supplemented by Rule 9 for fraud claims, are only the starting point in actions such as this, which are governed by the more stringent requirements of the Private Securities Litigation Reform Act ("PSLRA"). Of particular significance here is the provision of the PSLRA requiring that a complaint, "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added). In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), the Supreme Court defined "strong inference," as arising "only if a reasonable person would deem the inference of scienter *cogent and at least as compelling as* any opposing inference one could draw from the facts alleged." *Id*. at 324 (emphasis added).

As recounted in *Tellabs*, the PSLRA adopted the "strong inference" requirement from then-existing Second Circuit case authority that had imposed it to "to ward off allegations of 'fraud by hindsight.'" *Id.* at 320 (citing *Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1129 (2nd Cir. 1994) and *Denny v. Barber*, 576 F.2d 465, 470 (2nd Cir. 1978). While this is not to imply that the requirement ceases to exist in a case that bears no earmarks of "fraud by hindsight," the challenge of

---

[1] *Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007).

[2] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

4

pleading scienter in this action is somewhat lessened by SunPower's admission of facts inconsistent with mere negligence or even recklessness on the part of the employees who engaged in the accounting manipulation.

Defendants rely heavily on *Zucco Partners v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009) to argue that plaintiffs have not met their burden to plead scienter. Defendants point out that *Zucco* similarly involved improper accounting entries made by lower level employees. As here, the *Zucco* plaintiffs attempted to impute knowledge of those issues to company management by pointing to many of the same kinds of facts relied on by plaintiffs in this case, including the existence of confidential witnesses who described management's access to, and monitoring of, financial information on an ongoing and careful basis.

*Zucco* is certainly highly relevant here. The prior order cited it extensively in concluding that the initial complaint was insufficient, and the similarities between *Zucco* and this case continue to make the question somewhat close. That said, the *Zucco* plaintiffs were faced with the challenge of not only pleading a strong inference that management had knowledge of the accounting details, but also that the numbers were deliberately falsified in the first instance, as opposed to reflecting mere negligence or errors of judgment. On the allegations before it, the *Zucco* court was able to conclude:

> Although the allegations in this case are legion, even together they are not as cogent or compelling as a plausible alternative inference—namely, that although Digimarc was experiencing problems controlling and updating its accounting and inventory tracking practices, *there was no specific intent to fabricate the accounting misstatements at issue here*. Instead, the facts alleged by Zucco point towards the conclusion that Digimarc was simply overwhelmed with integrating a large new division into its existing business . . . . [T]his integration resulted in problems including *inadequate training of personnel in the new Great Plains system, duplicate recording of purchases, and other classification errors*.

552 F.3d at 1007.

In other words, apart from the question of what management did or did not know, the allegations in *Zucco* supported a plausible and compelling alternative inference that there had been no deliberate falsification of accounting records at all.[3] No similar inference is supportable here.

The facts alleged in the FAC also support other significant distinctions from those presented in *Zucco*. Defendants are correct that under *Zucco*, generalized allegations that company management had access to, and closely monitored, financial performance data and reports is, by itself, insufficient to create a strong inference that management must have participated in, or known of, improper accounting practices. *See* 552 F.3d at 1000-1001 ("allegations that Digimarc's management had access to the purportedly manipulated quarterly accounting numbers, or that management analyzed the inventory numbers closely, do not support the inference that management was in a position to know that such data was being manipulated. Nothing in the complaint suggests that [the CFO] had access to the underlying information from which the accounting numbers were derived." ) The prior order of dismissal was based in part on the failure of the original complaint to allege more than such general, albeit careful, monitoring of financial reports.

The FAC, however, has added further details regarding the extent and nature of management's efforts to control and monitor closely accounting operations in the Philippines. Additionally, the FAC now describes the process by which the "manual adjustments" to the accounting figures were made. According to the FAC, after data from the company's accounting database was "exported" to Excel spreadsheets, any changes that were made could only be "imported" back into the system by persons holding "superuser" access. While defendants point out that "superusers" included some persons other than the very top level executives, this at least strengthens the inference that management was aware the accounting figures were being manipulated.

Defendants argue that even assuming top executives were involved in importing manipulated figures back into the system, it does not follow that any of them were aware that the data was false.

---

[3] *Compare also In re NVIDIA Corp. Securities Litigation*, 2011 WL 4831192, *3 (N.D.Cal. 2011) (dismissing securities fraud action where the more compelling inference was that the company had at most been negligent or reckless in failing to appreciate scope of a product defect issue and the potential for resulting financial liability).

As explained in *Tellabs*, however, "[t]he inference that the defendant acted with scienter need not be irrefutable, *i.e.,* of the "smoking-gun" genre, or even the most plausible of competing inferences." 551 U.S. at 324 (citations omitted). Additionally, the mere fact that the accounting data was being *changed* supports an inference not present in *Zucco*. While there may be perfectly legitimate reasons to change or correct data (indeed, it would be negligent not to do so when an innocent error was discovered), plaintiffs have alleged a pattern and scope of changes being made that could not easily be dismissed as routine.

Plaintiffs offer a variety of additional factual averments that they contend support a strong inference of scienter, including allegations that Trinidad was terminated "along with others in the Philippines" and that "Rodman was also implicated in the unsubstantiated journal entries and may have been pushed out of the Company as a result." FAC ¶134. Defendants, in turn, poke holes in each of these additional allegations, arguing that the reports of confidential witnesses are vague, speculative, and/or lack foundation, or that the claims are similar to those found wanting in *Zucco*. In the end, however, defendants are simply setting the bar too high. Plaintiffs need not plead facts that would rule out every alternative innocent explanation. The combined weight of all of their allegations is sufficient, at the pleading stage, where there is no real question that the accounting entries were deliberately falsified and the only issue is whether SunPower and its officers were aware of the problem.

As *Tellabs* teaches, the inquiry is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." 551 U.S. at 522-523 (emphasis in original). As such, plaintiffs' further allegations regarding such matters as the Sarbanes-Oxley certifications signed by SunPower's officers, which the prior order found insufficient to tip the balance, also reenter the mix. Under a "holistic" view, a reasonable person could deem there to be a cogent and compelling inference that SunPower's officers were aware of the accounting manipulation.[4] The contrary inference—that

---

[4] Defendants further contend that plaintiffs have alleged no plausible *motive* for SunPower's officers to have engaged in securities fraud, as the FAC abandons plaintiffs' prior attempt to show insider trading. As stated in *Tellabs*, "[w]hile it is true that motive can be a relevant consideration, and personal financial gain may weigh heavily in favor of a scienter inference . . . the absence of a motive allegation is not fatal." 551 U.S. at 325.

7

lower level employees managed to carry out the scheme without detection by, or involvement of, management despite the alleged efforts it made to monitor and control costs, and the mechanisms by which changes to data were made, is certainly plausible as well, but not more so.[5] Accordingly, the motion to dismiss for failure to allege scienter adequately will be denied.[6]

### B.  Claims against Rodman and Trinidad

Defendants seek dismissal of the claims against Rodman and Trinidad on the independent grounds that neither of them is alleged to have made any of misrepresentations to the public.[7] *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177 (1994) (holding that there is no "aiding and abetting" liability for securities fraud).  Plaintiffs concede that Rodman and Trinidad therefore cannot be held liable for making misrepresentations, but insist that they nonetheless can be charged with having violated SEC Rule 10b-5(a) & (c) for participating in a "device, scheme or artifice to defraud."  Plaintiffs have failed to show, however, that where an alleged "scheme" consists of making misleading or deceptive public statements regarding a company's operations or prospects (as opposed to other forms of securities manipulation), liability can be imposed against "non-speakers" merely by re-labeling the claim.  The claims against Rodham and Trinidad under Section 20(a) of the Securities Exchange Act of 1934 also fail because they do not qualify as "controlling persons" thereunder.  Accordingly, Rodman and Trinidad are hereby dismissed from this action, without leave to amend.

---

[5]  This conclusion follows from the "holistic" analysis mandated by the Ninth Circuit in *Zucco*, and does not turn on any differences in approach that may exist in the Sixth Circuit, as articulated in *Frank v. Dana Corp.*, 646 F.3d 954 (6th Cir. 2011).

[6]  Defendants also seek dismissal of the claims to the extent they are based on representations that they characterize as "forward looking" or "vague statements of corporate optimism."  In light of the fact that the FAC unquestionably includes alleged misrepresentations of existing material fact, further parsing of exactly which statements or portions thereof might or might not be actionable is not appropriate at this juncture.

[7]  Trinidad, a resident of the Philippines, has not been served or appeared in this action.

C. Securities Act Claims previously dismissed without leave

The prior order dismissed plaintiffs' claims under the Securities Act of 1933, 15 U.S.C. §§77a, *et seq*. While leave to amend was granted, the order expressed doubt that the defects were curable. In the FAC, plaintiffs elected not to amend the claims, but to reallege them without any changes "solely and exclusively to preserve their appellate rights." FAC ¶3 n.2. In light of this, for the reasons set forth in the prior order, the claims are again dismissed, this time without leave to amend.

IV. CONCLUSION

Defendants' motion to dismiss is granted with respect to all claims asserted against defendants Rodman and Trinidad, and as to all claims under the Securities Act of 1933. The motion is otherwise denied. Defendants shall file an answer within 20 days of the date of this order.

IT IS SO ORDERED.

Dated: 12/19/11

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE