KESSLER TOPAZ MELTZER
   & CHECK, LLP
RAMZI ABADOU  (Bar No. 222567)
ELI R. GREENSTEIN  (Bar No. 217945)
STACEY M. KAPLAN  (Bar No. 241989)
ERIK D. PETERSON  (Bar No. 257098)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:     (415) 400-3000
Fax:     (415) 400-3001
rabadou@ktmc.com
egreenstein@ktmc.com
skaplan@ktmc.com
epeterson@ktmc.com

KAPLAN FOX & KILSHEIMER LLP
LAURENCE D. KING (Bar No. 206423)
MARIO M. CHOI (Bar No. 243409)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Tel:     (415) 772-4700
Fax:     (415) 772-4707
lking@kaplanfox.com
mchoi@kaplanfox.com

*Attorneys for Lead Plaintiffs Arkansas Teacher*
*Retirement System, Första-AP Fonden and*
*Danske Invest Management A/S*

BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
DAVID R. STICKNEY (Bar No. 188574)
BENJAMIN GALDSTON (Bar No. 211114)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:     (858) 793-0070
Fax:     (858) 793-0323
davids@blbglaw.com
beng@blbglaw.com

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SUNPOWER SECURITIES LITIGATION | Case No. CV 09-5473-RS (JSC) (Consolidated)<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO FIRST SET OF DOCUMENT REQUESTS**<br><br>Judge: Honorable Jacqueline Scott Corley<br>Date: October 4, 2012<br>Time: 9:00 am<br>Courtroom: 7, 15th Floor |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................1

II.     ARGUMENT ......................................................................................................3

        A.      Plaintiffs' Proposed Relevant Time Period Is Reasonably
                Calculated to Lead to Discovery of Admissible Evidence ..............................3

                1.      Documents Created Post-April 2007 Are Relevant and
                        Discoverable Under Rule 26 ................................................................4

                2.      Information Created Through June 30, 2010 Is
                        Relevant ..............................................................................................8

        B.      Defendants' Proposed Custodial Limitations Are Contrary to
                Rule 26 and Judge Seeborg's Prior Ruling .......................................................8

                1.      The Court Has Already Rejected Defendants' Attempt
                        to Limit Discovery to a Few Executives ................................................8

                2.      Defendants' Custodial Limitations Are Contrary to
                        Rule 26 .............................................................................................10

        C.      Defendants' Manufactured "Burden" Argument Is Baseless
                and Is Outweighed by the Relevance of the Requested
                Information .................................................................................................11

        D.      The Individual Requests Seek Discoverable Information ..............................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Curry v. Hansen Med., Inc.*,
    2012 U.S. Dist. LEXIS 112449 (N.D. Cal. 2012) ...................................................... 9, 10, 11

*In re Daou Sys., Inc., Sec. Litig.*,
    411 F.3d 1006, 1015 (9th Cir. 2005) ............................................................................... 9

*DirectTV, Inc. v. Trone*,
    209 F.R.D. 455, 458 (C.D. Cal. 2002) ........................................................................... 11

*Glazer Capital Mgmt., L.P. v. Magistri*,
    549 F.3d 736 (9th Cir. 2008) ......................................................................................... 11

*In re Google Litig.*,
    2011 U.S. Dist. LEXIS 9924 (N.D. Cal. 2011) .................................................. 11, 13, 14

*Greer v. Elec. Arts, Inc.*,
    2012 U.S. Dist. LEXIS 12050 (N.D. Cal. 2012) ............................................................ 14

*In re IBM Corp. Sec. Litig.*,
    1993 U.S. Dist. LEXIS 20041 (S.D.N.Y. 1993) ............................................................ 14

*Kaplan v. Rose*,
    49 F.3d 1363 (9th Cir. 1994) ........................................................................................... 5

*La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*,
    2012 U.S. Dist. LEXIS 128531 (N.D. Cal. 2012) .................................................... 11, 12

*Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc.*,
    2006 U.S. Dist. LEXIS 96070 (N.D. Ill. 2006) ............................................................. 14

*Local Union No. 490 v. Kirkhill Rubber Co.*,
    367 F.2d 956 (9th Cir. 1966) ......................................................................................... 12

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006) ........................................................................... 11

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*,
    No. 08-6324, slip op. (D. Minn. Dec. 21, 2010) .............................................................. 7

*Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*,
    2005 U.S. Dist. LEXIS 4300 (S.D.N.Y. 2005) ............................................................... 7

*In re New Century*,
    No. CV 07-0931 DDP, slip op. (C.D. Cal. July 8, 2009) ................................................. 7

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340, 351 (1978) ............................................................................3

*Plichta v. SunPower Corp.*,
   790 F. Supp. 2d 1012 (N.D. Cal. 2011) ....................................................5

*Regan-Touhy v. Walgreen Co.*,
   526 F.3d 641 (10th Cir. 2008) ................................................................14

*In re SunPower Sec. Litig.*,
   2011 U.S. Dist. LEXIS 152920 (N.D. Cal. 2011) ..................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ................................................................................14

*Valentini v. Citigroup, Inc.*,
   837 F. Supp. 2d 304 (S.D.N.Y. 2011) ....................................................11

*Vallabharpurapu v. Burger King Corp.*,
   276 F.R.D. 611 (N.D. Cal. 2011) .........................................................3, 4

*In re VeriFone Holding, Inc. Sec. Litig.*,
   2011 U.S. Dist. LEXIS 24964 (N.D. Cal. 2011) ....................................11

**STATUTES**

§10(b) of the Securities Exchange Act of 1934 ............................................7

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ................................................................................*passim*

Fed. R. Civ. P. 30(b)(6) ..................................................................................6

Fed. R. Evid. 401(a)-(b) .................................................................................5

Fed. R. Evid. 404(b) ......................................................................................6

## I.   INTRODUCTION

Plaintiffs' Motion to Compel establishes the relevance, discoverability and proportionality of two primary categories of disputed information.[1]   *First*, Plaintiffs demonstrate that their proposed time period for discovery, April 1, 2007 through June 30, 2010 (the "Relevant Time Period"), is reasonably calculated to lead to discovery of admissible evidence.  Mot. at 9-13.  With respect to the April 2007 start date, the Complaint explicitly refers to relevant events and information in 2007 directly related to Plaintiffs' claims.  *Id*. at 11-13.  Plaintiffs also provide direct and uncontroverted evidence showing that, in 2007 (and even as early as 2006), SunPower had engaged in the *same* type of accounting improprieties, in some of the *same* accounts, while disregarding the *same* inadequate internal controls that ultimately led to SunPower's multi-million dollar restatement (the "Restatement").  *Id*. at 13-15.  Plaintiffs' proposed end date of June 30, 2010 captures documents relating to a written inquiry from the SEC that was publicly filed on *June 1, 2010*, to which SunPower formally responded on *July 2, 2010*.  The SEC's letter requested information regarding SunPower's accounting misconduct *during* the Class Period.  Accordingly, both the April 1, 2007 start date and the June 30, 2010 end date are narrowly tailored to elicit evidence relevant to Plaintiffs' claims.  *Id*. at 9-15.

*Second*, Plaintiffs' Motion establishes the relevance of a dozen disputed document requests and the impropriety of Defendants' attempt to limit certain categories of discovery to a small group of five to seven SunPower executives. *Id*. at 15-25.  Defendants' custodial limitations are inconsistent with Fed. R. Civ. P. 26 ("Rule 26") and would exclude numerous important witnesses who undoubtedly possess relevant documents.  Mot. at 16-17.  Indeed, Judge Seeborg has already rejected Defendants' virtually identical strategy to limit discovery to a small group of SunPower executives.  *Id*. at 4, 16; *see also* Dkt. No. 186 at 5-6.  Now

---

[1]      "Mot." citations are to Plaintiffs' Motion to Compel Production of Documents Responsive to First Set of Document Requests (the "Motion").  "Peterson Decl." refers to the Declaration of Erik D. Peterson in Support of Plaintiffs' Motion.  References to "Opp." or "Opposition" are to Defendants' Opposition to Plaintiffs' Motion.  Unless otherwise noted, "¶" references are to the operative Complaint (Dkt. No. 153), all emphasis is added and internal citations are omitted.

1   again, Defendants ask this Court to rely upon the same erroneous theory of scienter that
2   ignores SunPower's *corporate scienter* and purports to limit the scope of culpable scienter and
3   related discovery to the three Individual Defendants.  *Id.*  SunPower itself, however, remains a
4   defendant in this case, and recent decisions from this District confirm that SunPower's scienter
5   derives from traditional principles of *respondeat superior* and is not limited to three
6   individuals' scienter.  Defendants' Opposition inexplicably ignores Judge Seeborg's prior
7   ruling rejecting their attempt to limit discovery to three officers.  *See* §II.B.1, *infra*.

8       Defendants' other efforts to unreasonably curtail Plaintiffs' discovery are meritless.  On
9   relevance, Defendants seek to impose a standard that is more akin to the standards of proof and
10  admissibility at trial.  *See, e.g.*, Opp. at 7-8.  Indeed, Defendants' 24-page brief does not
11  contain a *single* reference, even in passing, to the applicable Rule 26 standard: whether the
12  requested information is "*reasonably calculated* to lead to the discovery of admissible
13  evidence."  Rule 26(b)(1).  Instead, Defendants appear to suggest that in order to obtain
14  discovery, Plaintiffs must essentially *prove* that a requested document will itself directly *prove*
15  the elements of Plaintiffs' claims, such as Defendants' scienter—an issue that will likely be the
16  seminal issue *at trial*.  This circular relevancy test does not comport with Rule 26 or this
17  Court's discovery jurisprudence.

18      On the issue of burden, Defendants offer only speculative and wildly exaggerated cost
19  "estimates" that are untethered to the realities and scope of discovery actually requested by
20  Plaintiffs.  *See* §II.C, *infra*.  Rather than support their objections with a declaration from an e-
21  discovery consultant or provide any hard sampling data (which is customary in these disputes),
22  Defendants rely entirely on an unsupported hearsay declaration from litigation counsel (the
23  "Song Declaration") that is based on multiple false premises, inaccurate  assumptions and
24  wholesale guesswork.  *See* Dkt. No. 211; §II.C *infra*.

25      For example, according to Mr. Song, it will cost anywhere from $49 million to $144
26  million to comply with less than a dozen document requests.  Defendants also contend that it
27  will cost another $9 million to $21 million to produce documents for the eight-month period,
28  April 2007 to January 1, 2008, and the 30 days in June 2010, for a grand total of up to *$165*

*million*.  Defendants provide no competent evidence to support these outlandish burden claims.  To arrive at these figures, Defendants assume that the custodial files of more than 5,000 SunPower employees (*i.e.*, *every employee at the Company*) must be searched.  Dkt. No. 211, ¶¶14-16.  Plaintiffs, however, have genuinely sought to assist Defendants in identifying relevant custodians, and repeatedly informed Defendants that they need not search the files of every SunPower employee, including employees in subsidiaries or divisions that are not relevant to the issues in the case.  Plaintiffs said as much in their opening Motion.  Mot. at 15 n.11.  Defendants' binary "all or nothing" approach to custodial discovery—either 5 or 5,000 custodians—is improper and ignores their obligations under the Federal Rules.

Finally, there is no undue burden in producing the requested documents because SunPower *already gathered, reviewed and assembled* millions of pages of documents from numerous relevant custodians as part of the Company's 2010 Restatement investigation, including information concerning SunPower's accounting improprieties and the falsified accounting entries dating back to 2006-2007 (*i.e.*, prior to the Class Period).  Mot. at 18.  In fact, SunPower disclosed to the SEC that it had interviewed or collected documents from at least 47 witnesses and gathered over a *terabyte* of electronic information in connection with its Restatement investigation.  *Id.* (citing Peterson Decl., Ex. 23).  Thus, SunPower has already incurred much of the cost of identifying, collecting and reviewing the documents sought here.  Accordingly, Defendants cannot establish any undue burden that would outweigh the clear benefit and relevance of the requested information.  Plaintiffs' Motion should be granted.

## II.    ARGUMENT

### A.    Plaintiffs' Proposed Relevant Time Period Is Reasonably Calculated to Lead to Discovery of Admissible Evidence

"'Discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.'"  *Vallabharpurapu v. Burger King Corp.*, 276 F.R.D. 611, 615 (N.D. Cal. 2011) (Corley, J.) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).  Indeed, "[p]laintiffs are entitled to discovery regarding their claims generally, not just the specific factual claims pled in their Complaint. Moreover, '[r]elevant

information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (citing Rule 26(b)).

### 1. Documents Created Post-April 2007 Are Relevant and Discoverable Under Rule 26

Plaintiffs' Motion provides two types of information to support the discoverability of information beginning on April 1, 2007: (i) facts and allegations from the Complaint itself referring and relating to key 2007 events and information; and (ii) evidence revealing that SunPower engaged in the same type of accounting misstatements and suffered from similar internal control deficiencies in 2007 that eventually led to the Restatement.  Mot. at 11-15. Plaintiffs provided ample legal authority holding that the Class Period does not define the temporal parameters for discovery.  *Id.* at 9-11.  Indeed, the appropriate time period is a fact-specific, case-by-case determination based on an assessment of the particular claims, defenses, subject matter and evidence provided.  *Id.*

Defendants' response on relevance offers several flawed arguments.  First, they narrow the scope of the case to a singular sub-topic of the Restatement (certain of the "unsubstantiated accounting entries"), and assert that relevance is defined only by whether discovery will prove Defendants' knowledge on that single issue.  Opp. at 9-10.  This ignores that the Complaint alleges at least four principal categories of material misrepresentations and omissions, including: (i) SunPower's false financial results, which were not limited to the unsubstantiated accounting entries (¶¶144, 154, 164, 173, 183, 192, 201); (ii) SunPower's misleading financial guidance, projections and forecasts (¶¶144-45, 154-55, 164-65, 173-74, 183-84, 192-93, 201); (iii) Defendants' false Sarbanes-Oxley certifications and statements regarding the adequacy of SunPower's internal controls (¶¶142-44, 152-54, 161, 163-64, 170-73, 181-83, 190-92, 199-201); and (iv) Defendants' false statements regarding the Company's financial condition, its success in reducing costs, and the purported *reasons* for, and source of, SunPower's increasing gross margin and cost reductions despite increasing price competition from lower-cost solar manufacturers in China (¶¶71, 80, 108-09, 112, 114, 138-140, 147, 149, 151, 154, 156-58, 160, 165-66, 169, 173-76, 180, 183-84, 187, 189, 192).  Judge Seeborg denied Defendants' motion

to dismiss these categories of actionable misstatements and allowed discovery to proceed on all statements. *See Plichta v. SunPower Corp.*, 790 F. Supp. 2d 1012 (N.D. Cal. 2011).

Defendants largely ignore three of the four categories of false statements in their relevance analysis. For example, Defendants fail to address that SunPower's financial budgets, forecasts and cost reduction plans for fiscal year 2008 were *created in 2007* during SunPower's financial planning stage for 2008. Mot. at 12. Accordingly, those documents are relevant to whether SunPower's 2008 forecasts had a "reasonable basis" and/or Defendants were aware of facts "tending seriously to undermine" those projections. *See Kaplan v. Rose*, 49 F.3d 1363, 1375 (9th Cir. 1994). Instead, Defendants suggest that information is discoverable *only* if it directly reflects information *created in* 2008 and 2009 that was *actually known* to Defendants regarding a single false accounting issue underlying the Restatement, *i.e.*, Category No. 1 above. Opp. at 9-10. Defendants also assert that because there are no "false or misleading statements" in 2007, and the Complaint "does not challenge any statements" or "actionable misconduct in 2007," that information is entirely immune from discovery. *Id*. This narrow interpretation of relevance misconstrues Rule 26 and applicable rules of evidence. The "Test for Relevant Evidence" is whether "it has *any tendency* to make a fact more or less probable than it would be without the evidence; and [] the fact is of consequence in determining the action." Fed. R. Evid. 401(a)-(b). Defendants' conclusory arguments on relevance (Opp. at 9-10) fail to apply or even acknowledge this standard.

In contrast, Plaintiffs' Motion cites not only allegations in the Complaint, but actual *evidence* demonstrating that documents created in 2007 are directly relevant and consequential to the parties' claims and defenses. For example, Plaintiffs cite information showing that the same type of accounting improprieties, in certain of the same accounts, involving the same inadequate internal controls that led to the Restatement were occurring in 2007. Mot. at 14-15. Not only does the evidence establish the *existence* of these issues in 2007 (which itself is relevant), it also shows that Defendants knew, *at the time*, about internal control issues discovered in 2007 that were similar to those that ultimately facilitated the 2008-2009 misstatements. *Id*. Yet, Defendants recklessly allowed those known internal control problems

1    to linger into the Class Period and then attempted to blame the accounting fraud on the same

2    deficient internal controls known years earlier.  *Id.*; *see also* ¶133 (attributing false results to

3    material internal control weaknesses).  Defendants substantively ignore all but one of the cited

4    documents, and relegate that response to a single footnote.  Opp. at 10 n.8.[2]

5            Defendants also mischaracterize Plaintiffs' relevance argument, claiming that Plaintiffs

6    contend that the documents "*might* show" Defendants' knowledge and reckless disregard of

7    similar improprieties in 2007.  Opp. at 9.  In fact, the evidence *already shows* that such

8    improprieties existed in 2007 and that SunPower had a pattern and practice of reckless

9    accounting and disregard for deficient internal controls.  Mot. at 13-14.  Not only is such

10   evidence "reasonably calculated" to lead to discovery of admissible evidence, it also is plainly

11   admissible in its own right, something Defendants appear to concede.  Opp. at 9-10 (ignoring

12   Fed. R. Evid. 404(b)).[3]

13           Information from more than five to seven custodians is also patently relevant to

14   Defendants' defenses—namely that rogue low-level employees were solely responsible for the

15   fraud and Defendants had no knowledge of any misconduct.  Mot. at 17-18.  Defendants

16   cannot rely on this defense while refusing to produce documents from those same low-level

17   SunPower employees.  Indeed, as Judge Seeborg previously observed: "That's where, frankly,

18   ***things like Sarbanes-Oxley do make a difference to me***, because that's where it's indicating

19   you have a ***duty to know***.  You can't cloak yourself in 'I'm so senior I can't bother myself with

20   these trivialities,' when you then are putting your name on the line and saying 'I tell you these

21   are true and accurate.'  ***You can't have it both ways***."  Declaration of Eli R. Greenstein in

22

23   [2]       Defendants' response on that single document (Peterson Decl., Ex. 22) only serves to
     illustrate their flawed view of Rule 26.  They assert that improper accounting controls for
24   "stock-based compensation" are not relevant to the "challenged statements."  Opp. at 10 n.8.
     On the contrary, false accounting for stock-based compensation is relevant to motive and shows
25   a pattern of significant deficiencies in accounting, financial reporting and/or internal controls
     related to Defendants' Sarbanes-Oxley certifications.  *See* ¶¶142-43.

26   [3]       The fact that Plaintiffs utilized a narrower time period for their Fed. R. Civ. P. 30(b)(6)
     deposition notice (Opp. at 8) shows, if anything, that Plaintiffs are not "indiscriminate and
27   oblivious to costs" (Opp. at 1), did not arbitrarily apply the longest possible time period to all
     discovery, and were careful to tailor their requests to the specific type of discovery tool
28   utilized.

PLAINTIFFS' REPLY TO MOTION TO COMPEL                                                    -6-
Case No. CV 09-5473-RS (JSC)

1  Support of Reply in Support of Plaintiff's Motion ("Greenstein Decl."), Ex. A at 18:5-12.

2  Similarly, Defendants cannot have it both ways in discovery.[4]

3          Defendants' assertion that Plaintiffs do not "explain how" Defendants' knowledge of

4  false accounting and inadequate internal controls in 2007 is relevant to their scienter in 2008 is

5  meritless. Opp. at 9-10. To the contrary, Plaintiffs (and the authorities cited in their Motion)

6  explained that Defendants' knowledge of pre-Class Period issues similar to the misconduct that

7  led to the Restatement is relevant to falsity, materiality and scienter, including, *inter alia*: (i)

8  whether Defendants had a reasonable basis for their false forecasts for 2008 (which were

9  premised on false 2007 results) or were aware of facts that contradicted or undermined those

10  forecasts; (ii) whether Defendants knew that SunPower's pattern of improper accounting in

11  2006 and 2007 made it more likely that the Company would misstate its financial results in

12  2008 and 2009; and (iii) whether Defendants were on notice of, and recklessly ignored, false

13  accounting, red flags and deficiencies in accounting controls in 2007 and allowed those issues

14  to continue unabated in 2008 and 2009 which ultimately facilitated the fraud at the Company.

15  Mot. at 11-14. All of these issues are appropriately discoverable under Rule 26.[5]

16

17

18  [4]     Defendants' contention that SunPower's shifting of 85-90% of SunPower's personnel
and property to the Philippines in 2007 has "no bearing" on the "accuracy of SunPower's
19  accounting entries from 2008 or 2009" or on "any Defendants' knowledge" of those
inaccuracies, is meritless and again misconstrues the proper test for discoverability. Opp. at 9.
20  SunPower's increased reliance on the Philippines was part of Defendants' obsessive strategy to
cut costs, at any cost, a topic that is directly relevant to Plaintiffs' claims. Mot. at 11.
21  Similarly, Plaintiffs' allegations regarding the PowerLight acquisition are relevant to the same
cost issues. Mot. at 13 n.10.

22  [5]     Defendants' assertion that they "have not found, and Plaintiffs have not cited, a single
decision adopting a remotely similar period for discovery in a securities class action" is
23  incorrect. Opp. at 1, 12. *See* Motion at 11 n.8; *In re New Century*, No. CV 07-0931 DDP
(FMOx), slip op. at 3 (C.D. Cal. July 8, 2009) (Peterson Decl., Ex. 20) (ordering production of
24  documents in securities class action beginning approximately 11 months prior to the class
period and nine months after); *see also Minneapolis Firefighters' Relief Ass'n v. Medtronic,
25  Inc.*, No. 08-6324 (PAM/AJB), slip op. at 7-8 (D. Minn. Dec. 21, 2010) (Greenstein Decl., Ex.
B) (relevant time period in a securities class action beginning almost two years prior to the
26  class period and ending over a year after the class period).    And while not a class action,
Defendants' own authority, *Nairobi Holdings Ltd. v. Brown Bros. Harriman & Co.*, 2005 U.S.
27  Dist. LEXIS 4300 (S.D.N.Y. 2005), a securities case brought under §10(b) of the Securities
Exchange Act of 1934, orders discovery beginning more than three and a half years before the
28  alleged false statement. *Id.* at *5-*7.

1

2.      **Information Created Through June 30, 2010 Is Relevant**

2       Defendants assert that "Plaintiffs offer no basis to suppose that the information in the

3  July 2 letter [to the SEC] is not otherwise available in documents created before May 31."

4  Opp. at 10-11.  This is incorrect.  The SEC's letter was not publicly filed until *June 1, 2010*.

5  Mot. at 2 n.3.  That letter expressly inquired about the Restatement and accounting issues that

6  occurred *during* the Class Period.  Peterson Decl., Ex. 5.  SunPower's response to the SEC,

7  which also discussed Class Period events and accounting misconduct, was not communicated

8  until *July 2, 2010*.  Peterson Decl., Ex. 6.  Accordingly, the bulk of internal communications

9  and evidence pertaining to Defendants' analysis of, and response to, the SEC's accounting

10 inquiry necessarily took place during the 30-day window between June 1, 2010, and July 2,

11 2010.  Defendants provide no legitimate basis to exclude this highly relevant evidence and

12 there is no burden in extending the Relevant Time Period by only 30 days.  *See* §II.C, *infra*.

13      **B.      Defendants' Proposed Custodial Limitations Are Contrary to Rule 26 and
14              Judge Seeborg's Prior Ruling**

15           **1.      The Court Has Already Rejected Defendants' Attempt to
                     Limit Discovery to a Few Executives**

16      Defendants' Opposition is the mirror image of the argument Defendants previously

17 made—and lost—before Judge Seeborg.  Mot. at 4, 16.  On February 16, 2012, Defendants

18 devoted several pages of their portion of the Joint Case Management Conference Statement to

19 arguing that:  "Discovery in this case should be focused in the initial stage on the core issue of

20 scienter;"   "[w]hat remains of the case…hinges on whether the SunPower *officers* who

21 exercised 'ultimate authority' over the Company's Class Period statements…had 'knowledge

22 of the underlying falsity' of those statements when they were made;" and  "[d]iscovery should

23 focus on this core issue *first*, before the parties and the Court expend resources on ancillary

24 issues."  *See* Dkt. No. 186 at 5-6.  Defendants also asserted that "[i]f discovery confirms the

25 conclusion of SunPower's Audit Committee – that 'executive management neither directed nor

26 encouraged, nor was aware of, these activities and was not provided with accurate information

27 concerning the unsubstantiated entries' – then *Defendants will be entitled to summary*

28 *judgment in their favor*, eliminating the need for additional discovery."  *Id*. at 6.

---

1    In response, Plaintiffs asserted, *inter alia*, that the elements of Plaintiffs' claims overlap

2    and that Defendants' request that "discovery should be sequenced, with discovery on the issue

3    of the scienter of the three Individual Defendants first, followed by discovery as to all other

4    issues" was improper and unworkable. Dkt. No. 186 at 4 (citing *In re Daou Sys., Inc., Sec.*

5    *Litig.*, 411 F.3d 1006, 1015 (9th Cir. 2005) ("[F]alsity and scienter in private securities fraud

6    cases are generally strongly inferred from the same set of facts, and the two requirements may

7    be combined into a unitary inquiry under the PSLRA.")). Plaintiffs also noted that "[t]here is

8    simply no way to conduct discovery or litigation *solely* on scienter for the three Individual

9    Defendants without significant judicial oversight of deposition and other fact discovery" and

10   "Defendants' plan overlooks that *SunPower's* scienter is also at issue and that, despite the

11   Restatement, Defendants claim that Lead Plaintiffs will be unable to prove falsity." Dkt. No.

12   186 at 4. Accordingly, "[s]equenced discovery will therefore be needlessly duplicative as

13   witnesses who have knowledge regarding scienter, falsity and materiality would have to be

14   deposed more than once under Defendants' proposed discovery plan." *Id*. At the February 23,

15   2012 Case Management Conference, Judge Seeborg rejected Defendants' arguments as

16   unworkable and instructed the parties to submit a discovery schedule for all merits discovery.

17   *Compare id*. at 5-9, *with* Dkt. No. 189.

18   Remarkably, Defendants' Opposition completely ignores this previous record. Instead,

19   Defendants offer the same theory, using the same arguments, that the only discoverable

20   scienter issue in the case is the knowledge of a few SunPower executive "speakers." Opp. at 9-

21   10. This flawed theory of corporate scienter has been rejected by numerous Courts, including,

22   most recently, by the new Chief Judge of this Court who sustained scienter claims against both

23   a **non-speaking** Senior Vice President as well as the corporate defendant itself, based upon the

24   wrongful acts and scienter of the non-speaker which were imputed to the company under the

25   doctrine of *respondeat superior*. Mot. at 1 n.1 (citing *Curry v. Hansen Med., Inc*., 2012 U.S.

26   Dist. LEXIS 112449, at *36-*37 (N.D. Cal. 2012) (Wilken, J.); *see also*, Mot. at 18; Dkt. No.

27

28

162 at 15-17 & nn.18-19 (collecting corporate scienter authorities).[6]  Furthermore, Defendants

made the same restrictive corporate scienter argument in their last motion to dismiss such that

Judge Seeborg clearly was well-versed on the topic at the time he declined Defendants'

"speakers" discovery requirement.  Defendants' clever attempt to repackage the same

arguments should be rejected.

### 2. Defendants' Custodial Limitations Are Contrary to Rule 26

Plaintiffs' Motion provides numerous examples of relevant SunPower accounting

departments, finance divisions, witnesses and personnel that would be excluded from

Defendants' custodian limitations.  Mot. at 16-17.[7]  Defendants' Opposition cherry-picks a few

of the most remote custodians they could find from the *sampling* of 182 custodians provided

by Plaintiffs.  Opp. at 15.  This strategy not only ignores the substantive reason for providing

the list in the first place (to illustrate the prejudicial effect of Defendants' custodial

limitations), it also ignores more than 95% of the listed custodians.  Notably, Defendants did

not even *attempt* to justify excluding 17 of the 24 individuals cited in *Defendants' own initial*

*disclosures.*  Mot. at 4.  Defendants also failed to explain the exclusion of personnel expressly

identified as being involved in the fraud and later terminated for "unethical activities."  *Id*. at

16.  There is no conceivable justification for excluding such indisputably relevant custodians.

Defendants' contention that Plaintiffs' requests require a search of 5,000 employees is

inaccurate.  Indeed, after purportedly spending thousands of attorney hours on the Restatement

investigation, Defendants have likely narrowed the realm of relevant custodians to a more

manageable number that can provide a starting point for this case.  Notably, however, although

the Opposition variously claims Defendants have produced documents from "numerous

---

[6]     Defendants' assertion that the non-speaking Vice President in *Hansen* was alleged to be
an "officer" is of no moment.  Opp. at 16.  Defendants' theory is that corporate scienter may
*only* be derived from a "speaker," a legal construct that Judge Wilken rejected by holding that
acts and scienter of the non-speaking defendant were imputed to the company.  *Hansen*, 2012
U.S. Dist. LEXIS 112449, at *36-*37.

[7]     Plaintiffs did not, as Defendants erroneously contend, assert that all 182 custodians
"should be searched," or that discovery must include "foreign offices bearing no relation to the
claims or defenses in this action."  Opp. at 1, 15.  The list was simply an illustration of the vast
number of personnel and witnesses that would be *excluded* from Defendants' narrow search.

---

custodians" or "no fewer than 17 custodians" (Opp. at 21 n.16), they refuse to identify any of these custodians for Plaintiffs.  Mot. at 18.  This makes it nearly impossible for Plaintiffs to determine even a majority of the custodians who possess responsive documents.

Defendants' attempt to require Plaintiffs to guess, employee-by-employee, custodian-by-custodian and division-by-division, which custodians are likely to possess responsive documents—even though Defendants have a clear informational advantage and have expended thousands of hours and millions of dollars to identify such sources—cannot be squared with Defendants' discovery obligations.  Defendants are not entitled to shift their responsibilities and burdens in responding to Rule 34 discovery to Plaintiffs, hoping Plaintiffs miss relevant custodians who possess responsive documents.  This obstreperous hide-the-ball tactic violates both the letter and spirit of Rule 26 and Rule 34.[8]

**C.     Defendants' Manufactured "Burden" Argument Is Baseless and Is Outweighed by the Relevance of the Requested Information**

Because Plaintiffs have established that the requested discovery "satisfies the relevancy requirements of Rule 26(b)(1)," "[i]n turn, the party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with *competent evidence*."  *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 2012 U.S. Dist. LEXIS 128531, at *12-*13 (N.D. Cal. 2012) (citing *DirectV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002)); *In re Google Litig.*, 2011 U.S.

---

[8]     Defendants' reliance on *Glazer Capital Mgmt., L.P. v. Magistri*, 549 F.3d 736, 743, 745 (9th Cir. 2008) and *In re VeriFone Holding, Inc. Sec. Litig.*, 2011 U.S. Dist. LEXIS 24964 (N.D. Cal. 2011) is misplaced. Opp. at 15-16.  Neither *Glazer* nor *VeriFone* involved admittedly "intentional" fraud involving senior financial management as demonstrated in this case.  Moreover, Defendants concede that *Glazer* acknowledges the potential for demonstrating corporate scienter derived from the knowledge of non-officer employees.  Opp. at 16 n.14. Judge Seeborg already considered both cases and sustained Plaintiffs' claims against SunPower itself.  Indeed, the Court recognized that "there is *no real question* that the accounting entries were *deliberately falsified*."  *In re SunPower Sec. Litig.*, 2011 U.S. Dist. LEXIS 152920, at *16 (N.D. Cal. 2011).  *See also Hansen*,  2012 U.S. Dist. LEXIS 112449, at *36-*37.  Simply put, "there is no simple formula for how senior an employee must be in order to serve as a proxy for corporate scienter [and] courts have readily attributed the scienter of management-level employees to corporate defendants."  *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 481 (S.D.N.Y. 2006) (collecting cases); *accord Valentini v. Citigroup, Inc.*, 837 F. Supp. 2d 304, 316-17 (S.D.N.Y. 2011) ("The fact that, on multiple occasions, employees of both companies are alleged to have performed their professional duties in a consciously wrongful or reckless manner establishes a 'strong inference' of corporate scienter.").

---

Dist. LEXIS 9924, at *19-*20 (N.D. Cal. 2011) (requiring "concrete, particularized evidence regarding the undue burden of production").  Defendants have failed to present competent evidence of burden.

In fact, prior to their Opposition, Defendants made no attempt to satisfy their obligation to support, or even articulate, their burden objections with admissible evidence.  Even now, Defendants' burden argument is based solely on the inadmissible Song Declaration from litigation counsel that relies on unsupported assumptions, vague speculation, inaccurate extrapolations of data, and hearsay accounts of what *others* at SunPower allegedly did to process and quantify its cost calculations.  *See* Dkt. No. 211.  This Declaration does not constitute "competent evidence."  The spectacular costs, data estimates and generalized opinions regarding custodian searches are extrapolated from analysis apparently done by SunPower personnel or consultants who fail to offer any first-hand declarations of their own.  *See* Dkt. No. 211, ¶¶12-13, 16.  It is well-established that attorney declarations are improper where the attorney does not articulate facts from personal knowledge.  *Local Union No. 490 v. Kirkhill Rubber Co.*, 367 F.2d 956, 958 (9th Cir. 1966) (rejecting "supporting affidavits [that] were made by an attorney and presented facts not within his personal knowledge").

For example, the Song Declaration states that, "[b]ased on the data *collected by SunPower*," counsel "[is] informed and believe[s]," there are an average of 316 responsive documents per custodian per month.  *Id.*, ¶12.   Similarly, the Declaration states that counsel is "informed and believe[s] that attorneys retained to review these documents can review" a certain number of documents per hour, and "[b]ased on our experience to date, I am informed and believe that the estimated cost to process data is between $175 and $330 per gigabyte of data."  *Id.*, ¶¶13, 16.  Counsel then apparently extrapolates from the unsupported "per custodian per month" number, multiplies that by a "per hour" review number and adds the sum to the "per gigabyte" processing number to arrive at the total cost amounts.  *Id.*, ¶¶12, 14-15.  Such a crude and unsupported cost estimate based on hearsay and vague generalizations does not constitute competent evidence to establish undue burden.  *See La. Pac.*, 2012 U.S. Dist. LEXIS 128531, at *12-*13.

Defendants' Declaration also lacks indicia of reliability.  For instance, Mr. Song's assertion that "there is an average of 316 [responsive] documents per custodian per month" (Dkt. No. 211, ¶12), provides no information on who the "custodians" are, what "month[s]" were searched, and whether the undisclosed custodians are indicative of the average custodian at SunPower.  Most importantly, the Song Declaration does not provide the number of custodians used to derive the average hit rate or the proximity of the custodians to the events giving rise to the litigation, both of which are necessary to determine, for example, whether these custodians were closer to the fraud and thus would be expected to generate significantly more responsive documents than an "average" custodian.  Since it is impossible to fairly evaluate the accuracy of Defendants' data, the overall cost totals are unreliable.[9]

The Song Declaration also asserts that "it is not uncommon to find custodians with between 25 and 50 gigabytes of data."  Dkt. No 211, ¶16.  There is no support for this generalized opinion.  No information is provided on the standard used to determine what is "uncommon," the type of custodians used as the baseline, or the actual custodians surveyed for this information.  Thus, the Song Declaration is patently infirm, cannot be tested, and fails to provide a competent and reliable basis to establish undue burden.  *See Google*, 2011 U.S. Dist. LEXIS 9924, at *19-*20.

Defendants' burden argument fails for an additional reason.  SunPower has ***already*** undertaken as part of its Restatement investigation a search for many of the same facts and custodians relevant to the litigation.  While Defendants seem to suggest they are starting from scratch, SunPower has already collected, processed and reviewed millions of pages of documents related to relevant events.  *See* Mot. at 18 (citing Peterson Decl., Ex. 23).  Indeed, in early 2010 SunPower represented to the SEC that it had collected and processed approximately a ***terabyte*** (1,000 gigabytes) of information from the files of at least 35 custodians, and at least 47 witnesses were either interviewed or produced documents, or both.

___
[9]     The Song Declaration's assertion that "documents will be manually reviewed…[f]or the majority of custodians" (Dkt. No. 211, ¶6) is contrary to Defendants' September 13, 2012 production of approximately 500,000 pages, which was *not* subjected to any manual review. *See* Greenstein Decl., Ex. C.

1   *Id.* Moreover, the Company's own investigation evaluated "unsubstantiated entries that

2   occurred in fiscal 2006 through 2007" covering the entire pre-Class Period timeframe proposed

3   by Plaintiffs. Peterson Decl., Ex. 6 at 12. As such, Defendants have already borne the expense

4   of collecting and reviewing much of this discovery.

5   In sum, "beyond generic attorney argument, [Defendants] offer[] no concrete,

6   particularized evidence regarding the undue burden of production of all requested

7   documents."[10] *Google*, 2011 U.S. Dist. LEXIS 9924, at *19-*20. Accordingly, Defendants

8   have failed to make a "showing" consistent with Rule 26(b)(2) "that the information [Plaintiffs]

9   seek is not reasonably accessible because of undue burden or cost." *Id.*; *Greer v. Elec. Arts,*

10  *Inc.*, 2012 U.S. Dist. LEXIS 12050, at *2 (N.D. Cal. 2012). In any event, the relevance of

11  Plaintiffs' discovery far outweighs any burden on Defendants. Mot. at 9-25.[11]

12      **D.      The Individual Requests Seek Discoverable Information**

13      <u>Request No. 5, 33, 35, 59</u>: Defendants' Opposition to these Requests ignores case law

14  and Plaintiffs' relevancy explanations (Mot. at 20-23), and instead attempts to apply an

15  admissibility standard inconsistent with Rule 26(b)(2). *See* Opp. at 20 (attempting to limit

16  discovery to allegations pled in the Complaint); *supra* at 2.

17

18

19  [10]     Defendants' burden cases are inapposite. In *In re IBM Corp. Sec. Litig.*, 1993 U.S.

20  Dist. LEXIS 20041, at *1-*2 (S.D.N.Y. 1993), plaintiffs sought to expand discovery for the
    stated purpose of supplementing and/or amending their complaint, not because the discovery

21  sought was related to their existing complaint. In *Lawrence E. Jaffe Pension Plan v.*
    *Household Int'l, Inc*., 2006 U.S. Dist. LEXIS 96070, at *14-*15 (N.D. Ill. 2006), the court

22  declined to compel discovery responses related to a "discredited legal theory." In contrast, the
    discovery Plaintiffs seek here is relevant to active claims and defenses. In *Regan-Touhy v.*

23  *Walgreen Co*., 526 F.3d 641, 649 (10th Cir. 2008), rather than tailoring discovery to the subject
    action as Plaintiffs have done here, the requesting party sought all e-mails, regardless of the

24  subject, from an individual's e-mail account. Defendants' citation to *Tellabs, Inc. v. Makor*
    *Issues & Rights, Ltd*., 551 U.S. 308 (2007) on "abusive" litigation, of course, omits that

25  Defendants here have admitted to an "intentional" fraud and the "Court has long recognized
    that meritorious private actions to enforce federal antifraud securities laws are an essential

26  supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the
    Department of Justice and the Securities and Exchange Commission." *Id.* at 313.

27  [11]     Defendants' request that any relief be "conditioned on Plaintiffs bearing a portion of the
    resulting data processing and production costs" is inappropriate and unfounded, especially in

28  light of Defendants' unsupported cost claims and their refusal to provide the identities of even
    those custodians whose files Defendants already searched. Opp. at 12 n.11.

Request Nos. 20, 40, 45:  Defendants do not challenge relevance or defend their position that these Requests should be limited to a few custodians.  Instead, as explained *supra*, they single out a few remote custodians and ignore the obvious (and in some cases admitted) relevance of 95% of the custodians Plaintiffs cited.  *See* Opp. at 18, 21-22; Mot. at 16-17.

Request No. 27 and 56:  Similar to Request Nos. 20, 40 and 45, Defendants' Opposition ignores most of the relevant custodians and both: (i) their responsibility to conduct a reasonable search for responsive documents under Rule 34; and (ii) Plaintiffs' repeated reminders that Defendants need not search 5,000 employees' files in irrelevant areas of the Company "or even in [ir]relevant countries."  Mot. at 15 n.11.

Request No. 16(c):  While Plaintiffs agreed to revise this Request at Defendants' urging, Defendants now quibble with its grammatical construction.  Opp. at 17.  Documents related to "compliance with or deviation from" SunPower's accounting and financial reporting policies and practices are indisputably relevant.  Mot. at 24.

Request No. 36:  Defendants' Opposition ignores that the requested documents are highly relevant to Defendants' oft-repeated defense that they did not closely monitor operations in the Philippines.  *See* Mot. at 24-25.  Defendants' claim that the Request would require the search of all 5,000 SunPower employees' files ignores that only a discrete group of SunPower employees attended and/or assisted in preparing materials for VAR meetings.  Mot. at 24-25.

Request No. 64:  Defendants' zero-sum approach to this Request is that either they will produce responsive documents from five individuals' files, or they have to produce documents from all 5,000 SunPower employees.  Opp. at 23.  As with their response to other Requests, this overly simplistic approach ignores Defendants' duty to conduct a reasonable search for responsive documents under Rule 34.

Dated:  September 14, 2012                                Respectfully submitted,

                                                        KESSLER TOPAZ MELTZER
                                                          & CHECK, LLP

                                                        */s/ Eli R. Greenstein*
                                                        RAMZI ABADOU
                                                        ELI R. GREENSTEIN

STACEY M. KAPLAN
ERIK D. PETERSON
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:  (415) 400-3000
Fax:  (415) 400-3001

KAPLAN   FOX   &   KILSHEIMER   LLP
LAURENCE D. KING
MARIO M. CHOI
350 Sansome Street, Suite 400
San Francisco, CA 94104
Tel:     (415) 772-4700
Fax:     (415) 772-4707

-and-

FREDERIC S. FOX (*pro hac vice*)
JOEL B. STRAUSS (*pro hac vice*)
CHRISTINE M. FOX (*pro hac vice*)
850 Third Avenue, 14th Floor
New York, NY 10022
Tel:     (212) 687-1980
Fax:     (212) 687-7714
ffox@kaplanfox.com
jstrauss@kaplanfox.com
cfox@kaplanfox.com

BERNSTEIN LITOWITZ BERGER
     & GROSSMANN LLP
DAVID R. STICKNEY
BENJAMIN GALDSTON
DAVID R. KAPLAN
LAWRENCE REZA WRATHALL
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:     (858) 793-0070
Fax:     (858) 793-0323

*Attorneys for Lead Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on September 14, 2012.

*/s/ Eli R. Greenstein*
ELI R. GREENSTEIN

# Mailing Information for a Case 3:09-cv-05473-RS

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Ramzi Abadou**
  rabadou@ktmc.com,knguyen@ktmc.com,arobles@ktmc.com

- **George Carlos Aguilar**
  GAguilar@robbinsumeda.com,Notice@robbinsumeda.com

- **Jaime Allyson Bartlett**
  jbartlett@sidley.com,dgiusti@sidley.com

- **Andrew Stuart Bernick**
  abernick@mofo.com

- **Sara B. Brody**
  sbrody@sidley.com,tnewman@sidley.com,jbartlett@sidley.com

- **Mario Man-Lung Choi**
  mchoi@kaplanfox.com,kweiland@kaplanfox.com

- **Aviah Cohen Pierson**
  acohenpierson@kaplanfox.com

- **Jordan Eth**
  jeth@mofo.com,nurbina@mofo.com

- **Christine M. Fox**
  cfox@kaplanfox.com

- **Frederic S. Fox**
  ffox@kaplanfox.com

- **Benjamin Galdston**
  beng@blbglaw.com,denab@blbglaw.com,kelly.mcdaniel@blbglaw.com,ranaew@blbglaw.com

- **Michael M. Goldberg**
  mmgoldberg@glancylaw.com,csadler@glancylaw.com,info@glancylaw.com,rprongay@glancylaw.com

- **Eli Greenstein**
  egreenstein@ktmc.com

- **Donald R Hall**
  dhall@kaplanfox.com

- **Dennis J. Herman**
  dennish@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sd@rgrdlaw.com,triciam@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Stephen D. Hibbard**
  shibbard@shearman.com,rcheatham@shearman.com

- **Robert N. Kaplan**
  rkaplan@kaplanfox.com

- **Stacey Marie Kaplan**
  skaplan@ktmc.com

- **Reed R. Kathrein**
  reed@hbsslaw.com,peterb@hbsslaw.com,pashad@hbsslaw.com,sf_filings@hbsslaw.com

- **Mark P. Kindall**
  firm@izardnobel.com,mkindall@izardnobel.com

- **Laurence D. King**
  lking@kaplanfox.com,kweiland@kaplanfox.com

- **Angela Elaine Kleine**
  akleine@mofo.com

- **Joy Ann Kruse**
  jakruse@lchb.com

- **Nicole Catherine Lavallee**
  nlavallee@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **Judson Earle Lobdell**
  jlobdell@mofo.com,mblackmer@mofo.com

- **Tricia Lynn McCormick**
  triciam@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Kim Elaine Miller**
  kimmiller225@yahoo.com,kim.miller@ksfcounsel.com

- **Erik David Peterson**
  epeterson@ktmc.com,dcheck@ktmc.com,arobles@ktmc.com

- **Aviah Cohen Pierson**
  acohenpierson@kaplanfox.com

- **Darren Jay Robbins**
  e_file_sd@rgrdlaw.com

- **David Ronald Stickney**
  davids@blbglaw.com

- **Joel B. Strauss**
  jstrauss@kaplanfox.com

- **Sean Travis Strauss**
  invalidaddress@invalidaddress.com,sstrauss@steinlubin.com

- **Joseph J. Tabacco , Jr**
  jtabacco@bermandevalerio.com,ysoboleva@bermandevalerio.com

- **David Conrad Walton**
  davew@rgrdlaw.com

- **Shawn A. Williams**
  shawnw@rgrdlaw.com,khuang@rgrdlaw.com,e_file_sd@rgrdlaw.com,e_file_sf@rgrdlaw.com

- **Laurence Reza Wrathall**

laurence.wrathall@blbglaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Catherine        J. Kowalewski
Robbins Geller Rudman & Dowd LLP
655 W Broadway
Suite 1900
San Diego, CA 92101
```