IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: SUNPOWER SECURITIES LITIGATION,

Case No.: 09-cv-5473 RS (JSC)

**ORDER RE: PLAINTIFFS' MOTION TO COMPEL (Dkt. No. 207)**

In this shareholders' putative class action brought under Section 10(b) and 20(a) of the Securities Exchange Act of 1934, Plaintiffs contend that Defendant SunPower made numerous public statements, and filings with the Securities and Exchange Commission, that were false and misleading because they contained information predicated on improperly manipulated accounting data. Now pending before the Court is Plaintiffs' Motion to Compel (Dtk. No. 207). The Court finds that the Motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7–1(b). Having considered all of the papers, the Court hereby orders the parties to meet and confer and DENIES the motion without prejudice.

## FACTUAL & PROCEDURAL BACKGROUND

This Court incorporates by reference the factual summary of this case contained in District Judge Seeborg's March 11, 2011 and December 19, 2011 orders. (Dkt. Nos. 149 & 178.)

Based on the allegations in the First Amended Complaint (Dkt. No. 153, hereafter "FAC"), District Judge Seeborg found that Plaintiffs had adequately alleged scienter concluding that "[u]nder a 'holistic' view, a reasonable person could deem there to be a cogent and compelling inference that SunPower's officers were aware of the accounting manipulation. The contrary inference—that lower level employees managed to carry out the scheme without detection by, or involvement of, management despite the alleged efforts it made to monitor and control costs, and the mechanisms by which changes to data were made, is certainly plausible as well, but not more so." (Dkt. No. 178, pp. 7-8.) The case is thus proceeding on Plaintiffs' Rule 10(b) claim against SunPower, and the Insider Defendants: Thomas H. Werner ("Werner"), its Chief Financial Officer ("CFO") Dennis V. Arriola ("Arriola"), and its former CFO Emmanuel T. Hernandez ("Hernandez").[1] Plaintiffs also have a Rule 20(a) claim against the individual Defendants as "controlling persons."[2] The class period is April 17, 2008 through November 16, 2009.

The underlying discovery dispute arises out of Plaintiffs' Request for the Production of Documents ("RFP") served in January 2012. Plaintiffs contend that Defendants have refused to produce documents responsive to 64 of the 68 requests. There are two primary areas of dispute with respect to these requests: 1) the parties disagree regarding the relevant time period for Defendants' responses to Plaintiffs' discovery, and 2) the parties dispute which custodians' files should be searched for responsive documents.

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a party "may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the

---

[1] District Judge Seeborg dismissed this claim as to SunPower's Corporate Controller John B. Rodman ("Rodman"), and its Philippines Finance Director Mariano M. Trinidad ("Trinidad") because neither was alleged to have made any misrepresentations to the public. (Dkt. No. 178, p. 8.)

[2] Plaintiffs have also alleged non-fraud claims against certain Director Defendants: T.J. Rodgers ,W. Steve Albrecht, Betsy S. Atkins, Patrick Wood, III, and Uwe-Ernst Bufe, as well as Underwriter Defendants, pursuant to the non-fraud provisions of Section 11 of the Securities Act.

2

1  discovery of admissible evidence." *See* Fed. R. Civ. P. 26(b)(1). District courts have broad
2  discretion in determining whether evidence is relevant for discovery purposes. *See Surfvivor*
3  *Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005).
4       Pursuant to Northern District Local Rule 37–2, a party moving to compel discovery must
5  "detail the basis for the party's contention that it is entitled to the requested discovery and
6  show how the proportionality and other requirements of Fed.R.Civ.P. 26(b)(2) are satisfied."
7  *See also* Fed.R.Civ.P. 26(b)(2) (requiring that when determining the appropriateness of
8  discovery requests courts consider whether the discovery is duplicative or overly burdensome
9  and whether the burden and expense of discovery outweighs the benefit).

## DISCUSSION

### A. Relevant Time Period for Discovery Responses

Plaintiffs seek documents for a period of April 1, 2007 through June 30, 2010, which is one year prior to the class period and just over six months beyond the class period. Defendants have offered to produce documents from January 1, 2008 through May 31, 2010.

Plaintiffs argue that discovery from 2007 is relevant to falsity, materiality and scienter, including:

> whether Defendants had a reasonable basis for their false forecasts for 2008 (which were premised on false 2007 results) or were aware of facts that contradicted or undermined those forecasts; (ii) whether Defendants knew that SunPower's pattern of improper accounting in 2006 and 2007 made it more likely that the Company would misstate its financial results in 2008 and 2009; and (iii) whether Defendants were on notice of, and recklessly ignored, false accounting, red flags and deficiencies in accounting controls in 2007 and allowed those issues to continue unabated in 2008 and 2009 which ultimately facilitated the fraud at the Company.

(Dkt. No. 215, 11:6-14.) While this reasoning suggests that Plaintiffs should be entitled to some discovery from 2007, because Plaintiffs have not alleged any actionable conduct in 2007 nor any false or misleading statements regarding 2007 events, this discovery should be limited. For example, it would be appropriate for Plaintiffs to obtain discovery regarding SunPower's financial budgets, forecasts, and cost reduction plans for fiscal year 2008 which were presumably created in 2007 during the financial planning stage for 2008. Similarly, Plaintiffs would be entitled to documents that relate to the 2008 misstatements or show that Defendants

3

were on notice of the problems back in 2007.

Plaintiffs apparently agreed to narrow the relevant time period and use Defendants' proposed start date of January 1, 2008 "for certain self-limiting and non-core Requests" if Defendants agreed to Plaintiffs time period for the rest. (Dkt. No. 207, 17:7-9.) However, Plaintiffs do not specify which requests they are willing to so limit.

With respect to the end date for the relevant time period, Plaintiffs allege that their June 30 cut-off date is reasonable because the SEC sent an accounting letter to SunPower on May 28, 2010 which Defendants responded to on July 2, 2010. Thus, the additional 30-days would capture internal communications regarding the accounting letter and response thereto. Defendants respond only that Plaintiffs have not offered a "basis to suppose that information in the July 2 letter is not otherwise available in documents created before May 31." (Dkt. No. 210-2, 17:2-3.) Certainly, much of the contents of the letter would have been based on information predating May 31; however, Plaintiffs are entitled to documents reflecting internal discussions of the response to the letter (absent some privilege). Again, however, it would not be appropriate to extend the relevant time period for all discovery requests, only those that relate to the internal communications regarding the response to the SEC's letter during this 30-day period.

Accordingly, the parties are ordered to meet and confer to refine these issues using the foregoing as guidance as to what the Court would find reasonable. Plaintiffs should identify which document requests they are willing to limit to January 1, 2008 forward, and which document requests they believe appropriately seek information from April 2007 forward or some lesser portion of 2007 forward.

### B. Custodian Searches for Request for Production of Documents

Plaintiffs also seek to have Defendants respond to RFP Nos. 5, 16(c), 20, 27, 33, 35, 36, 40, 45, 56, 59, and 64 without "custodian limitations." The parties have vastly divergent views of which custodians' files should be searched for responsive documents and each characterizes the other's position in the extreme. Plaintiffs contend that Defendants have refused to produce responsive documents outside a group of 5-7 executives. Defendants contend that Plaintiffs'

1  contrary proposal, that they search the files of over 182 custodians, is overly broad and
2  burdensome since they have produced 893,049 documents from numerous custodians
3  including 17 current and former Philippines accounting employees. (Dkt. No. 210-2, 11:13-15.)
4  However, Plaintiffs represent that they do not know who these 17 custodians are. Thus, there is
5  a disconnect in the record as to the parties' respective positions on the RFP responses. As with
6  the time period issue, the parties need to engage in further meet and confer to meaningfully
7  discuss each request and which custodians might have responsive documents.

As a framework for this dispute, the Court notes that Plaintiffs are certainly entitled to discovery beyond the Insider Defendants. Plaintiffs are likely entitled to discovery from those individuals listed on Defendants' initial disclosures (apparently Defendants have excluded 17 of the 24 people on their initial disclosures from the custodian search). Plaintiffs are also entitled to discovery of personnel identified as being involved in the fraud and terminated for "unethical activities." (Dkt No. 215, 14:14-16.) Although Plaintiffs identify these two categories of individuals in their motion (as well as many others), they do not specify whether they believe that Defendants should search the files of these categories of custodians for each request or particular requests. Without specific information regarding which custodians Plaintiffs believe Defendants should search for each request, the Court cannot determine what discovery is proper.

In addition to the custodian issue, there appears to be an issue with the scope of certain RFPs. Through the meet and confer process the parties agreed to modify the scope and language of the RFPs. However, it is not clear whether the parties still have a dispute regarding the scope of certain interrogatories.

1. **Request No. 5**[3]

   **Request No. 5** seeks all documents concerning the Company's internal controls for accounting and financial reporting, including any reports prepared, created or generated by any member of Company's internal audit staff, and/or outside auditor or accountant whether in draft or final form, and all documents concerning any changes or modifications to SunPower's internal controls for accounting or financial reporting, including changes to related policies and procedures.

---

[3] The language of the RFPs is taken from Plaintiffs' Motion to Compel (Dkt. No. 207, pp. 25-30).

5

1    Defendants object to this request as overbroad and propose that it be limited to internal
2 controls for accounting and financial reporting implicated by the Restatement. Plaintiffs are
3 concerned that this limitation would exclude "known internal control deficiencies that
4 impacted overall financial access, journal entry procedures, and other systemic control issues
5 that may not have been officially disclosed as being 'implicated' by the restatement." (Dkt. No.
6 207, 30:3-5.) From the record it is not clear if Plaintiffs proposed language to this effect to
7 Defendants. The Court is also unsure whether there is a custodian issue with respect to this
8 request.

### 1. Request No. 16(c)

**Request No. 16** seeks SunPower's accounting and financial reporting policies and procedures, including: (a) any accounting policy and procedure manuals, (b) documents describing or discussing any changes to those policies and procedures considered or implemented in connection with the Restatement; and (c) SunPower's compliance with or deviation from those policies and practices, including any efforts by SunPower to identify or correct any weaknesses or deficiencies in, or violations of, those policies or practices.

The parties' dispute regarding this RFP is limited to part (c) of Request 16. Defendants have agreed to respond to this request as to accounting and financial reporting policies and procedures, but Defendants contend that "compliance with or deviation" from policies and procedures is nonsensical. It would be very difficult to search for documents evidencing deviation from a policy without something more specific. In Plaintiffs' Motion to Compel they indicate they are looking for "documents relating to any attempts to cure weaknesses or deficiencies in the Company's accounting policies and procedures." (Dkt. No. 207, 30:15-17.) The parties should meet and confer regarding modifying the RFP to reflect this language and whether there is a custodian issue.

### 2. Request Nos. 20, 40 and 45

**Request No. 20** seeks all documents relating to or showing any review by Werner, Hernandez, Arriola, Rodman, Trinidad, Julie Blunden, Robert Okunski, or any Board member or executive of SunPower's financial results, press releases, SEC filings, or other publicly disseminated statements alleged in the Complaint, including, without limitation, any drafts, notes, or underlying documentation.

**Request No. 40** seeks all reports, communications, compilations or aggregate-level documents concerning SunPower's manufacturing costs and any comparison of manufacturing costs for SunPower versus competitors, peer group or industry.

**Request No. 45** seeks all aggregate-level documents concerning the levelized cost of energy ('LCOE') of SunPower products, including, without limitation, all LCOE targets or forecasts and documents discussing, measuring, monitoring or analyzing SunPower's performance to those targets or forecasts.

The dispute over these RFPs appears limited to the custodian issue. Plaintiffs object to Defendants limiting the scope of their response to an "amorphous executive management group" and Defendants contend that without this limitation Plaintiffs seek responses for 182 "potential custodians." The parties must meet and confer regarding appropriate custodians for these requests.

3. <u>Request Nos. 27 and 56</u>

**Request No. 27** seeks documents and communications from SunPower's investor relations and public relations departments regarding SunPower's financial results, projections, cost reduction efforts, internal controls, the accounts and financial metrics impacted by or adjusted in the Restatement, and any changes in SunPower's stock price following any of the false statements or disclosures of adverse facts alleged in the Complaint.

The dispute regarding these RFPs appears to be limited to the custodian issue. Defendants have agreed to produce responsive documents for two custodians: Julie Blunden, Executive VP, Public Policy & Corporation Communications, and Bob Okunski, Senior Director of Investor Relations. Plaintiffs suggest that Steve Wright, SunPower's Director of Corporate Communications, might also have responsive documents. It is unclear if this is the only other custodian for whom Plaintiffs seek documents. In the meet and confer process Plaintiffs should identify which other custodians, if any, they believe might have responsive information.

**Request No. 56** seeks all documents or communications received or prepared by Hernandez, Arriola, Werner, Rodman, Trinidad and/or SunPower's Investor Relations and/or Public Relations Department employees discussing price targets or forecasts for SunPower securities during the Class Period, including, without limitation, documents commenting on or discussing any material price movement.

The dispute over this RFP also appears limited to the custodian issue. Defendants have agreed to produce responsive documents from Werner, Arriola, Hernandez, Rodman, Trinidad

1 and "key custodians from investor relations and public relations who are likely to have
2 responsive documents." (Dkt. No. 210-2, 29:6-9.) It is not clear what other custodians Plaintiffs
3 believe Defendants should search, which may be because of Defendants' vague reference to
4 "key custodians from investor relations and public relations who are likely to have responsive
5 documents." In the meet and confer process Defendants must specifically identify which
6 custodians it will produce responsive documents for and Plaintiffs must identify which
7 custodians it believes are missing from this list.

### 4. Request No. 33

**Request No. 33** seeks documents prepared or distributed in connection with any actual or contemplated meeting, videoconference or teleconference, between any management-level employee at SunPower's corporate headquarters and any employee at SunPower's offices or facilities in the Philippines concerning SunPower's financial results, projections, cost reduction efforts, internal controls, the Restatement, or the accounts and financial metrics impacted by or adjusted in the Restatement.

The dispute regarding this request is limited to the custodian issue. Defendants have agreed to produce documents responsive to this request for Werner, Arriola, Hernandez, Rodman and Trinidad because the request relates to allegations made as to the Insider Defendants. Plaintiffs contend that this is too limiting and would exclude key other management whose contact with Philippines-based employees is also relevant. Plaintiffs propose that the custodians include all vice presidents, controllers, sub-controllers, accounting and finance directors, and other relevant financial managers. Plaintiffs' custodian categories are quite broad; in the meet and confer process Plaintiffs should be more specific.

### 5. Request No. 35

**Request No. 35 seeks** all periodic financial or accounting reports used to track, review or account for SunPower's financial results, projections, cost reduction efforts, internal controls, the Restatement, or the accounts and financial metrics impacted by or adjusted by the Restatement, including "Stage Gates" and "Dashboard Reports."

It is unclear if the dispute regarding this request relates to the scope of the request and/or the custodians to be searched. It appears that Defendants objected based on scope and thus proposed limiting the response to documents from certain custodians including

8

1 Hernandez, Arriola, Werner, Rodman, Trinidad, and Neese. Plaintiffs object to limiting the
2 request to these custodians, but have not proposed their own list of custodians or category of
3 custodians. In the meet and confer process Plaintiffs should identify the additional custodians
4 they seek responses from.

### 6. Request No. 36

**Request No. 36** seeks documents concerning Value Added Reseller (a/k/a "VAR") meetings or teleconferences or videoconferences.

The dispute regarding this request is appears based on both scope and custodians. The only allegation as to VAR meetings in the FAC is that "SunPower held a Company-wide teleconference called 'VAR' meetings every Wednesday between 3:00 a.m. and 4:00 a.m. Manila time. The meetings were led by Cliff Kalinowski, SunPower's Director of Global Services." (Dkt. No. 153 ¶ 95.) Defendants thus propose that the response be limited to "a select few custodians." Plaintiffs do not respond on the custodian issue, and instead, appear to seek all responsive documents; however, Plaintiffs' reply states that "only a discrete group of SunPower employees attended and/or assisted in preparing materials for VAR meetings." (Dkt. No. 215 19:16-18.) The parties should meet and confer regarding who is in this "discrete group."

### 7. Request No. 59

**Request No. 59** seeks all documents concerning SunPower's debt covenants, including any communications regarding the potential or actual violation of those covenants.

The issue regarding this request appears limited to the custodian issue. Defendants offered to produce documents from the individuals Plaintiffs alleged committed the fraud: Werner, Arriola, Hernandez, Rodman, and Trinidad. Plaintiffs argue that this excludes "numerous finance, accounting and operations personnel who possess information about whether SunPower's debt covenant restrictions were a factor in pressuring Company personnel to manipulate its financial results." (Dkt. No. 207, 28:2-4.) Plaintiffs need to identify the custodians they believe might have relevant information.

### 8. Request No. 64

**Request No. 64** seeks [a]ll documents relating to communications with third parties

9

concerning this Action and the allegations therein.

The issue regarding this request appears limited to the custodian issue. Defendants have offered to produce responsive documents for the Insider Defendants. Plaintiffs contend that this would exclude "for example, a SunPower accountant or finance employee's e-mails after the filing of this lawsuit regarding his/her knowledge of the accounting improprieties at issue, the persons involved, or the employee's observations or recollection of the events in question." (Dkt. No. 207, 28:11-14.) While this may be true, Plaintiffs should put some limit on the custodians to be searched otherwise the request does appear to require SunPower to search every employee's files.

On the present record, there is insufficient information for the Court to rule on each of these requests. With respect to the requests as a whole, the Court finds that Defendants' burden argument is undercut by the fact that Defendants already had to pour through their records in response to the Pricewaterhouse Coopers LLP ("PWC") audit for which they collected and processed approximately a terabyte of information from the files of at least 35 custodians. (Dkt. No. 209-7, p. 35-36.) The discovery here would presumably overlap with that provided to PWC. Likewise, the Court finds that any claim of lack of knowledge regarding SunPower's operations on Plaintiffs' part is undercut by the availability of many of the documents from the aforementioned investigation including an organizational chart (Dkt. No. 209-10), and a list of all the custodians for whom SunPower produced documents. (Dkt. No. 209-7).

Accordingly, Defendants should identify the 17 individuals whose documents Defendants allege they have or will produce, and Plaintiffs should identify for each request the custodians, or if individual names are not available, category of custodians sought. The parties should then meet and confer in person to discuss each and every request in light of the above guidance. Plaintiffs are likely not entitled to all documents for all 182 custodians, but are entitled to documents beyond those of the Insider Defendants.

## CONCLUSION

The parties are hereby **ordered to meet and confer in person by September 27, 2012**. The parties shall discuss both the relevant time period issue and the custodian issue in accordance

with the instructions in this Order. If the parties are unable to resolve these matters through the meet and confer process, they shall file a joint discovery letter in accordance with this Court's Standing Order on or before October 9, 2012.

The Court hereby VACATES the October 4, 2012 hearing date and DENIES Plaintiffs' Motion to Compel without prejudice to renewal in accordance with this Order and the Court's Standing Order.

**IT IS SO ORDERED.**

Dated: September 20, 2012

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE