October 31, 2012

**VIA ECF**

Honorable Jacqueline Scott Corley
U.S. District Court for the Northern District of California
Courtroom F, 15th Floor
450 Golden Gate Avenue
San Francisco, California 94102

      Re:    *In re SunPower Corp. Sec. Litig.*, Case No. CV 09-5473-RS (JSC)

Dear Judge Corley:

      In accordance with the Court's Civil Standing Order, Plaintiffs together with defendant SunPower Corporation ("SunPower" or the "Company") respectfully submit this joint statement in the above-referenced matter regarding Plaintiffs' request to compel further testimony pursuant to Fed. R. Civ. P. 30(b)(6). The parties met and conferred in good faith on October 15, 2012, but were unable to resolve the dispute. The parties' respective positions regarding the dispute and final compromise positions are set forth below.

I.    **PLAINTIFFS' POSITION**

      Plaintiffs respectfully seek an order compelling SunPower to adequately prepare and designate, pursuant to Rule 30(b)(6), one or more officers, directors, or managing agents (or other persons who consent to testify on its behalf), to provide further testimony about two discrete topics that are directly relevant to the claims and defenses in this action.

      On September 21, 2012, Plaintiffs deposed SunPower's corporate designee, Mr. Vidul Prakash (SunPower's Vice President, Global Operations, Finance and Accounting, and former Director of Internal Audit during the Class Period) for approximately 5.5 hours on the record.[1] As explained more fully below, despite Plaintiffs' reasonably particularized notice and the parties' extensive discussions about the subjects required for testimony,[2] Mr. Prakash was not adequately prepared, and was therefore unable to provide

---

[1] By way of background, on June 27, 2012, Plaintiffs first noticed the Rule 30(b)(6) deposition of SunPower, identifying eight subject matters for examination with sub-parts that provide more specific information and examples. *See* Ex. A. On August 13, 2012, SunPower served objections to the notice. *See* Ex. B. Plaintiffs served an amended notice on August 22, 2012, which included the same eight topics verbatim and only changed the date for the deposition pursuant to the parties' agreement. *See* Ex C. On September 5, 2012, SunPower served objections and responses to the amended notice. *See* Ex. D. In total, the parties engaged in more than five hours of meet and confer conferences in July and August to discuss the topics identified by Plaintiffs and Defendants' objections.

[2] Correspondence reflecting the parties' discussions, including Plaintiffs' detailed explanations regarding the specific information that would be sought during the deposition, are attached hereto as Exs. E - O. The correspondence also reflects Plaintiffs' understanding of the positions taken by SunPower during those discussions and Plaintiffs' repeated and unequivocal refusal to accept "general" testimony in lieu of complete testimony of information known or reasonably available to SunPower as required by Rule 30(b)(6). Contrary to SunPower's contentions, the parties' meet and confer discussions and correspondence cannot be construed as any explicit or tacit agreement by Plaintiffs to SunPower's baseless attempt to limit testimony concerning matters that

Hon. Jacqueline Scott Corley
October 31, 2012
Page 2

substantive testimony concerning at least two categories of basic information expressly required by Plaintiffs' deposition notice: (1) SunPower's internal investigation in connection with the Company's restatement of nearly two years of false financial results, including information disclosed to the U.S. Securities and Exchange Commission ("SEC") in connection with a March 30, 2010 in-person meeting and presentation (*see* Exs. A & C, Topic Nos. 5(b), 5(e), and 5(g)); and (2) the terminations and post-termination employment status of certain senior SunPower personnel, including the Company's Corporate Controller and Chief Accounting Officer (John Rodman) and its Philippines "CFO" (Miguel Trinidad), who were directly implicated in the fraudulent accounting that led to the Company's restatement (*see* Exs. A & C, Topic Nos. 5(d), 6(e)). SunPower's failure to adequately prepare Mr. Prakash on these two discrete topics is contrary to the Company's obligations under Rule 30(b)(6) and, for all the reasons detailed below, SunPower should be compelled to provide further testimony.[3]

A.     **Relevant Standards For Rule 30(b)(6) Testimony**

A corporate defendant is required to "make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter." *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008). "A [corporate] 30(b)(6) witness . . . is responsible for providing all the relevant information known or reasonably available to the entity." *Mitchell Eng'g v. City & Cnty. of San Francisco*, 2010 WL 455290, at *1 (N.D. Cal. Feb. 2, 2010).

While the noticing party must describe with reasonable particularity the matters on which examination is requested, "the 'reasonable particularity' requirement of Rule 30(b)(6) cannot be used to limit what is asked of the designated witness at a deposition." *UniRAM Tech., Inc. v. Monolithic Sys. Tech., Inc.*, 2007 WL 915225, at *2 (N.D. Cal. Mar. 23, 2007) (internal citation omitted). In other words, "[t]he 30(b)(6) notice establishes the minimum about which the witness must be prepared to testify, not the maximum." *Id.* If it becomes obvious that the corporate designee is deficiently prepared, the corporation is obligated to provide a substitute. Fed. R. Civ. P. 37(a)(3)(B)(ii).

---

are plainly relevant to SunPower's privilege and work product assertions and the claims and defenses in this litigation. Indeed, SunPower's claim that Plaintiffs agreed to accept "general testimony" is flatly contradicted by the record. *See, e.g.*, Ex. L at 2 ("SunPower's designee is required to 'testify about information known or reasonably available to the organization' . . . . [and] [w]e expect that SunPower's representation that it will provide 'general testimony' regarding subjects is not intended to suggest that the scope of testimony will be confined to the witness(es)' memory . . . . [and] we incorporate (rather than repeat) this caveat into each of the responses . . . ."). Similarly, SunPower's claim that Plaintiffs "sought to add topics" "on the eve of the deposition" is patently false. In truth, Plaintiffs' September 19, 2012 correspondence (Ex. N) responded to and corrected numerous erroneous assertions in SunPower's prior September 5 correspondence (Ex. M) and its responses to the amended deposition notice (Ex. D). No "net topics" were added; in fact, Plaintiffs sought to provide more detail about the general questions it planned to address at the deposition.

[3] SunPower's characterization of the deposition notice as including "38 far-ranging topics and subtopics" that required SunPower to prepare a witness on "virtually every aspect of its business" is inaccurate. First, the deposition notice plainly includes only *eight* general topics with related subparts, most of which were limited on their face to SunPower's "*processes*" and not every detail surrounding "every aspect" of SunPower's business, as SunPower claims. Second, SunPower fails to inform the Court that Plaintiffs agreed to limit the scope of testimony only to SunPower's US headquarters and its Philippines division where the fraudulent accounting originated. *See* Ex. L at 2. Accordingly, SunPower's quotation of the deposition notice's original definition of "SunPower" to argue burden and overbreadth is misleading. Finally, Defendants' citation to *Apple Inc. v. Samsung Elecs. Co.*, 2012 U.S. Dist. LEXIS 9921 (N.D. Cal. Jan. 27, 2012) is inapposite. The deposition notice there consisted of "46 single-spaced pages and sets forth 229 topics for examination" and the Court granted a motion for a protective order to reasonably narrow the scope of the deposition notice. *Id.* at *12. Here, the notice contains eight reasonably particularized topics and SunPower did not (and could not) seek a protective order under Rule 26(c).

Hon. Jacqueline Scott Corley
October 31, 2012
Page 3

**B.      SunPower Failed To Adequately Testify Concerning Disclosures Made To The
          SEC That Waive Privilege Or Work Product Claims For The Internal Investigation**

Topic Nos. 5(b), 5(e), and 5(g) seek testimony concerning SunPower's internal restatement investigation, including, specifically, the scope and substance of any disclosures or communications of the results or conclusions of the investigation, results of witness interviews, or facts or documents discovered during the investigation. This information is not only directly relevant to the parties' claims and defenses in the case (*i.e.*, the circumstances and evidence surrounding the restatement), it is also highly relevant to SunPower's privilege and work product assertions over numerous documents and responsive information that defendants refuse to produce and are preventing non-parties, such as SunPower's outside auditor PricewaterhouseCoopers LLP, from producing in discovery.

It is well-settled that disclosure of privileged material or work product to government agencies and other third parties constitutes waiver. *See, e.g., Church & Dwight Co. v. Mayer Labs., Inc.*, 2011 U.S. Dist. LEXIS 133762 (N.D. Cal. Nov. 18, 2011) (Corley, J.) (holding disclosure to government agency waives attorney client privilege and work product protection) (following *S.E.C. v. Berry*, 2011 U.S. Dist. LEXIS 28301 (N.D. Cal. Mar. 7, 2011); *United States v. Bergonzi*, 216 F.R.D. 487 (N.D. Cal. 2003); *United States v. Reyes*, 239 F.R.D. 591 (N.D. Cal. 2006)); *recons. denied by, Church & Dwight & Co. v. Mayer Labs., Inc.*, 2011 U.S. Dist. LEXIS 141315 (N.D. Cal. Dec. 8, 2011). Indeed, the Ninth Circuit recently confirmed that the "selective waiver" doctrine is now foreclosed in this Circuit. *See In re Pac. Pictures Corp.*, 2012 U.S. App. LEXIS 7643 (9th Cir. Apr. 17, 2012).

Accordingly, while Plaintiffs cannot currently determine the full extent and scope of SunPower's waiver until SunPower properly testifies regarding the complete details of SunPower's disclosures to the SEC, it is clear that – at a minimum – SunPower affirmatively waived any protection that may have attached to the subject matter of the presentation as well as any underlying information or documents disclosed either orally or in writing to the SEC. *See Reyes*, 239 F.R.D. at 604 ("To the extent that MoFo and [Wilson Sonsini] disclosed to the government information contained in any of the written material identified in [discovery requests], the Court holds that the law firms have waived any right to protect it under the attorney-client or work-product privileges.").[4]

Nonetheless, SunPower's corporate designee was unprepared and unable to provide complete or substantive responses to questions on these highly relevant subjects. Indeed, Mr. Prakash repeatedly testified that his preparation regarding the March 30, 2010 SEC meeting was limited to "review[ing] a [PowerPoint] presentation that the audit committee investigation team had made to the SEC that summarized the results of the investigation" (Ex. P at 17:20-18:10) and that he did nothing else to inform himself about the

---

[4] Plaintiffs intend to fully brief the issues surrounding the validity of SunPower's assertions of privilege and/or work product and the scope of waiver of those protections in a future discovery motion. Plaintiffs briefly touch upon those issues here only to illustrate the relevance of the information disclosed to the SEC regarding the restatement investigation. Nonetheless, SunPower's mischaracterization of Fed. R. of Evid. 502(a) is unavailing, as it ignores that numerous courts since the Rule became effective have found subject matter waiver via disclosures to the government, adversaries and third parties. *See supra* at 3; *see also, e.g., Century Aluminum Co. v. AGCS Marine Ins. Co.*, 2012 U.S. Dist. LEXIS 122242, at *11-13 (N.D. Cal. Aug. 28, 2012) (finding subject matter waiver under Fed. R. Evid. 502(a) because defendants attempted to use selective portions of the internal investigation "as both a shield and a sword, that is, to reveal a limited aspect of privileged communications in order to gain a tactical advantage in litigation."). Moreover, SunPower's arguments are beside the point because, as SunPower acknowledges, the issue of waiver (or its scope) is not before the Court. Importantly, there is no dispute that SunPower's disclosure of purportedly privileged or protected information, including the specific information disclosed to the SEC, is relevant to the claims and defenses in this case (*i.e.*, SunPower's reliance on the audit committee investigation) as well as the issue of waiver and is therefore discoverable.

Hon. Jacqueline Scott Corley
October 31, 2012
Page 4

circumstances or substance of that meeting between SunPower's "investigation team" and the SEC. *Id.* at 135:3-8; 151:11-152:21. This failure resulted in unresponsive or incomplete answers. For example, Mr. Prakash was unable to provide even the most basic information, including who initiated the meeting (*id.* at 134:22-135:2; 136:10-16), where the meeting occurred (*id.* at 147:20-148:2), or the manner or substance of what was communicated to the SEC at the meeting (*id.* at 148:13-18; 148:23-149:2; 149:9-11). As Mr. Prakash conceded, he did not inquire in advance of the deposition "into the meeting itself or how it was conducted, what transpired, what was shared and [in] what form." *Id.* at 150:13-15. Accordingly, Mr. Prakash was unable to testify during the deposition about *any* information that "was shared" with the SEC, such as the substance of witness interviews, memoranda reflecting witness interviews, internal documents, emails or other material disclosed to the SEC. *Id.* at 152:3-9; 171:18-172:9.

Similarly, Mr. Prakash was asked about the circumstances of witness interviews conducted during the internal investigation but was unable to provide complete or substantive responses. For example, Mr. Prakash was asked whether any of the SunPower employees interviewed in connection with the investigation – including employees who were subsequently terminated for cause in connection with the restatement – were told whether they were represented by SunPower's lawyers performing the interviews and/or were advised that they could be represented by their own counsel during the interviews (*i.e.*, "corporate Miranda" warnings). *Id.* at 157:8-159:17. Finally, Mr. Prakash was asked – but was unable to answer – why SunPower had another law firm take over the internal investigation. *Id.* at 138:5-9. This information is directly relevant to the claims and defenses in this case as well as SunPower's privilege and work product assertions regarding numerous withheld documents.

### C. SunPower Failed To Adequately Testify Concerning Terminations And Employment Status Of Personnel Implicated In The Fraud

Similarly, SunPower did not prepare its designee to adequately testify concerning the terminations and current employment status of key senior SunPower personnel implicated in the fraud, including the Company's former Corporate Controller, Vice President and Chief Accounting Officer (Mr. Rodman) and its former Philippines CFO, Controller and Director of Finance for SunPower's Worldwide Operations (Mr. Trinidad). For example, Mr. Prakash was unable to provide complete or even substantive answers to the circumstances of Mr. Trinidad's and Mr. Rodman's employment terminations (*id.* at 121:7-20), SunPower's post-termination agreements with Mr. Rodman or Mr. Trinidad (*id.* at 123:9-124:20), whether SunPower is paying for Mr. Trinidad's or Mr. Rodman's legal fees in connection with this matter (*id.* at 30:13-31:2), or whether each received severance, incentive compensation or any other benefits upon termination (*id.* at 121:21-123:8; 124:21-126:13; 129:18-133:11). Mr. Prakash admitted that he "did not directly look at specific facts and circumstances around each individual's termination" in advance of the deposition and, as a result, he only had a "general sense" of "what the reasons were" for the terminations. *Id.* at 115:17-116:1. Indeed, Mr. Prakash repeatedly conceded he would have to consult with SunPower's Human Resources Department to answer numerous relevant questions. *See, e.g., id.* at 121:21-122:23. Simply put, SunPower did not fulfill its obligations to adequately prepare a witness under Rule 30(b)(6) and should be compelled to do so.

### D. Plaintiffs' Final Proposed Compromise

To avoid motion practice, Plaintiffs proposed that SunPower designate and adequately prepare a witness for further Rule 30(b)(6) testimony consisting of 1.5 hours of record time, as reserved by Plaintiffs at the September 21 deposition (*see* Ex. Q at 5). SunPower refused (*see* Ex. R), and instead, offered only to provide prepared written responses to certain questions that were asked at the deposition with no opportunity for Plaintiffs to ask additional questions that were foreclosed at the deposition by Mr. Prakash's ignorance or ask follow-up questions for those questions that were asked. For these reasons, further testimony is

Hon. Jacqueline Scott Corley
October 31, 2012
Page 5

appropriate and SunPower's compromise proposal is strongly disfavored by courts in this and other Circuits. *See, e.g., La. Pac. Corp. v. Money Mkt. Institutional Inv. Dealer*, 2012 U.S. Dist. LEXIS 128531, at *16-17 (N.D. Cal. Sept. 10, 2012) (Rule 30(b)(6) does not permit a party to elect to supply answers in a written response) (internal cites omitted); *Buehrle v. City of O'Fallon*, 2011 U.S. Dist. LEXIS 11972, at *7-9 (E.D. Mo. Feb. 8, 2011) (Rule 30(b)(6) testimony favored over written responses because it allows inquiring party to obtain more complete information and spontaneous responses) (internal cites omitted).

## II.   **DEFENDANTS' POSITION**

Plaintiffs suggest that they served a deposition notice describing, with reasonable particularity, eight discrete subjects for examination. A glance at the notice shows that to be incorrect. The notice set forth 38 far-ranging topics and subtopics which, when coupled with definitions, required SunPower to prepare a witness to speak in detail to virtually every aspect of its business.[5] For example, Plaintiffs' notice instructed SunPower to testify concerning the "creation and use" of all "daily, weekly, monthly, [and] quarterly" reports used to "track and/or monitor" a wide array of broad topics like "accounting" and "costs" at "SunPower," defined to include every one of the Company's "parents, subsidiaries, divisions, subdivisions, affiliates, predecessors, successors, assigns, officers, directors, board of directors or committees thereof, present or former employees, representatives or agents (including, without limitation, their attorneys, accountants and advisors), and all other persons occupying similar positions or performing similar functions or acting, purporting to act or authorized to act on its behalf." Ex. A at 5-6; *see also* Ex. C at 5-6.

A notice of this breadth not only imposes an impossible burden on the witness, it does not comply with the law. *See* Fed. R. Civ. P. 30(b)(6) (notice "must describe *with reasonable particularity* the matters for examination") (emphasis added); *see also Astellas Pharma, Inc. v. Impax Labs., Inc.*, 2009 WL 2392166, at *3 (N.D. Cal. Aug. 4, 2009) (a notice "is sufficiently particular when it is . . . narrowly tailored"); *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 2012 WL 1511901, at *2 (N.D. Cal. Jan. 27, 2012) ("[T]he purpose served by [Rule 30(b)(6)] . . . does not extend to burdening the responding party with production and preparation of a witness on every facet of the litigation. This would render unworkable the obligation of the responding party to 'make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter.'").

Accordingly, SunPower served objections, triggering hours of laborious conferences and correspondence. Ex. B. Plaintiffs could not or would not specify with reasonable particularity the topics on which they truly intended to question SunPower, but SunPower nevertheless agreed to proceed on the understanding that its designee would be prepared to provide general testimony on various topics. The parties memorialized their understanding in correspondence. *See* Ex. L, Ex. M; *see also* Ex. D.

Preparing for such a deposition, however, remained a mammoth undertaking. SunPower designated Vidul Prakash, SunPower's Vice President, Global Operations-Finance, former Vice President and Controller for the Asia Pacific Region, and former Director of Internal Audit during the Class Period. Mr. Prakash was responsible for the global audit, compliance, and risk management function at SunPower (Ex. P at 35:12-17, 36:5-38:22, 39:5-41:12, 44:19-47:13), and also participated in identifying and remediating the issues related to

---

[5] These topics included SunPower's corporate organization and reporting structure; periodic reports and meetings; financial reporting and accounting processes, including journal entries, access to accounting systems, "superusers," internal controls and Sarbanes-Oxley Compliance, budgets and forecasts, costs and expense approval, "cost reduction," polysilicon contracts, the implementation of SunPower's Oracle Enterprise Planning System; "SunPower's Public Statements"; communications with regulators; numerous details regarding SunPower's restatement; employee terminations, SunPower's Philippines operations; among many others. *See* Exs. A & C.

Hon. Jacqueline Scott Corley
October 31, 2012
Page 6

the Audit Committee's internal investigation. *Id.* at 62:24-63:3. Mr. Prakash spent over 40 hours preparing for the deposition, including meeting with counsel, reviewing Company documents, and meeting with other SunPower employees and persons with knowledge of the topics noticed. *Id.* at 16:20-24.

On the eve of the deposition, however, Plaintiffs sought to add topics in the guise of offering "more detail." Ex. N at 2-5. That was insufficient notice and is not a basis for granting Plaintiffs' request. It is true, as Plaintiffs point out, that the fact a topic was not reflected in the original notice does not preclude questions about that topic. But when a 30(b)(6) witness "does not know the answer to the questions outside the scope of matters described in the notice, then that is the examining party's problem." *Detoy v. City and Cnty. of S.F.*, 196 F.R.D. 362, 367 (N.D. Cal. 2000).

During the deposition, Mr. Prakash testified at length and in detail regarding the topics discussed below, topics noticed in advance of the deposition, and even topics beyond. Indeed, with respect to the vast majority of the topics noticed, Plaintiffs have no complaints about the detailed and broad-ranging testimony Mr. Prakash provided. Instead, Plaintiffs complain that Mr. Prakash was unable to recount particular details about one meeting, the severance agreements of two individuals, and two specific questions (which were never identified in the notice) about an internal investigation conducted by the Audit Committee of SunPower's Board of Directors. It is terribly unfair to notice 38 topics covering virtually everything that occurred at a company during a two-year period, and then complain that specific details about a few of those topics were not provided. Even then, SunPower offered to answer each of the questions Plaintiffs claim was not adequately answered.

SunPower has fulfilled its obligations under Rule 30(b)(6). Moreover, Plaintiffs have other discovery tools they can use to obtain information on the specific issues they failed to properly notice. To reopen the deposition is unfair and would be burdensome, inefficient, and wasteful of party resources. Defendants respectfully request that the Court deny Plaintiffs' request.

### A. SunPower's Testimony Regarding the March 30, 2010 SEC Meeting Was Responsive and Complete.

During the deposition, Mr. Prakash answered questions about a meeting between representatives of the SEC and SunPower to discuss the Audit Committee's internal investigation. But Plaintiffs argue that Mr. Prakash should have provided more, such as where the meeting occurred, the specific questions asked and answered at the meeting, and particular details shared. In support, Plaintiffs cite two broad topics in their deposition notice, Topics 5(e) and 5(g). The specific questions Plaintiffs complain about, however, were not within the scope of these topics, as agreed to by the parties in advance of the deposition.

Topic 5(e) purports to require the "identification and description" of "any inquiry or investigation" by the SEC or any "third party" concerning SunPower's restatement or the underlying conduct that led to the restatement, including the length and scope of the investigation, "persons involved," "information provided or received by SunPower," and "the substance of any meetings or calls held." Ex. A at 10. SunPower objected that this topic is vague and ambiguous, overbroad and unduly burdensome, and seeks information protected by the attorney-client privilege or work product doctrine, but agreed to "meet and confer with Plaintiffs to determine the scope of this deposition topic." Ex. B at 16-17. After meeting and conferring, the parties agreed that SunPower's designee would provide "general testimony" regarding inquiries by the SEC, other governmental agencies, or third parties concerning SunPower's Restatement. Ex. D at 19.

Similarly, Topic 5(g) demanded testimony about the "scope and substance" of "any" "communications" of the results or conclusions of the Audit Committee's internal investigation to "anyone" and "the approximate dates and reason" for each disclosure and the "substance of the information disclosed."

Hon. Jacqueline Scott Corley
October 31, 2012
Page 7

Ex. A at 10. Following negotiations, SunPower agreed that its designee would provide general testimony regarding SunPower's disclosure of the final conclusions of the Audit Committee's internal investigation, including approximate dates of disclosure, persons to whom disclosures were made, and the reasons for the disclosure. Ex. D at 20-21. Plaintiffs themselves characterized the parties' agreement as: "SunPower will provide testimony as to the individuals and/or entities SunPower shared information with, *the general categories of information shared*, approximate dates information was shared, who at SunPower shared the information, where information was shared, and the reasons for sharing of this information." Ex. L at 10 (emphasis added).

Over the weeks that followed, Mr. Prakash prepared to testify on each of these (and many other) topics. But almost one month later, and less than 48 hours before the deposition, Plaintiffs switched tactics and attempted to renege on this understanding. Ex. N at 4. Moreover, Plaintiffs' letter "reject[ed] any attempt to limit testimony to 'general testimony' or disclosure as limited only to the 'final conclusions,'" even though the original notice asked for testimony regarding "disclosures or communications of the *results or conclusions*" of the Audit Committee's internal investigation. *Id.* (emphasis added); Ex. A at 10. SunPower, of course, rejected this attempt to change the deposition scope on virtually no notice. Ex. O at 1, 3-4. Mr. Prakash proceeded to testify, as agreed, regarding SunPower's disclosure of "the results or conclusions" of the Audit Committee's investigation, including "general categories of information shared" at the March 30, 2010 SEC meeting. *See, e.g.*, Ex. P at 138:10-139:13, 159:24-165:3. Mr. Prakash testified that the substance of what was communicated at the meeting is reflected in a PowerPoint presented by the Audit Committee's investigation team to the SEC, and testified at length when asked to explain and elaborate on information contained in the presentation. *Id; see also id.* at 150:16-21.[6]

### B. Testimony Regarding the Specifics of Witness Interviews Conducted During the Internal Investigation Is Outside the Scope of Plaintiffs' Noticed Topics.

Plaintiffs assert that Mr. Prakash should have been prepared to provide details concerning whether employees interviewed by counsel during the Audit Committee's internal investigation were given *Upjohn* warnings,[7] and why the Audit Committee substituted an independent law firm to conduct the investigation after SunPower's regular corporate counsel had commenced preliminary work. Plaintiffs did not, however, notice these topics, nor would it have been reasonable to do so.

Plaintiffs cite Topic 5(b), which sought testimony on the scope of the investigation, including "project clarity" and all "persons involved, processes utilized, and the scope of documents reviewed and interviews conducted." Ex. A at 9. Again, SunPower objected on grounds of vagueness, overbreadth, undue burden, and attorney-client privilege and work product. Ex. B at 15. Ultimately, the parties reached agreement on this

---

[6] While not the subject of this joint letter, Plaintiffs erroneously contend that SunPower waived "any protection" over the "subject matter" of any information or documents disclosed to the SEC. Federal Rule of Evidence 502(a), which became effective September 19, 2008, limits waiver of privilege or work product to documents actually communicated to a federal agency, except in "those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." Fed. R. Evid. 502(a), Adv. Comm. Cmt. (*citing In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 159 F.R.D. 307, 312 (D.D.C. 1994)). The case cited by Plaintiffs, *U.S. v. Reyes*, 239 F.R.D. 591, 603 (N.D. Cal. 2006), predates Rule 502(a)'s effectiveness. Moreover, Plaintiffs fail to explain how Defendants have used the Audit Committee's internal investigation "as both a shield and a sword" in this litigation (because they haven't). *Cf. Century Aluminum Co. v. AGCS Marine Ins. Co.*, 2012 U.S. Dist. LEXIS 122242, at *2, *4, *11-13 (N.D. Cal. Aug. 28, 2012) (in insurance coverage dispute, finding subject matter waiver where defendant selectively disclosed privileged communications supporting defendants' claim of no coverage but refused to produce documents supporting that claim). SunPower will defend its assertions of privilege and work product at the appropriate time.

[7] *Upjohn Co. v. U.S.*, 449 U.S. 383, 394 (1981).

Hon. Jacqueline Scott Corley
October 31, 2012
Page 8

point, *which Plaintiffs memorialized as follows*: SunPower's designee would "testify concerning the purpose, scope, and duration of SunPower's Internal Investigation," and would also provide "'general testimony' as to the people involved, the procedures utilized, and the persons interviewed in connection with the Internal Investigation." Ex. L at 9. Defendants clarified that the parties agreed that SunPower would "designate a witness to provide general testimony regarding the purpose, scope, duration of, and persons involved in, Project Clarity." Ex. D at 17. Mr. Prakash did precisely that. *See, e.g.*, Ex. P at 23:22-24:19, 27:12-16, 134:6-10, 140:24-142:8, 181:11-25, 225:6-231:3, 236:17-237:14, 240:5-242:24. Topic 5(b) provides no basis to reopen the deposition.

> ### C.   Testimony Regarding Agreements Between SunPower and Messrs. Rodman and Trinidad Is Outside the Scope of Plaintiffs' Noticed Topics.

Plaintiffs contend that they noticed as a deposition topic (1) the details of any separation agreements made between SunPower, on one hand, and John Rodman, SunPower's former Corporate Controller, or Miguel Trinidad, SunPower's former Philippines Finance Director, on the other, and (2) any fee reimbursement arrangements with those gentlemen. But they did not notice these topics. To support their argument, Plaintiffs cite Topic 6(e), which asks for testimony regarding post-SunPower employment status of certain individuals including Messrs. Rodman and Trinidad. Ex. A at 11. SunPower fails to see the connection between this topic and the terms of their separation agreements. Moreover, Plaintiffs fail to explain how Mr. Prakash's testimony was not adequate on this topic. Plaintiffs also cite Topic 5(d), which Plaintiffs said was intended to elicit testimony regarding "the 'reasons surrounding any personnel change, resignation, termination, suspension, temporary or permanent removal from office or change of job title of SunPower employees in connection with the conduct giving rise to the Restatement' with regard to . . . Rodman [and] Trinidad." Ex. L at 9-10. Defendants confirmed that SunPower would "designate a witness to provide general testimony regarding why . . . Rodman [and] Trinidad . . . are no longer employed at SunPower." Ex. D at 18-19. Mr. Prakash testified regarding the circumstance of and reasons for the departures of Rodman and Trinidad. Ex. P at 115:25-119:5, 188:1-17. Plaintiffs' regret that they failed to identify these *additional* topics provides no basis to reopen a 30(b)(6) deposition. *Detoy*, 196 F.R.D. at 367.

> ### D.   Defendants' Final Proposed Compromise

SunPower fully met its duty—as defined by Plaintiffs—to make "a conscientious, good-faith effort" to designate a witness and prepare him to "fully and unevasively answer questions about the designated subject matter." *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., Inc.*, 251 F.R.D. 534, 539 (D. Nev. 2008). As the court in *Great American* noted, "Rule 30(b)(6) is not designed to be a memory contest." *Id.* Even if Mr. Prakash was unable to testify about every single detail Plaintiffs had in mind, Plaintiffs have other discovery tools available to obtain the information they seek. Nevertheless, to avoid this wasteful dispute, Defendants offered to provide written answers to the specific questions that Plaintiffs believe were not fully answered by Mr. Prakash during the deposition regarding (1) the March 30, 2010 SEC meeting; (2) whether witnesses interviewed during the investigation were given *Upjohn* warnings and the reasons the Audit Committee hired independent counsel; and (3) any agreements made between Messrs. Rodman and Trinidad and SunPower upon their departures.

Plaintiffs contend that SunPower's compromise proposal is "strongly disfavored by courts in this and other Circuits." The cases they cite, however, involved parties seeking to provide interrogatory responses

Hon. Jacqueline Scott Corley
October 31, 2012
Page 9

_____

instead of providing *any* deposition testimony.[8] Here, of course, SunPower has already spent dozens of hours preparing its designee on 38 far-ranging topics and subtopics and fulfilled its obligations under Rule 30(b)(6). Under these circumstances, the Rules clearly authorize the Court to limit discovery where the discovery sought "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). For the foregoing reasons, Defendants respectfully request that Plaintiffs' request for additional deposition testimony be denied.

Respectfully submitted:

BERNSTEIN LITOWITZ BERGER &
GROSSMANN LLP

_____
Benjamin Galdston
*Co-lead Counsel for Plaintiffs*

MORRISON & FOERSTER LLP

_____
Craig D. Martin
*Counsel for Defendants*

_____

[8] *La. Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, No. C 09-03529 JSW (LB), 2012 U.S. Dist. LEXIS 128531, at *22-23 (N.D. Cal. Sept. 10, 2012) (declining defendant's preference to answer interrogatories in lieu of preparing a witness for a Rule 30(b)(6) deposition); *Buehrle v. City of O'Fallon, Mo.*, Case No. 4:10CV00509 AGF, 2011 U.S. Dist. LEXIS 11972, at *8-9 (same).