BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
DAVID R. STICKNEY (Bar No. 188574)
NIKI L. MENDOZA (Bar No. 214646)
BENJAMIN GALDSTON (Bar No. 211114)
DAVID R. KAPLAN (Bar No. 230144)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:   (858) 793-0323
davids@blbglaw.com
nikim@blbglaw.com
beng@blbglaw.com
davidk@blbglaw.com

KAPLAN FOX & KILSHEIMER LLP
LAURENCE D. KING (Bar No. 206423)
MARIO M. CHOI (Bar No. 243409)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Tel:    (415) 772-4700
Fax:   (415) 772-4707
lking@kaplanfox.com
mchoi@kaplanfox.com

KESSLER TOPAZ MELTZER
   & CHECK, LLP
RAMZI ABADOU (Bar No. 222567)
ELI R. GREENSTEIN (Bar No. 217945)
STACEY KAPLAN (Bar No. 241989)
ERIK D. PETERSON (Bar No. 257098)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:    (415) 400-3000
Fax:   (415) 400-3001
rabadou@ktmc.com
egreenstein@ktmc.com
skaplan@ktmc.com
epeterson@ktmc.com

*Attorneys for Lead Plaintiffs Arkansas Teacher
Retirement System, Första AP-fonden,
and Danske Invest Management A/S*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE SUNPOWER SECURITIES LITIGATION | ) Case No. CV 09-5473-RS (JSC)<br>) (Consolidated)<br>)<br>) **LEAD PLAINTIFFS' NOTICE OF**<br>) **MOTION, UNOPPOSED MOTION FOR**<br>) **PRELIMINARY APPROVAL OF**<br>) **SETTLEMENT, AND MEMORANDUM OF**<br>) **POINTS AND AUTHORITIES IN**<br>) **SUPPORT THEREOF**<br>)<br>) Judge:    Hon. Richard Seeborg<br>) Courtroom:  3<br>) Date:     March 14, 2013<br>) Time:     1:30pm<br>) |

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................. ii

STATEMENT OF ISSUES TO BE DECIDED ................................. vii

I.    PRELIMINARY STATEMENT ................................................. 1

    A.    FACTUAL BACKGROUND ......................................... 3

    B.    PROCEDURAL HISTORY ........................................... 4

    C.    SETTLEMENT NEGOTIATIONS ............................... 7

II.    THE PROPOSED SETTLEMENT ......................................... 8

    A.    Settlement Consideration .............................................. 8

    B.    Plan Of Allocation ...................................................... 8

III.    ARGUMENT ........................................................................... 9

    A.    The Court Should Grant Preliminary Approval Of The Proposed Settlement ................................................................. 9

        1.    The Proposed Settlement Is The Product Of Good Faith, Arm's Length Negotiations Among Experienced Counsel Mediated By An Experienced Private Mediator ......................... 9

        2.    The Proposed Settlement Has No Obvious Deficiencies And Does Not Improperly Grant Preferential Treatment To Class Representatives Or Segments Of The Settlement Class ........................... 11

        3.    The Proposed Settlement Falls Well Within The Range Of Reasonableness And Warrants Notice And A Hearing On Final Approval ................................................. 12

    B.    The Proposed Settlement Class Meets The Prerequisites For Class Certification Under Rule 23 ..................................... 15

        1.    Numerosity ......................................................... 16

        2.    Commonality ..................................................... 17

        3.    Typicality ........................................................... 18

        4.    Adequacy ........................................................... 19

        5.    Common Questions Of Law Predominate And A Class Action Is the Superior Method Of Adjudication ................. 20

IV.    CONCLUSION ....................................................................... 25

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Adobe Sys., Inc. Sec. Litig.,*
    139 F.R.D. 150 (N.D. Cal. 1991) ............................................................................16

*Alberto v. GMRI, Inc.,*
    252 F.R.D. 652 (E.D. Cal.2008) ...............................................................................9

*Alfus v. Pyramid Tech. Corp.,*
    764 F. Supp. 598 (N.D. Cal. 1991) ........................................................................18

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591, 117 S.Ct. 2231 (1997) ...............................................................18, 21

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) ...........................................................................16, 17

*In re Cabletron Sys., Inc. Sec. Litig.,*
    239 F.R.D. 30 (D.N.H. 2006) .................................................................................24

*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) .................................................................................13

*Class Plaintiffs v. City of Seattle,*
    955 F.2d 1268 (9th Cir. 1992) .................................................................................9

*Columbus Drywall & Insulation, Inc. v. Masco Corp.,*
    258 F.R.D. 545 (N.D. Ga. 2007) ............................................................................20

*In re Cooper Companies Inc. Sec. Litig.,*
    254 F.R.D. 628 (C.D. Cal. 2009) ..........................................................16, 19, 21, 22

*Danis v. USN Commc'n, Inc.,*
    189 F.R.D. 391 (N.D. III. 1999) .............................................................................18

*In re Diet Drugs,*
    99-20593, 2000 WL 1222042 (E.D. Pa. Aug. 28, 2000) .........................................21

*In re Emulex Corp., Sec. Litig.,*
    210 F.R.D. 717 (C.D. Cal. 2002) ......................................................................18, 21

*Erica P. John Fund, Inc. v. Halliburton Co.,*
    131 S. Ct. 2179 (2011) ...........................................................................................20

*Fernandez v. Victoria Secret Stores, LLC,*
    No. CV 06-04149 MMM, 2008 WL 8150856 (C.D. Cal. July 21, 2008) ...............11

*Fraley v. Facebook, Inc.*,
  2012 WL 6013427 (N.D. Cal. Dec. 3, 2012) ..................................................................9

*Gittin v. KCI USA, Inc.*,
  2011 WL 1467360 (N.D. Cal. Apr. 12, 2011) ................................................................22

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...............................................................................15, 19

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ......................................................................................18

*Harris v. Palm Springs Alpine Estates, Inc.*,
  329 F.2d 909 (9th Cir. 1964) ......................................................................................16

*Hicks v. Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...............................................................11

*Hodges v. Akeena Solar Inc.*,
  274 F.R.D. 259 (N.D. Cal. 2011) .....................................................................16, 17, 19

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000) ..................................................................................23

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......................................................................13

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ...........................................................10

*In re Initial Pub. Offering Sec. Litig.*,
  226 F.R.D. 186 (S.D.N.Y. 2005) .................................................................................20

*In re Initial Pub. Offering Sec. Litig.*,
  260 F.R.D. 81 (S.D.N.Y. 2009) ...................................................................................20

*Int'l Brotherhood of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012) ................................................................11

*In re Inter-Op Hip Prosthesis Liab. Litig.*,
  204 F.R.D. 330 (N.D. Ohio 2001) ...............................................................................21

*In re LDK Solar Sec. Litig.*,
  255 F.R.D. 519 (N.D. Cal. 2009) ...........................................................................20, 21

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978) ......................................................................................19

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) .................................................................................9, 10

*Louie v. Kaiser Found. Health Plan, Inc.*,
    2008 WL 4473183 (S.D. Cal. Oct. 6, 2008)........................................................13

*Murillo v. Pac. Gas & Elec. Co.*,
    266 F.R.D. 468 (E.D. Cal. 2010) ....................................................................20

*O'Keefe v. Mercedes-Benz USA, LLC*,
    214 F.R.D. 266 (E.D. Pa. 2003)......................................................................21

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)..........................................................11

*Perez-Funez v. Dist. Director, Immigration & Naturalization Serv.*,
    611 F. Supp. 990 (C.D. Cal. 1984) .................................................................16

*In re Portal Software, Inc. Sec. Litig.*,
    2007 WL 1991529 (N.D. Cal. June 30, 2007) ..........................................13, 24

*Ramirez v. DeCoster*,
    203 F.R.D. 30 (D. Me. 2001) .........................................................................21

*Satchell v. Federal Express Corp.*,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)...............................................9, 10

*Schleicher v. Wendt*,
    618 F.3d 679 (7th Cir. 2010) .........................................................................21

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985) ...................................................................16

*In re Seagate Tech. II Sec. Litig.*,
    843 F. Supp. 1341 (N.D. Cal. 1994) ...............................................................16

*In re Sorbates Direct Purchaser Antitrust Litig.*,
    2002 WL 31655191 (N.D. Cal. Nov. 15, 2002) ..............................................24

*Sullivan v. Chase Inv. Servs., Inc.*,
    79 F.R.D. 246 (N.D. Cal. 1978).....................................................................17

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................9

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) ...............................................................23

*In re UTStarcom, Inc. Secs. Litig.*,
    2010 WL 1945737 (N.D. Cal. May 12, 2010)..................................15, 17, 18, 21

*Vathana v. EverBank*,
    2010 WL 934219 (N.D. Cal. Mar. 15, 2010)...................................................20

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT      Case No. CV 09-5473-RS (JSC)

*In re VeriSign, Inc. Sec. Litig.*,
    2005 U.S. Dist LEXIS 10438 (N.D. Cal. Jan. 13, 2005) ........................................................18

*Wahl v. American Security Ins. Co.*,
    2011 U.S. Dist. LEXIS 59559 (N.D. Cal. June 2, 2011) ........................................................22

*Wehner v. Syntex Corp.*,
    117 F.R.D. 641 (N.D. Cal. 1987) ........................................................16

*Welling v. Alexy*,
    155 F.R.D. 654 (N.D. Cal. 1994) ........................................................16

*West v. Circle K Stores, Inc.*,
    2006 WL 1652598 (E.D. Cal. June 13, 2006) ........................................................9, 12, 18, 24

*Yamner v. Boich*,
    1994 WL 514035 (N.D. Cal. Sept. 15, 1994) ........................................................17

*Ybarrondo v. NCO Fin. Sys., Inc.*,
    2009 WL 3612864 (S.D. Cal. Oct. 28, 2009) ........................................................20

*Young v. Polo Retail, LLC*,
    2006 WL 3050861 (N.D. Cal. Oct. 25, 2006) ........................................................12

**STATUTES, RULES, AND OTHER AUTHORITIES**

15 U.S.C. § 78u-4(a)(7) ........................................................22

Fed. R. Civ. P. 23 ........................................................ passim

*Manual for Complex Litigation*, Second § 30.44 (1985) ........................................................9

1

## NOTICE OF MOTION AND UNOPPOSED MOTION

2

**TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

3     PLEASE TAKE NOTICE that on March 14, 2013, or as soon thereafter as counsel may be

4    heard before the Honorable Richard Seeborg, United States District Judge, at the United States

5    Courthouse, United States District Court, Northern District of California, 450 Golden Gate Ave.,

6    San Francisco, California, Lead Plaintiffs, Arkansas Teacher Retirement System, Första AP-

7    fonden, and Danske Invest Management A/S ("Lead Plaintiffs"), will and do hereby move for an

8    order: (1) preliminarily approving the proposed settlement of this Action; (2) preliminarily

9    certifying a class for purposes of implementing the proposed settlement; (3) approving the form

10   and manner of giving notice of the proposed settlement to the Settlement Class; and (4) scheduling

11   a hearing before the Court to determine whether the proposed settlement, and Lead Counsel's

12   application for an award of attorneys' fees and reimbursement of Litigation Expenses, should be

13   granted final approval.

14     The grounds for this motion are that the proposed settlement is within the range of what

15   could be found to be fair, reasonable, and adequate so that notice of its terms may be disseminated

16   to members of the proposed Settlement Class and a hearing for final approval of the proposed

17   settlement scheduled.

18     This motion is supported by the following memorandum of points and authorities in

19   support thereof, and the Stipulation of Settlement ("Settlement Agreement" or "Stipulation") dated

20   February 1, 2013, and exhibits thereto which embody the terms of the proposed settlement

21   between the parties, submitted herewith, the previous filings and orders in this case, and such other

22   and further representations as may be made by Counsel at any hearing on this matter.[1]

23

24

25

26

27

28

---

[1] Unless otherwise indicated, capitalized terms shall have their meaning as defined in the Stipulation.

1

## STATEMENT OF ISSUES TO BE DECIDED

2  1. Whether the proposed $19,700,000 settlement of this Action is within the range of

3  fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the

4  dissemination of notice of its terms to members of the proposed Settlement Class.

5  2. Whether a Settlement Class should be preliminarily certified for purposes of

6  settlement.

7  3. Whether the proposed form of settlement notice and proof of claim and release form

8  and the manner for dissemination to the Members of the Settlement Class should be approved.

9  4. Whether the Court should set a date for a hearing for final approval of the proposed

10  settlement and the application of Lead Counsel for an award of attorneys' fees and reimbursement

11  of Litigation Expenses.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT                 Case No. CV 09-5473-RS (JSC)

1    I.    **PRELIMINARY STATEMENT**

2        Lead Plaintiffs Arkansas Teacher Retirement System, Första AP-Fonden, and Danske

3    Invest Management A/S ("Lead Plaintiffs") respectfully submit this memorandum of points and

4    authorities in support of their unopposed motion, pursuant to Rule 23(e) of the Federal Rules of

5    Civil Procedure, for preliminary approval of the proposed settlement (the "Settlement") of this class

6    action.

7        The Settlement, as set forth in the Stipulation of Settlement dated as of February 1, 2013

8    (the "Settlement Agreement" or "Stipulation") and filed contemporaneously herewith, provides for

9    the payment of $19.7 million in cash for the benefit of the Settlement Class.[2]  Lead Plaintiffs submit

10   that the Settlement represents an excellent result for the Settlement Class and ultimately should be

11   approved by this Court, especially when viewed in light of the substantial challenges the

12   Settlement Class would face in establishing Defendants' liability, demonstrating the full amount of

13   the Settlement Class' damages, and actually recovering any amount that may be awarded.  In

14   particular, Plaintiffs were aware that Defendants would argue that the accounting misconduct that

15   led to SunPower Corporation's ("SunPower" or the "Company") restatement of nearly two years

16   of financial results occurred entirely within SunPower's Philippines manufacturing subsidiary, by

17   Philippine accountants at the direction of Philippine personnel, and was unknown to SunPower's

18   top management located in the United States.  Defendants would argue that when the Company

19   first became aware of the "unsubstantiated" journal entries at its Philippines subsidiary,

20   SunPower's Audit Committee commissioned an independent investigation involving outside law

---

22   [2] The Settlement Class is defined in the Settlement Agreement as "all Persons who purchased or
23   otherwise acquired SunPower publicly traded Securities during the Settlement Class Period."
     Settlement Agreement, at ¶1.33. "Securities" is defined as "SunPower's Class A and/or Class B
     common stock and/or 4.75% Senior Convertible Debentures." Settlement Agreement, at ¶1.31.
24   Excluded from the Settlement Class are Defendant SunPower and Defendants Thomas H. Werner,
25   Dennis V. Arriola, and Emmauel T. Hernandez (hereafter the "Individual Defendants"; with
     SunPower, "Defendants" or "Settling Defendants"), the officers and directors of SunPower,
26   members of their immediate families and their legal representatives, heirs, successors or assigns,
     and any entity in which Defendants have or had a controlling interest.  Also excluded from the
27   Settlement Class are any Persons who otherwise satisfy the requirements for membership in the
     Settlement Class, but who exclude themselves by submitting a valid request for exclusion in
28   accordance with the requirements set forth in the Notice. Settlement Agreement, at ¶1.33.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT          Case No. CV 09-5473-RS (JSC)

firms and forensic investigators at an expense of more than $8 million, which resulted in the Audit Committee concluding that SunPower's senior management neither directed nor were aware of the accounting misconduct.  Defendants would further argue that the Audit Committee's conclusions were further verified and accepted by SunPower's outside auditing firm, which audited and certified SunPower's restated financial statements, and by the SEC, which formally closed its investigation into the matter after determining not to initiate any enforcement action.  Accordingly, Plaintiffs faced the risk that liability, and particularly the element of scienter, would be difficult to establish.  In addition, based on Plaintiffs' independent review of SunPower's publicly-filed financial statements, it was Plaintiffs' assessment that SunPower's cash position was diminishing. Defendants had represented during mediation that there was no insurance available to fund an eventual judgment or a settlement.  Thus, Lead Plaintiffs knew that, even if they were entirely successful, even after trial and appeals, they may actually recover substantially less than the amount obtained in this Settlement for the benefit of the Settlement Class.

Plaintiffs respectfully request that this Court enter the proposed Order Preliminarily Approving Settlement, Providing for Notice and Scheduling Settlement Hearing (the "Preliminary Approval Order") attached as Exhibit A-1 to the Settlement Agreement and submitted separately herewith for the Court's convenience.  The Preliminary Approval Order, among other things: (i) preliminarily approves the Settlement as being fair, just, reasonable and adequate to the Settlement Class, pending a final hearing on the Settlement; (ii) certifies the Settlement Class for settlement purposes; (iii) schedules a hearing (the "Fairness Hearing" or "Final Approval Hearing") to consider the fairness, reasonableness, and adequacy of the proposed Settlement, the Plan of Allocation of the Net Settlement Fund ("Plan of Allocation" or "Plan"), and Lead Counsel's application for an award of attorneys' fees and Litigation Expenses[3]; (iv) approves the forms and methods of disseminating notice to the Settlement Class, and directs that such notice be issued; (v) appoints the claims administrator recommended by Lead Counsel to implement the notice

---

[3] Lead Counsel includes Kaplan Fox & Kilsheimer LLP ("Kaplan Fox"), Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz"), and Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz").

procedures, administer the Settlement and assist with its implementation; (vi) establishes procedures and the deadline for Persons to request exclusion from the Settlement Class; (vii) establishes procedures and the deadline for Settlement Class Members to object to the terms of the Settlement, Plan of Allocation, or requested fees and Litigation Expenses; and (viii) establishes procedures and the deadline for Settlement Class Members to submit Claim Forms for payments from the Net Settlement Fund.

### A.   FACTUAL BACKGROUND

The allegations and claims in this Action are familiar to the Court, and Lead Plaintiffs therefore provide only a brief overview at this preliminary approval stage.  Additional details regarding Lead Plaintiffs' extensive prosecution of this case for over three years – including obtaining and reviewing over 2.5 million pages of documents from Defendants and third-parties, taking SunPower's deposition, filing motions to compel, opposing motions to dismiss and a motion for partial judgment on the pleadings, and moving for class certification – will be provided in connection with Lead Plaintiffs seeking final approval of the Settlement, in the event the Court grants preliminary approval such that notice of the proposed Settlement may be sent to potential Settlement Class Members, as requested herein.

The fundamental allegation in this case is that SunPower and the Individual Defendants issued seven consecutive quarters of false financial results, which, in general, overstated SunPower's earnings and margins and understated the Company's expenses. Specifically, Plaintiffs allege that Defendants made false and misleading statements concerning the Company's financial condition, cost reduction efforts, and the adequacy of SunPower's internal controls in press releases, investor conference calls, and in filings with the Securities and Exchange Commission ("SEC").[4]  In each quarter of 2008 and the first three quarters of 2009, SunPower materially overstated the Company's profitability by under-reporting SunPower's rising cost of goods sold, and by failing to make proper, timely adjustments to the Company's published reports. *Id*. SunPower's accounting misstatements grossly overstated income, gross margin, earnings per

---

[4] ¶¶8-15, 136-220. All "¶" cites refer to Lead Plaintiffs' First Amended Consolidated Class Action Complaint For Violations Of The Federal Securities Laws (the "Complaint"). [ECF No. 153.]

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT                Case No. CV 09-5473-RS (JSC)

share ("EPS"), and other important metrics in key quarters that analysts and the broader market viewed as critical to the Company's success. ¶¶8-20, 99-135.

Plaintiffs further allege that, as a result of SunPower's false financial statements and Defendants' additional misstatements concerning the Company's financial condition, the price of SunPower's Securities was artificially inflated during the Settlement Class Period. ¶¶6, 136-220. Members of the proposed Settlement Class, including Lead Plaintiffs, allegedly suffered damages when the artificial inflation was removed from the Securities prices as the truth began to be revealed when, after market close on November 16, 2009, SunPower disclosed that "based upon an internal review of its Philippines manufacturing operations" the Company discovered "unsubstantiated accounting entries" and that investors should no longer rely on SunPower's prior financial statements for 2008 and the first three quarters of 2009. ¶¶7, 115-35, 247, 252, 257. Following the announcement, the price of SunPower's Securities dropped between 14-20%. ¶¶7, 247-54, 257.

On March 19, 2010, SunPower filed its restatement with the SEC which revealed that the Company's previously reported financial results had been misstated for fiscal year ended December 28, 2008, each quarterly period in 2008, and the first three quarters in fiscal year 2009, ended January 3, 2010 (the "Restatement"). ¶¶7, 202-46, 251.

**B.    PROCEDURAL HISTORY**

This Action was commenced on November 18, 2009. [ECF No. 1.] By Order dated March 5, 2010, the Court consolidated the related actions and appointed Lead Plaintiffs as the lead plaintiffs, and approved Kaplan Fox, Bernstein Litowitz and Kessler Topaz as Lead Counsel. *See* Order Granting Motion to Appoint Lead Plaintiff and Lead Counsel [ECF No. 70]. On May 28, 2010, Plaintiffs filed their Consolidated Complaint for Violation of Federal Securities Laws. *See* Consolidated Complaint [ECF No. 92]. The Consolidated Complaint asserted claims under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and under §15 of the Securities Act of 1933 (the "Securities Act"), on behalf of a class of all persons who purchased or otherwise acquired SunPower securities between April 17, 2008 and November 16, 2009, inclusive. The named defendants included

SunPower, the Individual Defendants, T.J. Rodgers, W. Steve Albrecht, Betsy S. Atkins, Patrick Wood, III, Uwe-Ernst Bufe, Deutsche Bank Securities Inc., Credit Suisse Securities (USA) LLC, Lazard Capital Markets LLC, Barclays Capital Inc., Piper Jaffray & Co., Wachovia Capital Markets, LLC (n/k/a Wells Fargo Securities, LLC), and SL Hare Capital, Inc.

On August 5, 2010, motions to dismiss were filed on behalf of all named defendants on the ground that the Consolidated Complaint failed to state a claim upon which relief could be granted. [ECF Nos. 112-28.]  On September 22, 2010, Plaintiffs filed their opposition.  [ECF No. 136.]  On March 1, 2011, the Court dismissed the Consolidated Complaint with leave to amend.  [ECF No. 149.]

On April 18, 2011, Plaintiffs filed the operative complaint, the First Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint").  [ECF No. 153.]   The Complaint asserted the same claims against the same defendants as the Consolidated Complaint.   It also added new defendants, John B. Rodman and Mariano M. Trinidad, asserting Exchange Act claims against them.

Motions to dismiss were filed on behalf of all named defendants (*see* ECF Nos. 155-59, 162, 169-70) and, on December 19, 2011, the Court granted in part and denied in part Defendants' motion.  [ECF No. 178.]  The Court's Order dismissed all claims asserted against John B. Rodman, Mariano M. Trinidad, T.J. Rodgers, W. Steve Albrecht, Betsy S. Atkins, Patrick Wood, III, Uwe-Ernst Bufe, Deutsche Bank Securities Inc., Credit Suisse Securities (USA) LLC, Lazard Capital Markets LLC, Barclays Capital Inc., Piper Jaffray & Co., Wachovia Capital Markets, LLC (n/k/a Wells Fargo Securities, LLC), and SL Hare Capital, Inc., with prejudice.   The Court's Order sustained the remaining claims.

Defendants answered the Complaint on January 27, 2012 [ECF No. 182], and on March 5, 2012, the Court entered a Scheduling Order which set deadlines for, among other things, the class certification briefing and completion of discovery.  [ECF No. 190.]

Following substantial discovery as discussed below, on September 14, 2012, Defendants filed a motion for partial judgment on the pleadings with respect to certain statements alleged to be materially false and misleading in the Complaint.  [ECF Nos. 217-220.]  On October 19, 2012,

1    Lead Plaintiffs filed a Response to that motion, [ECF No. 230], and on November 9, 2012,

2    Defendants filed a Reply [ECF No. 238].

3         On September 28, 2012, Lead Plaintiffs filed a motion for class certification.    Both

4    Defendants' motion for partial judgment on the pleadings and Lead Plaintiff's class certification

5    motion were pending when the Settlement was reached.

6         The Court's December 19, 2011 Order denying in part Defendants' motion to dismiss the

7    Complaint lifted the mandatory discovery stay imposed pursuant to the Private Securities

8    Litigation Reform Act of 1995 ("PSLRA"), and Lead Plaintiffs immediately commenced

9    discovery.    Lead Plaintiffs' discovery efforts included, among other things: (1) serving and

10   responding to multiple document requests, interrogatories and requests for admissions; (2) issuing

11   document subpoenas to numerous third parties, including SunPower's outside auditors

12   PriceWaterhouseCoopers LLP; (3) negotiating a Stipulated Protective Order Governing

13   Confidentiality [ECF No. 197]; (4) engaging in multiple in-person and telephonic meet and confer

14   conferences with Defendants over a 10 month time period; (5) preparing a request for the issuance

15   of Letters Rogatory for deposition testimony and document discovery from relevant witnesses in

16   the Republic of the Philippines, including SunPower's own former accounting personnel and

17   former Philippines Finance Director Mariano M. Trinidad; (6) preparing and filing multiple

18   motions to compel [ECF Nos. 199, 202-16, 231-232]; (7) reviewing and analyzing documents

19   received from SunPower and non-parties; and (8) preparing for and taking the Rule 30(b)(6)

20   deposition of SunPower on a variety of topics relevant to the allegations of the Complaint.

21        From January 2012, through November 2012, the parties engaged in a comprehensive fact

22   discovery process.    In total, Plaintiffs reviewed more than 2.5 million pages of documents produced

23   by Defendants and subpoenaed third-parties.    On December 7, 2012, the parties reached an

24   agreement-in-principle to settle the case.

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT         Case No. CV 09-5473-RS (JSC)

1    C.    **SETTLEMENT NEGOTIATIONS**

2        Throughout this Action, the parties engaged in arm's length settlement discussions that

3    were facilitated by Jed D. Melnick, Esq., a well-regarded private mediator with JAMS, with

4    considerable knowledge and expertise in the field of federal securities law.[5]

5        Mediation discussions commenced on May 30, 2012, when counsel for Plaintiffs and

6    Defendants met with Mr. Melnick to lay out their initial factual and legal positions in the case and

7    decide on the framework for future mediation sessions.  Prior to this mediation session, Plaintiffs

8    and SunPower exchanged lengthy mediation statements on the salient factual and legal issues

9    expected to arise during the discussions.  During the full-day session, the parties each made liability

10   and damages presentations.  At the time, no merits-related depositions had taken place, Defendants'

11   document productions had not commenced, and Lead Plaintiffs' motion for class certification had

12   not been filed.    Although the first mediation meeting did not result in a settlement, it laid the

13   groundwork for the parties to continue settlement discussions while litigating the case.

14       Between June 2012 and December 7, 2012, counsel for the parties participated in telephonic

15   mediation updates, facilitated by Mr. Melnick.  During these discussions, the parties discussed

16   damages, the lack of meaningful insurance coverage and the Company's ability to satisfy any

17   judgment, among other things.  Ultimately, after extensive discovery had taken place (including

18   the production by Defendants and third-parties of over 2.5 million pages of documents and a

19   deposition of SunPower), and after Defendants filed a motion for partial judgment on the

20

21

22   ―――――――――――――――――

23   [5] Mr. Melnick works with JAMS, a private mediation practice. According to the JAMS website,
     Mr. Melnick, has been involved in the mediation and successful resolution of hundreds of complex
     disputes with an aggregate value in the billions of dollars. He has mediated over 750 disputes,
24   published articles on mediation, founded a nationally ranked dispute resolution journal and taught
     young mediators. Mr. Melnick is the managing partner for Weinstein Melnick LLC, working
25   alongside the Hon. Daniel Weinstein (Ret.), one of the nation's preeminent mediators of complex
     civil disputes.  In 2010, 2011 and 2012, Mr. Melnick was selected as a *Pennsylvania Super*
26   *Lawyers* "Rising Star," the only "Rising Star" in the Alternative Dispute Resolution category in
     Pennsylvania. He was also selected to the 2010 list of Pennsylvania "Lawyers on the Fast Track,"
27   a recognition given to 30 Pennsylvania Lawyers under the age of 40 by *Legal Intelligencer* and the
     *Pennsylvania Law Weekly*. http://www.jamsadr.com/melnick/.
28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT          Case No. CV 09-5473-RS (JSC)

1   pleadings and Lead Plaintiffs filed their motion for class certification, on December 7, 2012, the

2   parties reached an agreement-in-principle that led to this Settlement.

3         The entire process involved significant disputed issues, and even after an agreement-in-

4   principle had been reached, negotiations about specific terms of the settlement agreement continued.

5   **II.**    **THE PROPOSED SETTLEMENT**

6        **A.**    **Settlement Consideration**

7         The Settlement provides that SunPower will pay $19.7 million in cash, into an interest-

8   bearing escrow account for the benefit of the Settlement Class.   This Settlement consideration and

9   interest, after the deduction of attorneys' fees and Litigation Expenses awarded by the Court,

10  Notice and Administration Costs, and Taxes and related expenses (the "Net Settlement Fund"), will

11  be distributed among Settlement Class Members who submit timely valid Claim Forms

12  ("Authorized Claimants"), in accordance with the Plan of Allocation set forth in the Notice.

13        Plaintiffs believe that the proposed Settlement is an excellent recovery on the claims

14  asserted in this Action, and is in all respects fair, adequate, reasonable, and in the best interests of

15  the Settlement Class.

16       **B.**    **Plan Of Allocation**

17        Under the Plan of Allocation, Epiq Systems, Inc., an independent settlement and claims

18  administrator ("Claims Administrator'), selected by Plaintiffs for Court approval after a rigorous

19  competitive proposal process, will calculate each Authorized Claimant's claim amount based on the

20  information supplied in each Person's Claim Form.   The Net Settlement Fund will be allocated on a

21  *pro rata* basis based on the amount of each Authorized Claimant's claim amount as calculated by the Claims

22  Administrator under the Plan of Allocation.

23        The structure of the Plan, which is appended in full to the Notice, is comparable to plans of

24  allocation that have been used in numerous securities class actions.   The Plan allocates the Net

25  Settlement Fund based on Lead Counsels' estimate (after consultation with Plaintiffs' damage and

26  causation experts) of the amounts by which Plaintiffs allege the market prices of the SunPower

27  Securities were artificially inflated at various points during the Settlement Class Period, and takes

28  into consideration when an Authorized Claimant purchased his/her/its SunPower Securities and, if the

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT     Case No. CV 09-5473-RS (JSC)

claimant sold the Securities, when the Securities were sold.   Plaintiffs submit that the Plan is fair and reasonable and should be approved together with the Settlement at the Fairness Hearing.

## III.   ARGUMENT

### A.   The Court Should Grant Preliminary Approval Of The Proposed Settlement

Strong judicial policy favors settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *West v. Circle K Stores, Inc.*, No. S-04-0438 WBS GGH, 2006 WL 1652598, at *1 (E.D. Cal. June 13, 2006) ("*West*").  Settlements of complex cases greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of justice.

A motion seeking preliminary approval of a settlement agreement in a putative class action may be granted if, "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls with the range of possible approval ...."  *In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (citing *Manual for Complex Litigation*, Second § 30.44 (1985)).[6]  Because some of the factors bearing on the propriety of a settlement cannot be assessed prior to the final approval hearing, "a full fairness analysis is unnecessary at this stage."  *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 665 (E.D. Cal. 2008).   Applying these standards, the Settlement should be preliminarily approved.[7]

### 1.   The Proposed Settlement Is The Product Of Good Faith, Arm's Length Negotiations Among Experienced Counsel Mediated By An Experienced Private Mediator

---

[6] *See also Fraley v. Facebook, Inc.,* No. CV-11-01726 RS, 2012 WL 6013427, at * 1 (N.D. Cal. Dec. 3, 2012) (granting preliminary approval after finding proposed settlement was non-collusive, had no obvious defects, and was within the range of possible settlement approval); *Satchell v. Federal Express Corp.*, Nos. C 03-2659 SI, C 03-2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (same).

[7] Plaintiffs will more fully address the reasonableness of the settlement in the final approval papers.

9

1    "The involvement of experienced class action counsel and the fact that the settlement

2    agreement was reached in arm's length negotiations, after relevant discovery had taken place

3    creates a presumption that the agreement is fair."    *Linney*, 1997 WL 450064, at *5.   The

4    procedural history of this Action, as summarized above, clearly reflects an adversarial and

5    contentious relationship among the parties.    This Action was filed more than three years ago, and

6    the parties have engaged in vigorous litigation since then, involving extensive motion practice by

7    the parties and comprehensive fact discovery.   The Settlement was reached only after a highly

8    contentious and burdensome process of analyzing the evidence and contesting pertinent legal

9    issues.

10        There were numerous issues in this Action that caused the parties to have different views of

11    the settlement value of this case.    These issues included: (1) whether certain of Defendants'

12    statements and alleged omissions were materially false or misleading, or otherwise actionable under

13    the federal securities laws; (2) whether Defendants' allegedly actionable statements and omissions

14    were made with knowledge or deliberate recklessness; (3) the amounts by which the prices of

15    SunPower Securities were allegedly artificially inflated (if at all) during the Settlement Class

16    Period, and the appropriate economic models for determining those amounts; (4) the extent to

17    which Defendants' allegedly actionable statements or omissions influenced (if at all) the prices of

18    the SunPower Securities during the Settlement Class Period; (5) whether and the extent to which the

19    adverse material facts allegedly omitted by Defendants actually were publicly disclosed; (6)

20    whether the class would have been certified; and (7) whether SunPower Securities, including

21    SunPower's debentures, traded in an efficient market during the Settlement Class Period.

22        The mediation process between the parties also demonstrates that the Settlement was hard-

23    fought and negotiated at arm's-length.   The mediation session was facilitated by an experienced

24    mediator.   As courts in this district and elsewhere have found, "[t]he assistance of an experienced

25    mediator in the settlement process confirms that the settlement is non-collusive." *Satchell*, 2007

26    WL 1114010, at *4; *see also In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 CIV. 6689

27    (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was

28    reached after exhaustive arm's-length negotiations, with the assistance of a private mediator

10

experienced in complex litigation, is further proof that it is fair and reasonable") (citations omitted).

Finally, the fact that the initial mediation session was unsuccessful, and required further negotiations, supports an inference that the Settlement was the product of arm's-length negotiations. *See, e.g., Hicks v. Stanley,* No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature.") (citation omitted).

During the mediation session and follow-up, the parties fully explored the strengths and weaknesses of their respective claims and defenses, as well as the benefits of settlement. Negotiations focused on the highly complex and heavily disputed issues of whether SunPower or any of the Individual Defendants acted with the requisite scienter with respect to any of SunPower's restated financial results and the proper measure of damages, if any. Throughout this process, Lead Plaintiffs were actively involved and informed of the negotiations.

Courts have given considerable weight to the opinion of experienced and informed counsel who support settlement.   In deciding whether to approve a proposed settlement of a class action, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted).   In *Omnivision*, the court held that the recommendation of counsel weighed in favor of settlement given their familiarity with the dispute and their significant experience in securities litigation.   *Id.; see also Int'l Brotherhood of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.,* No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *7 (C.D. Cal. July 21, 2008).   Lead Counsel likewise has a thorough understanding of the merits of the Action and extensive experience in securities litigation.   Lead Counsels' (and Plaintiffs') belief in the fairness and reasonableness of this Settlement warrants a presumption of reasonableness.

     **2.**       **The Proposed Settlement Has No Obvious Deficiencies And Does Not Improperly Grant Preferential Treatment To <u>Class Representatives Or Segments Of The Settlement Class</u>**

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT        Case No. CV 09-5473-RS (JSC)

1    The Settlement "has no obvious deficiencies [and] does not improperly grant preferential

2    treatment to class representatives or segments of the class[.]"    *Young v. Polo Retail, LLC,* No. C-

3    02-4546 VRW, 2006 WL 3050861, at *5 (N.D. Cal. Oct. 25, 2006) (citation omitted).    As

4    discussed above, the $19,700,000 recovery constitutes a significant and certain benefit for

5    Settlement Class Members.  Plaintiffs will receive a distribution from the Net Settlement Fund in

6    accordance with the Plan of Allocation in the same manner as distributions to all other Settlement

7    Class Members, and may also seek reimbursement of their costs and expenses in service as Lead

8    Plaintiffs for the benefit of the Settlement Class, as authorized by the PSLRA.    Subject to the

9    approval of the Court, and pursuant to approval of the Lead Plaintiffs**,** Lead Counsel expect to seek

10   attorneys' fees of 25% of the Settlement Fund net of Court-approved Litigation Expenses of Lead

11   Counsel, and reimbursement of Litigation Expenses totaling no more than $900,000.

12   In sum, nothing in the course of the settlement negotiations or the terms of the Settlement

13   itself discloses grounds to doubt its fairness.    Rather, the substantial recovery to the Settlement

14   Class, the arm's-length nature of the negotiations, and the participation of sophisticated counsel

15   throughout the Action support a finding that the proposed Settlement is sufficiently fair, reasonable,

16   and adequate to justify notice to the Settlement Class and a hearing on final approval.    Lead

17   Plaintiffs respectfully request preliminary approval of the Settlement.

18           **3.      The Proposed Settlement Falls Well Within**
                       **The Range Of Reasonableness And Warrants**
19                     **Notice And A Hearing On Final Approval**

20   "[A]t this preliminary approval stage, the court need only 'determine whether the proposed

21   settlement is within the range of possible approval.'"    *West*, 2006 WL 1652598, at *11 (citation

22   omitted).    Lead Plaintiffs believe that the proposed $19,700,000 Settlement is a good result for the

23   Settlement Class in light of all of the risks of continued litigation, and falls well within a range of

24   what is considered fair, reasonable, and adequate.

25   In considering whether to enter into the Settlement, Plaintiffs, represented by counsel

26   experienced in securities litigation, took into particular account the risks inherent in establishing all

27   of the elements of their claims under the federal securities laws, including in particular

28   Defendants' scienter, and recoverable damages, as well as the expense and likely duration of the

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT                Case No. CV 09-5473-RS (JSC)

Action.   *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (citing risk, expense, complexity, and likely duration of further litigation as factors supporting final approval of settlement); *see also In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007) ("Based on the risk of summary judgment, which defendants had filed before settlement, . . . and the anticipated expense and complexity of further litigation, the court cannot say that the proposed settlement is obviously deficient or is not 'within the range of possible approval.'") (citation omitted).

Plaintiffs agreed to settle this Action on these terms based on its careful investigation and evaluation of the facts and law relating to the allegations in the Complaint and consideration of the facts noted and views expressed by the mediator, Jed Melnick, and Defendants during the settlement negotiations.   *See Louie v. Kaiser Found. Health Plan, Inc.*, No. 08-cv-0795 IEG RBB, 2008 WL 4473183, at *6 (S.D. Cal. Oct. 6, 2008) ("Class counsels' extensive investigation, discovery, and research weighs in favor of preliminary settlement approval."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173 (S.D. Cal. 2007) ("There is no evidence to suggest that the settlement amount is not fair and reasonable.  Plaintiffs contend that the Parties engaged in lengthy settlement discussions before two retired judges. Accordingly, the settlement is presumed to be fair.").

In particular, Plaintiffs were aware that Defendants would argue that the accounting misconduct occurred entirely within SunPower's Philippines manufacturing subsidiary, by Philippine accountants at the direction of Philippine personnel, and was unknown to SunPower's top management located in the United States.  Defendants would argue that when the Company first became aware of the "unsubstantiated" journal entries at its Philippines subsidiary, SunPower's Audit Committee commissioned an independent investigation involving outside law firms and forensic investigators at an expense of more than $8 million, which resulted in the Audit Committee concluding that SunPower's senior management neither directed nor were aware of the accounting misconduct.  Defendants would further argue that the Audit Committee's conclusions were further verified and accepted by SunPower's outside auditing firm, which audited and certified SunPower's restated financial statements, and by the SEC, which formally closed its

13

investigation into the matter after determining not to initiate any enforcement action.  Accordingly, Plaintiffs faced the significant risk that liability, and particularly the element of scienter, would be difficult to establish.  In addition, based on Plaintiffs' independent review of SunPower's publicly-filed financial statements, it was Plaintiffs' assessment that SunPower's cash position was diminishing.  Defendants had represented during mediation that there was no insurance available to fund an eventual judgment or a settlement.  Thus, Plaintiffs knew that, even if they were entirely successful, even after trial and appeals, they may actually recover substantially less than the amount obtained in this Settlement for the benefit of the Settlement Class.

Plaintiffs also took into consideration the immediate cash benefits to Settlement Class Members, the desirability of providing certain and effective relief to Settlement Class Members now, the attendant risks of continuing with complex litigation, and the uncertainty inherent in establishing Defendants' liability.  Indeed, the risk, expense, complexity and likely duration of further litigation, strongly favor settlement because further litigation would entail substantial risk to the Settlement Class of recovering nothing.[8]  Any further litigation would likely be complex, expensive and a favorable outcome improbable.  Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement.

Regardless of who would be successful at trial, there is no doubt that both sides would have to present dense and nuanced information, including in the context of a "battle of the experts," accounting, causation, damages calculations, and securities disclosure requirements.  Additionally, preparing this case for trial would require Plaintiffs to conduct substantial discovery abroad in the Philippines at great expense and under foreign procedures.  The results of the trial would almost certainly not end the Action, as one side would likely appeal, and it is quite possible that both sides would do so in the event that the jury found for the Settlement Class but substantially reduced the

---

[8] These expenses include but were not limited to the expense of conducting discovery, including deposition discovery, in the Philippines through the Letters Rogatory process assuming that Plaintiffs were able to successfully locate and obtain discovery in a timely manner from all of the potential witnesses Plaintiffs had identified in the Philippines.

1    damages sought.  Absent a settlement, Settlement Class Members would have to wait substantially

2    longer before they obtained any relief, even assuming Plaintiffs were successful and overcame

3    every obstacle.

4         Plaintiffs, having considered the myriad risks of continued litigation, respectfully submit

5    that if the Court preliminarily approves the Settlement, the Court ultimately will find that the

6    Settlement is fair, reasonable, and adequate and is deserving of final approval.

7    **B.    The Proposed Settlement Class Meets The**
     **Prerequisites For Class Certification Under Rule 23**

8

9         The Ninth Circuit has long recognized that class actions may be certified for the purpose of

10   settlement only. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998).  Rule 23(a) sets forth

11   the following four prerequisites to class certification: (i) numerosity, (ii) commonality, (iii)

12   typicality, and (iv) adequacy of representation. In addition, the class must meet one of the three

13   requirements of Rule 23(b).  *See* Fed. R. Civ. P. 23; *In re UTStarcom, Inc. Sec. Litig.*, No. C006-

14   4908, 2010 WL 1945737, at *3 (N.D. Cal. May 12, 2010) (citing *Hanlon,* 150 F.3d at 1019).

15   Lead Plaintiffs filed a motion for class certification on September 28, 2012.[9]  The proposed

16   Settlement Class is defined in the Stipulation the same as in the class certification motion:  All

17   Persons who purchased or otherwise acquired SunPower's Class A and/or Class B common stock

18   and/or 4.75% Senior Convertible Debentures between April 17, 2008, and November 16, 2009,

19   inclusive.[10]   Excluded from the Settlement Class are Defendants, the officers and directors of

20   SunPower, members of their immediate families and their legal representatives, heirs, successors

21   or assigns, and any entity in which Defendants have or had a controlling interest.  Also excluded

22   from the Settlement Class are any Persons who otherwise satisfy the requirements for membership

23

24

25   [9] [ECF Nos. 226-228.] The Settlement was reached before Defendants filed any response to that

26   motion.

27   [10] As set forth above, all references to "SunPower's Securities" refer to SunPower's Class A
     and/or Class B common stock, traded on the NASDAQ under the tickers "SPWRA" and

28   "SPWRB," respectively, and/or 4.75% Senior Convertible Debentures. Settlement Agreement, at
     ¶1.31.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT          Case No. CV 09-5473-RS (JSC)

1  in the Settlement Class, but who exclude themselves by submitting a valid request for exclusion in

2  accordance with the requirements set forth in the Notice.

3  Courts routinely endorse the use of the class action device to resolve claims brought under

4  the federal securities laws. *See*, *e.g.*, *Hodges v. Akeena Solar Inc.*, 274 F.R.D 259, 266 (N.D. Cal.

5  2011); *In re Cooper Companies Inc. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009). "[C]lass

6  actions commonly arise in securities fraud cases as the claims of separate investors are often too

7  small to justify individual lawsuits, making class actions the only efficient deterrent against

8  securities fraud. Accordingly, the Ninth Circuit and courts in this district hold a liberal view of

9  class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53

10  (N.D. Cal. 1991) (citations omitted); *see also In re Seagate Tech. II Sec. Litig.*, 843 F. Supp. 1341,

11  1350 (N.D. Cal. 1994) (same); *Cooper*, 254 F.R.D. at 642 ("The availability of the class action to

12  redress such frauds has been consistently upheld, in large part because of the substantial role that

13  the deterrent effect of class actions plays in accomplishing the objectives of the securities laws.")

14  (quoting *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir. 1975)). This Action is no exception, and

15  Lead Plaintiffs submit that the proposed Settlement Class satisfies each of the requirements of

16  Rules 23(a) and 23(b)(3).

17  ### 1.  <u>Numerosity</u>

18  Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is

19  impracticable. The Ninth Circuit has stated that "'impracticability' does not mean 'impossibility,'

20  but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm*

21  *Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). Indeed,

22  classes consisting of 25 members have been held to be large enough to justify certification. *See*

23  *Perez-Funez v. Dist. Director, Immigration & Naturalization Serv.*, 611 F. Supp. 990, 995 (C.D.

24  Cal. 1984); *see also Welling v. Alexy,* 155 F.R.D. 654, 656 (N.D. Cal. 1994) (no set number cut-off

25  for numerosity). Additionally, the exact size of the class need not be known so long as general

26  knowledge and common sense indicate that the class is large. *Id.; see also Schwartz v. Harp,* 108

27  F.R.D. 279, 281-282 (C.D. Cal. 1985) ("A failure to state the exact number in the proposed class

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT          Case No. CV 09-5473-RS (JSC)

1    does not defeat class certification, and plaintiff's allegations plainly suffice to meet the numerosity

2    requirement of Rule 23.") (citations omitted).

3        Here, SunPower's Class A and Class B shares traded on the NASDAQ, with more than

4    34 million and 42 million shares, respectively, of common stock outstanding during the Settlement

5    Class Period. *See* Declaration of Jane Nettesheim, Exs. 5A, 5B. [ECF No. 226-2 at pps. 82-86.]

6    Accordingly, the proposed Settlement Class consists of thousands of investors who purchased

7    SunPower Securities during the Settlement Class Period. *See also Akeena Solar*, 274 F.R.D. at

8    266 (citing *Sullivan v. Chase Inv. Servs., Inc.*, 79 F.R.D. 246, 257 (N.D. Cal. 1978)).  A class of

9    this size is sufficiently numerous to make individual joinder impracticable. *See UTStarcom*, 2010

10    WL 1945737, at \*4; *Yamner v. Boich,* No. C-92-20597 RPA*,* 1994 WL 514035, at \*3 (N.D. Cal.

11    Sept. 15, 1994). Thus, the numerosity element is satisfied.

12        **2.    Commonality**

13        Rule 23(a)(2) is satisfied where the proposed class representatives share at least one

14    question of fact or law with the claims of the prospective class. *Wehner v. Syntex Corp.,* 117

15    F.R.D. 641, 644 (N.D. Cal. 1987).  Further, commonality exists even if there are varying fact

16    situations among individual members of the class so long as the claims of the plaintiffs and other

17    class members are based on the same legal or remedial theory. *Blackie*, 524 F.2d at 902.

18        The common questions of fact and law include: (i) whether Defendants violated the federal

19    securities laws; (ii) whether Defendants misstated and/or omitted to state material facts in public

20    statements and filings with the SEC; (iii) whether Defendants participated directly or indirectly in

21    the course of misconduct; (iv) whether Defendants knew or recklessly disregarded that their

22    statements were false and misleading; (v) whether the price of SunPower Securities was artificially

23    inflated; and (vi) the extent of damage sustained by Settlement Class Members, and the appropriate

24    measure of damages.[11]

25

26    [11] ¶262; *see also UTStarcom*, 2010 WL 1945737, at \*4 (finding common questions of law and fact
as to whether "Defendants engaged in a fraudulent scheme and omitted or misrepresented material

27    facts," whether the "publicly traded securities were artificially inflated," and whether
"Defendants'. . . omissions caused class members to suffer economic losses").   Here, there are

28    common questions of law and fact because Defendants' alleged misconduct affected all Settlement

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT          Case No. CV 09-5473-RS (JSC)

Securities actions containing common questions such as the ones listed above repeatedly have been held to be prime candidates for class certification.   Additionally, because the core complaint of all Settlement Class Members is that they purchased shares of SunPower Securities at artificially inflated prices, the commonality requirement of Rule 23(a)(2) is satisfied.

### 3.   Typicality

The typicality requirement of Rule 23(a)(3) is satisfied when the claims or defenses of the party or parties representing the class are typical of the claims or defenses of the other class members.  *See Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231 (1997) (common-issues test readily met in securities cases).   However, differences in the amount of damage, the size or manner of purchase, the nature of the purchaser, and the date of purchase are insufficient to defeat class certification.  *See Alfus v. Pyramid Tech. Corp.,* 764 F. Supp. 598, 606 (N.D. Cal. 1991).   In other words, typicality exists "even where factual distinctions exist between the claims of the named representative and the other class members."  *Danis v. USN Commc'n, Inc.,* 189 F.R.D. 391, 395-97 (N.D. Ill. 1999); *see also West*, 2006 WL 1652598, at *5.

Here, the claims of Lead Plaintiffs arise from the same events or course of conduct that give rise to claims of other Settlement Class Members, and the claims asserted are based on the same legal theory.  *See UTStarcom*, 2010 WL 1945737, at *5 (explaining that the test for typicality is "whether 'other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct'") (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Indeed, this case satisfies the Rule 23(a)(3) typicality requirement because the claims of all Settlement Class Members derive from the same legal theories and allege the same set of operative facts. Lead Plaintiffs, like the other Settlement Class Members, purchased

Class Members in the same manner; *i.e.*, Defendants' false and misleading statements and omissions artificially inflated the price of SunPower's Securities.  *See, e.g., In re VeriSign, Inc. Sec. Litig.,* No. C 02-02270-JW, 2005 U.S. Dist LEXIS 10438, at *32 (N.D. Cal. Jan. 13, 2005) ("Here, the issues common to the class – namely, the nature and extent of Defendants' alleged misrepresentations and the like – are predominant."); *In re Emulex Corp., Sec. Litig.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002).

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT                Case No. CV 09-5473-RS (JSC)

1  SunPower Securities during the Settlement Class Period at artificially inflated prices and suffered

2  damages when Defendants' misstatements and fraudulent conduct were disclosed to the market,

3  causing the prices of SunPower's Securities to decline.  ¶¶7, 136-220, 247-54.  All Members of the

4  Settlement Class were victims of this same common course of fraudulent conduct throughout the

5  Settlement Class Period, and sustained damages as a result.  *Id.*

6      Further, the proof that Lead Plaintiffs would present to establish their claims also would

7  prove the claims of the rest of the Settlement Class.  Additionally, Lead Plaintiffs are not subject to

8  any unique defenses that could make them atypical members of the prospective Settlement Class.

9  Therefore, Lead Counsel respectfully submit that this Court should find that Lead Plaintiffs'

10  claims are typical of the claims of the Settlement Class.  *See Akeena Solar*, 274 F.R.D. at 266-67;

11  *Cooper*, 254 F.R.D. at 635-36.

12      **4.    Adequacy**

13      The representative parties must satisfy Rule 23(a)'s adequacy requirement by showing that

14  they will fairly and adequately protect the interests of the Settlement Class.   To satisfy this

15  requirement, the proposed class representative must be free of interests that are antagonistic to the

16  other members of the class, and counsel representing the class must be qualified, experienced and

17  capable of conducting the litigation.  *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507,

18  512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020.

19      As described above, Lead Plaintiffs have claims that are typical of and coextensive with

20  those of the Settlement Class.  Lead Plaintiffs, like all Settlement Class Members, purchased

21  SunPower Securities at artificially inflated prices as a result of Defendants' alleged materially

22  false and misleading statements and/or omissions.  Further, Lead Plaintiffs have retained counsel

23  highly experienced in securities class action litigation and who have successfully prosecuted many

24  securities and other complex class actions throughout the United States.[12]  Thus, Lead Plaintiffs

25

26  _____

[12]  *See* Exhibits E-G to the Declaration of Ramzi Abadou in Support of the Motion of the
27  Institutional Investor Funds for (i) Consolidation of Related Actions; (ii) Appointment as Lead
Plaintiff; and (iii) Approval of Their Selection of Lead Counsel, dated January 19, 2010 [ECF No.
28  32 (firm resumes)].

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT          Case No. CV 09-5473-RS (JSC)

are adequate representatives of the Settlement Class, and their counsel are qualified, experienced and capable of prosecuting this Action, in satisfaction of Rule 23(a)(4).

**5.   Common Questions Of Law Predominate And A Class Action Is the Superior Method Of Adjudication**

In addition to meeting the prerequisites of Rule 23(a), this case also satisfies Rule 23(b)(3), which requires that the proposed class representative establish that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods of adjudication. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 525 (N.D. Cal. 2009); *Vathana v. EverBank*, No. C 09–02338 RS, 2010 WL 934219, at *2 (N.D. Cal. Mar. 15, 2010) (noting that "subsection [23(b)(3)] encompasses 'those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results'") (quoting Fed. R. Civ. P. 23 1966 advisory committee's note).

Common questions of law and fact predominate and a class action is clearly the superior method available to fairly and efficiently litigate this securities action.[13]   "[C]ommon issues need

---

[13] When certifying a class for settlement purposes only, the standards for satisfying the class certification element of "superiority" under Rule 23(b)(3) may be relaxed because the Court does not need to consider the difficulties of managing the class in any future litigation or at trial. *See, e.g., Ybarrondo v. NCO Fin. Sys., Inc.,* No. 05cv2057-L(JMA), 2009 WL 3612864, at *7 n.3 (S.D. Cal. Oct. 28, 2009); *Murillo v. Pac. Gas & Elec. Co.,* 266 F.R.D. 468, 477 (E.D. Cal. 2010). Indeed, courts have certified class actions for settlement purposes even where certification was or likely would have been denied for litigation purposes. *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 116 & n.308 (S.D.N.Y. 2009) (granting preliminary approval of a settlement class that included § 11 claimants who had been excluded from the litigation class on grounds of "predominance") (citing *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 194-95 (S.D.N.Y. 2005) (reasoning that the "predominance" and "manageability" concerns under Rule 23(b)(3) were intertwined and "because the litigation was no longer going to trial, manageability was no longer an issue, and the 'predominance defect [] no longer fatal'")); *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 557-58 (N.D. Ga. 2007) (certifying a settlement class in antitrust case despite noting serious questions about whether a litigation class could be certified; finding "that the fact of settlement is relevant to the decision to certify a class" and that "Courts have, thus, certified classes at the settlement stage noting that such a certification does not present the same problems that certification of a litigation class proposing the same class definition would present"); *O'Keefe v. Mercedes-Benz USA, LLC,* 214 F.R.D. 266, 292-93 (E.D. Pa. 2003) (certifying a

1    only predominate, not outnumber individual issues." *In re Inter-Op Hip Prosthesis Liab. Litig.,*

2    204 F.R.D. 330, 345 (N.D. Ohio 2001).  Further, the superiority of class actions in large securities

3    cases is well recognized.  *See Amchem Prods.,* 521 U.S. at 625 (finding common questions

4    predominated in securities class action certified for settlement).

5          As discussed above, there are a number of common questions of law and fact that would

6    warrant class certification of this matter.  These questions clearly predominate over individual

7    questions because Defendants' alleged conduct affected all Settlement Class Members in the same

8    manner.  *See, e.g.*, *Cooper*, 254 F.R.D. at 632 ("The common questions of whether

9    misrepresentations were made and whether Defendants had the requisite scienter predominate over

10   any individual questions of reliance and damages.").  Indeed, issues relating to Defendants'

11   liability are common to all Members of the Settlement Class.  *Id.*; *see also LDK Solar*, 255 F.R.D.

12   at 530; *UTStarcom*, 2010 WL 1945737, at *9 (same); *Emulex*, 210 F.R.D. at 721 ("The

13   predominant questions of law or fact at issue in this case are the alleged misrepresentation

14   Defendants made during the Class Period and are common to the class.").

15         Falsity, materiality, scienter, and loss causation are issues that "affect investors alike," and

16   whose proof "can be made on a class-wide basis" because they "affect[] investors in common."

17   *Schleicher v. Wendt*, 618 F.3d 679, 682, 685, 687 (7th Cir. 2010).  Likewise, here, SunPower's

18   misstatements during the Settlement Class Period "affect[ed] [all] investors alike" and proof of

19   falsity, materiality, scienter, and causation will "be made on a class-wide basis." *Schleicher*, 618

20

21

22

---

23   settlement class bringing state law fraud claims; recognizing that a "manageability problem" was
     rendered moot by the settlement, and thus was not a bar to class certification in the settlement
     context); *Ramirez v. DeCoster*, 203 F.R.D. 30, 36-37 (D. Me. 2001) (certifying a settlement class

24   despite having previously ruled that predominance requirement was not met; the settlement context
     mooted the court's concerns that calculation of individual damages would overwhelm common

25   issues in the litigation); *In re Diet Drugs,* Nos. 1203, 99-20593, 2000 WL 1222042, at *43 (E.D.

26   Pa. Aug. 28, 2000) ("[W]hen taking the settlement into consideration for purposes of determining
     class certification, individual issues which are normally present in personal injury litigation

27   become irrelevant, allowing the common issues to predominate.").

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT          Case No. CV 09-5473-RS (JSC)

1   F.3d at 685, 687; *Cooper*, 254 F.R.D. at 641.   As a result, common questions of law and fact

2   predominate.

3   In light of the foregoing, all of the requirements of Rule 23(a) and (b) are satisfied, and

4   there are no issues that would prevent the Court from certifying this Settlement Class for

5   settlement purposes, appointing Lead Plaintiffs as class representatives, and appointing Lead

6   Counsel as counsel for the Settlement Class.  *See, e.g.*, *Wahl v. American Security Ins. Co.*, No.

7   C08-00555-RS, 2011 U.S. Dist. LEXIS 59559, at *5-6 (N.D. Cal. Jun. 2, 2011) (class certified for

8   settlement purposes); *Gittin v. KCI USA, Inc.*, No 09-CV-05843 RS, 2011 WL 1467360, at *1

9   (N.D. Cal. Apr. 12, 2011) (same).

10   **C.    The Court Should Approve The Form Of Notice**
          **And Plan For Providing Notice To The Settlement Class**

11

12   The Court should approve the form and content of the proposed Notice and Summary

13   Notice.   *See* Settlement Agreement, Exs. A-1 and A-3.    The Notice is written in plain language

14   and features a question-and-answer format that clearly sets out the relevant information and

15   answers most questions Settlement Class Members will have.    Consistent with Rules 23(c)(2)(B)

16   and 23(e)(1), the Notice objectively and neutrally apprises all Settlement Class Members of (among

17   many other disclosures) the nature of the Action, the definition of the Settlement Class, the claims

18   and issues, that the Court will exclude from the Settlement Class any Settlement Class Member who

19   requests exclusion (and sets forth the procedures and deadlines for doing so), and the binding effect

20   of a class judgment on Settlement Class Members under Rule 23(c)(3)(B).

21   With respect to items relating to the Settlement, the Notice also satisfies the separate

22   disclosure requirements imposed by the PSLRA.    It states the amount of the settlement proposed

23   to be distributed to the parties; provides a statement from each party concerning the issues about

24   which the parties disagree; states the amount of attorney's fees and Litigation Expenses that Lead

25   Counsel will seek; provides the names, addresses, and telephone numbers of Lead Counsel, who

26   will be available to answer questions from Settlement Class Members; and provides a brief

27   statement explaining the reasons why the parties are proposing the Settlement.   *See* 15 U.S.C. §

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT         Case No. CV 09-5473-RS (JSC)

78u-4(a)(7); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 258 (D.N.H. 2007) (discussing adequacy of notice and PSLRA disclosure requirements).

Additionally, the Notice discloses the date, time, and location of the Fairness Hearing and the procedures and deadlines for the submission of Claim Forms and objections to any aspect of the Settlement, Plan of Allocation, or attorney's fees and Litigation Expenses to be sought by Lead Counsel.   These disclosures are complete and should be approved by the Court.   *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 175 (E.D. Pa. 2000) (approving notice that stated the settlement terms and plan of allocation, estimated potential recovery at trial, revealed maximum request for attorney's fees and identified contact information of relevant attorneys).

Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule  23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).   Similarly, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement, voluntary dismissal, or compromise.   Fed. R. Civ. P. 23(e)(1).   The proposed notice program, which is set forth in the Preliminary Approval Order submitted herewith, readily meets these standards.

Epiq Systems, Inc., an experienced and diligent settlement and claims administrator (the "Claims Administrator"), will cause the Summary Notice to be published once in the *Investors' Business Daily* and transmitted over the *PR Newswire*, a national business-oriented wire service. SunPower will provide contact information of potential Settlement Class Members to the Claims Administrator for the purpose of identifying and giving notice to the Settlement Class.   The Claims Administrator will then use reasonable efforts to give notice to brokerage firms and other Persons who purchased or otherwise acquired SunPower Securities during the Settlement Class Period as record owners but not as beneficial owners.   These nominee purchasers will either forward the Notice or provide the names and addresses of the beneficial owners to the Claims Administrator, which will then promptly send the Notice, including the Plan of Allocation and Claim Form, by first class mail to such identified beneficial owners.

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT          Case No. CV 09-5473-RS (JSC)

1   The proposed notice program detailed above fulfills the requirements of due process

2   because the proposed Notice alerts and informs those Members of the Settlement Class who can be

3   identified through reasonable efforts of all of the information set forth above. *See In re Cabletron*

4   *Sys., Inc. Sec. Litig.*, 239 F.R.D. 30, 35-36 (D.N.H. 2006) (approving notice program that

5   distributed notice packets to individual investors and nominees and published summary notice in

6   national newspaper and wire services).

7   In addition, the Summary Notice to be published in *Investor's Business Daily* and

8   transmitted over the *PR Newswire* provides an abbreviated but informative description of the

9   Action and the proposed Settlement, and also explains how to obtain the more detailed Notice.

10  Moreover, courts routinely find that comparable notice programs meet the requirements of due

11  process and Rule 23. *See, e.g., In re Portal Software,* 2007 WL 1991529, at *7 (holding that

12  "notice by mail and publication is the 'best notice practicable under the circumstances,' as

13  mandated by FRCP 23(c)(2)(B)"); *In re Sorbates Direct Purchaser Antitrust Litig.,* Nos. C 98-

14  4886MMC et al., 2002 WL 31655191, at *1 (N.D. Cal. Nov. 15, 2002); *see also West*, 2006 WL

15  1652598, at *11 (settlement notice that explains to class members what their options are was more

16  than adequate).

17  In connection with preliminary approval of the Settlement, the Court must set a final

18  approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and

19  deadlines for submitting claims or for objecting to the Settlement.[14]   The parties respectfully

20  propose the following schedule for the Court's consideration, as agreed to by the parties and set

21  forth in the proposed Preliminary Approval Order:

22

23

24

25

26

27

28

---

[14] The blanks for certain deadlines currently contained in the agreed-upon form of Notice will be filled in once the Court sets those dates and prior to mailing to Settlement Class Members.

24

| **Event** | **Time for Compliance** |
|---|---|
| Deadline for mailing the Notice and Proof of Claim to Class Members ("Notice Date") | 10 business days after entry of Preliminary Approval Order |
| Deadline for publishing Summary Notice | 10 business days after Notice Date |
| Deadline for filing final approval papers | 35 calendar days prior to the Final Approval Hearing |
| Deadline for receipt of exclusion requests or objections | 21 calendar days prior to the Final Approval Hearing |
| Deadline for filing reply papers | 7 calendar days prior to the Final Approval Hearing |
| Final Approval Hearing | The week of May 27, 2013, or at the Court's earliest convenience thereafter |
| Deadline for submitting claim forms | 120 calendar days after the Notice Date |

IV.   **CONCLUSION**

For the foregoing reasons, Lead Plaintiffs respectfully request that this Court grant preliminary approval of the Settlement, certify the Settlement Class for settlement purposes, approve the forms and methods of notice, and issue the proposed Preliminary Approval Order attached as Exhibit A to the Settlement Agreement and submitted herewith.

Dated: February 1, 2013                    Respectfully Submitted,

BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP


_____/s/ David R. Stickney_____


DAVID R. STICKNEY
BENJAMIN GALDSTON
DAVID R. KAPLAN
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:    (858) 793-0323

1

*Attorneys for Lead Plaintiffs Arkansas Teacher
Retirement System, Första AP-fonden and
Danske Invest Management A/S*

2

3

KAPLAN FOX & KILSHEIMER LLP
LAURENCE D. KING
MARIO M. CHOI
350 Sansome Street, Suite 400
San Francisco, CA 94104
Tel:    (415) 772-4700
Fax:    (415) 772-4707

4

5

6

7

                   -and-

8

FREDERIC S. FOX (*pro hac vice*)
JOEL B. STRAUSS (*pro hac vice*)
CHRISTINE M. FOX (*pro hac vice*)
850 Third Avenue, 14th Floor
New York, NY 10022
Tel:    (212) 687-1980
Fax:    (212) 687-7714
ffox@kaplanfox.com
jstrauss@kaplanfox.com
cfox@kaplanfox.com

9

10

11

12

13

*Attorneys for Lead Plaintiffs Arkansas Teacher
Retirement System, Första AP-fonden and
Danske Invest Management A/S*

14

15

16

KESSLER TOPAZ MELTZER & CHECK LLP
RAMZI ABADOU
ELI R. GREENSTEIN
STACEY KAPLAN
ERIK D. PETERSON
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:    (415) 400-3000
Fax:    (415) 400-3001

17

18

19

20

21

                   -and-

22

DARREN J. CHECK
280 King of Prussia Road
Radnor, PA 19087
Tel:  (610) 667-7706
Fax:  (610) 667-7056
dcheck@ktmc.com

23

24

25

*Attorneys for Lead Plaintiffs Arkansas Teacher
Retirement System, Första AP-fonden and
Danske Invest Management A/S, and additional
Plaintiff Bobby J. Reynolds*

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT                    Case No. CV 09-5473-RS (JSC)