BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
DAVID R. STICKNEY (Bar No. 188574)
NIKI L. MENDOZA (Bar No. 214646)
BENJAMIN GALDSTON (Bar No. 211114)
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:    (858) 793-0323
davids@blbglaw.com
nikim@blbglaw.com
beng@blbglaw.com

KAPLAN FOX & KILSHEIMER LLP
LAURENCE D. KING (Bar No. 206423)
MARIO M. CHOI (Bar No. 243409)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Tel:    (415) 772-4700
Fax:    (415) 772-4707
lking@kaplanfox.com
mchoi@kaplanfox.com

*Attorneys for Lead Plaintiffs Arkansas Teacher
Retirement System, Första AP-fonden and
Danske Invest Management A/S*

KESSLER TOPAZ MELTZER
    & CHECK, LLP
RAMZI ABADOU  (Bar No. 222567)
ELI R. GREENSTEIN  (Bar No. 217945)
STACEY KAPLAN  (Bar No. 241989)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:    (415) 400-3000
Fax:    (415) 400-3001
rabadou@ktmc.com
egreenstein@ktmc.com
skaplan@ktmc.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE SUNPOWER SECURITIES LITIGATION | Case No. CV 09-5473-RS (JSC) **(Consolidated)** <br><br> **CLASS ACTION** <br><br> **LEAD PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Judge:       Hon. Richard Seeborg <br> Courtroom:  3, 17th Floor <br> Date:        July 3, 2013 <br> Time:        3:00 p.m. |

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND
REIMBURSEMENT OF LITIGATION EXPENSES
Case No. CV 09-5473-RS (JSC)

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on July 3, 2013, at 3:00 p.m. in Courtroom 3 of the United States District Court for the Northern District of California, United States Courthouse, 450 Golden Gate Ave., San Francisco, California, the Honorable Richard Seeborg, United States District Judge, presiding, Lead Counsel will and hereby do move for an Order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (i) awarding attorneys' fees in the amount of 25% of the Settlement amount, net of Court-approved Litigation Expenses; and (ii) reimbursement of $483,859.23 in out-of-pocket expenses that Lead Counsel incurred in connection with prosecuting and resolving the above-captioned action (the "Action"), plus interest earned on these amounts at the same rate and for the same period as earned by the Settlement Fund.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities set forth below; the accompanying Joint Declaration of Laurence D. King, David R. Stickney, and Ramzi Abadou in Support of Motion for Final Approval of Settlement and Plan of Allocation, and Motion for Approval of Attorneys' Fees and Reimbursement of Litigation Expenses and the exhibits thereto; the Stipulation of Settlement dated February 1, 2013 (the "Stipulation," ECF No. 248); the pleadings and records on file in this Action; and other such matters and argument as the Court may consider at the hearing of this motion.

The deadline for filing any objections to Lead Counsel's request for attorneys' fees and reimbursement of Litigation Expenses expires on June 12, 2013. Lead Counsel will address any objection that may be filed, if any, and also submit a proposed fee order, in connection with their Reply brief to be filed on or before June 26, 2013.

**STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))**

1.      Whether the requested attorneys' fees in the amount of 25% of the Settlement amount net of Court-approved Litigation Expenses, plus interest thereon, is fair and reasonable.

2.      Whether the requested reimbursement of Litigation Expenses, plus interest thereon, is fair and reasonable.

## <u>TABLE OF CONTENTS</u>

PAGE

TABLE OF AUTHORITIES ................................................................................................... ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I.  PRELIMINARY STATEMENT ........................................................................... 1

II.  HISTORY OF THE ACTION ............................................................................... 4

III.  THE REQUESTED ATTORNEYS' FEES ARE FAIR AND
REASONABLE ..................................................................................................... 5

    A.  A Reasonable Percentage Of The Fund Recovered Is An
Appropriate Approach To Awarding Attorneys' Fees In Common
Fund Cases ............................................................................................... 5

    B.  The Requested Fee Percentage Is Reasonable ....................................... 7

    C.  Analyses Under The Percentage Method, The Lodestar Method
And The *Vizcaino* Factors Supports Lead Counsel's Fee Request ........ 8

        1.  The Results Achieved When Viewed In Light Of The Risks
Of Litigation ................................................................................ 8

        2.  The Risks Of Litigation ............................................................... 8

        3.  The Skill Required And The Quality Of Representation .......... 11

        4.  The Contingent Nature Of The Fee And The Financial
Burden Carried By Lead Counsel .............................................. 13

        5.  Awards In Similar Cases ............................................................ 15

        6.  An Analysis Of Lead Counsel's Lodestar Supports The
Requested Fee Award ................................................................ 16

    D.  The Reaction Of The Settlement Class To Date Supports The Fee
Request ...................................................................................................... 17

IV.  LEAD COUNSEL ARE ENTITLED TO REIMBURSEMENT FOR
THEIR REASONABLE LITIGATION EXPENSES ............................................ 18

V.  CONCLUSION ..................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

CASES                                                                    PAGE(S)

*In re Activision Sec. Litig.*,
   723 F. Supp. 1373 (N.D. Cal. 1989) ........................................................6

*Anixter v. Home-Stake Prod. Co.*,
   77 F.3d 1215 (10th Cir. 1996) ..............................................................14

*In re Apple Computer Sec. Litig.*,
   1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ........................................14

*Atlas v. Accredited Home Lenders Holding Co.*,
   2009 WL 3698393 (S.D. Cal. Nov. 4, 2009) ........................................7

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ......................................14

*In re Blech Sec. Litig.*,
   2000 WL 661680 (S.D.N.Y. May 19, 2000) ........................................17

*Blum v. Stenson*,
   465 U.S. 886 (1984) ..............................................................................5

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ..............................................................................5

*In re Broadcom Corp. Sec. Litig.*,
   2005 U.S. Dist. LEXIS 41993 (C.D. Cal. Sept. 12, 2005) ..................16

*Buccellato v. AT&T Operations, Inc.*,
   2011 WL 3348055 (N.D. Cal. June 30, 2011) ....................................16

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ................................................................10

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) ................................................................9

*In re Copley Pharm., Inc.*,
   1 F. Supp. 2d 1407 (D. Wyo. 1998) ....................................................6

*In re CV Therapeutics, Inc., Sec. Litig.*,
   2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) ......................................15

*In re DJ Orthopedics, Inc. Sec. Litig.*,
   2004 WL 1445101 (S.D. Cal. Jun. 21, 2004) ......................................8

*Dura Pharm., Inc. v. Broudo,*
    544 U.S. 336 (2005) ................................................................5, 10

*In re Equity Funding Corp. of Am. Sec. Litig.,*
    438 F. Supp. 1303 (C.D. Cal. 1977) ................................................12

*Glass v. UBS Fin. Servs., Inc.,*
    331 Fed. Appx. 452 (9th Cir. 2009) (unpubl.) .........................6, 8, 15

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ........................................................15

*In re Heritage Bond Litig.,*
    2005 WL 1594389 (C.D. Cal. June 10, 2005) .....................8, 12, 15, 16

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.,*
    2012 WL 5199742 (D. Nev. Oct. 19, 2012) ..........................5, 13, 15

*In re Ikon Office Solutions, Inc. Sec. Litig.,*
    194 F.R.D. 166 (E.D. Pa. 2000) .......................................................9

*In re Immune Response Sec. Litig.,*
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................11, 13, 15, 17

*Jenson v. First Trust Corp.,*
    2008 U.S. Dist. LEXIS 45078 (C.D. Cal. June 9, 2008) ......................15

*Knight v. Red Door Salons, Inc.,*
    2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ....................................7, 17

*Mark v. Valley Ins. Co.,*
    2004 U.S. Dist. LEXIS 20602 (D. Or. 2004) ....................................11

*In re Media Vision Tech. Sec. Litig.,*
    913 F. Supp. 1362 (N.D. Cal. 1995) ................................................18

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (9th Cir. 2000) .........................................................15

*Mo. v. Jenkins,*
    491 U.S. 274 (1989) .......................................................................6

*In re Omnicom Grp., Inc. Sec. Litig.,*
    597 F.3d 501 (2d Cir. 2010) ..........................................................14

*In re OmniVision Techs., Inc.,*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................5

*Paul, Johnson, Alston & Hunt v. Graulty,*
    886 F.2d 268 (9th Cir. 1989) .........................................................5, 6

*In re Petroleum Prods. Antitrust Litig.*,
   109 F.3d 602 (9th Cir. 1997) ...................................................................16

*In re Portal Software, Inc. Sec. Litig.*,
   2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ....................................17

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005)......................................................................6

*Robbins v. Koger Properties, Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ............................................................14

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
   461 F. Supp. 2d 383 (D. Md. 2006)..........................................................6

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F. 2d 1301 (9th Cir. 1990) ............................................................6, 7

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)......................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)...................................................................................5

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ......................................................................6

*Trustees v. Greenough*,
   105 U.S. 527 (1881)...................................................................................5

*In re Veeco Instruments Sec. Litig.*,
   2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007)........................................14

*In re Veritas Software Corp. Sec. Litig.*,
   2005 WL 3096079 (N.D. Cal. Nov. 15, 2005) .....................................16

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) .......................................................passim

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) .........................................................passim

*West v. Circle K Stores, Inc.*,
   2006 U.S. Dist. LEXIS 76558 (E.D. Cal. Oct. 20, 2006) ..................7, 16

*In re WorldCom, Inc. Sec. Litig.*,
   2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004)..........................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

Due to their considerable efforts over the past 3-plus years, Court-appointed lead counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLB&G"), Kaplan Fox & Kilsheimer, LLP ("Kaplan Fox"), and Kessler Topaz Meltzer & Check, LLP ("KTMC") (collectively, "Lead Counsel"), have succeeded in obtaining a Settlement for $19.7 million in cash ("Settlement Amount") for the benefit of the Settlement Class.[1]  Lead Counsel, with the approval of the Court-appointed lead plaintiffs Arkansas Teacher Retirement System, Första AP-fonden, and Danske Invest Management A/S ("Lead Plaintiffs"), respectfully submit this Memorandum of Points and Authorities in support of their motion for an award of attorneys' fees and Litigation Expenses. In consideration of Lead Counsel's efforts and the recovery obtained for the Settlement Class in light of the significant risks discussed herein, Lead Counsel respectfully move the Court for: (i) an award of attorneys' fees in the amount of 25% of the Settlement Amount, net of Court-approved Litigation Expenses, plus interest, and (ii) reimbursement of Litigation Expenses reasonably and necessarily incurred by Lead Counsel in prosecuting and resolving the Action in the amount of $483,859.23, plus interest.

## I.    PRELIMINARY STATEMENT

As set forth below and in the accompanying Joint Declaration of Laurence D. King, David R. Stickney, and Ramzi Abadou in Support of Motion for Final Approval of Settlement and Plan of Allocation, and Motion for Approval of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Lead Counsel Declaration" or "Lead Counsel Decl."), the $19.7 million recovery is particularly significant in light of the substantial legal challenges the Settlement Class would face had the Action continued, in addition to real uncertainties surrounding Defendants' ability to fund a future settlement or judgment in an amount greater than the present Settlement Amount.

---

[1]   Capitalized terms not defined herein shall have those meanings ascribed to them in the Stipulation of Settlement dated February 1, 2013 (the "Stipulation").  Pursuant to the Stipulation, the $19.7 million was deposited into an escrow account on April 5, 2013, and has been earning interest for the benefit of the Settlement Class.

1    The $19.7 million recovery obtained for the Settlement Class would not have been

2    possible without the skill, tenacity and advocacy of Lead Counsel, who devoted over three years

3    to the investigation, vigorous prosecution and resolution of this Action on a wholly contingent

4    basis.  In doing so, Lead Counsel, among other things: (i) conducted an extensive factual

5    investigation into the alleged fraud, including a thorough review of publicly available

6    information regarding SunPower Corporation ("SunPower" or the "Company") such as the

7    Company's filings with the U.S. Securities and Exchange Commission ("SEC"), financial

8    statements, press releases and analysts' reports; (ii) conducted detailed investigative interviews

9    (and follow-up interviews in some cases) of potential witnesses, including former SunPower

10   employees located in the U.S. and the Philippines; (iii) prepared two comprehensive complaints

11   detailing Defendants' violations of the federal securities laws; (iv) conducted exhaustive research

12   of the law applicable to the Settlement Class's claims and the defenses thereto; (v) consulted

13   with various experts and consultants throughout the course of the Action; (vi) opposed two

14   rounds of briefing on Defendants' motions to dismiss and a motion for partial judgment on the

15   pleadings; (vii) engaged in extensive discovery with Defendants and third-parties, including

16   obtaining and reviewing over 2.5 million pages of documents, preparing for and taking a

17   comprehensive Rule 30(b)(6) deposition of SunPower's corporate designee on a variety of topics

18   relevant to Lead Plaintiffs' allegations, litigating various motions to compel, and preparing

19   Letters Rogatory in order to obtain discovery of certain potential witnesses in the Philippines;

20   (viii) prepared and filed a motion for class certification supported by a detailed expert report; (ix)

21   considered the various risks of continued litigation; and (x) engaged in protracted settlement

22   negotiations with Defendants' Counsel facilitated by an experienced mediator, Jed D. Melnick,

23   Esq. of JAMS, including a formal full day mediation session (which featured detailed

24   presentations by the parties on liability and damages), numerous telephonic mediation updates

25   and the exchange of lengthy mediation statements.  Lead Counsel Decl. at ¶¶11, 23-24, 41, 44,

26   62-67, 95-100, 125.

27   In light of the considerable risks here, the Settlement is a favorable recovery for the

28   Settlement Class.  Lead Plaintiffs faced substantial risks in establishing Defendants' liability –

particularly the element of scienter, given that the alleged accounting misconduct that precipitated SunPower's Restatement[2] occurred entirely within the Company's Philippines manufacturing subsidiary, by Philippine accountants at the direction of Philippine personnel and, as Defendants' would continue to argue going forward, was unknown to SunPower's top management located in the United States.  Lead Counsel Decl. at ¶139.  In further support of their argument, Defendants would point – as they repeatedly have – to the independent investigation commissioned by SunPower's Audit Committee which found that SunPower's senior management neither directed nor were aware of the accounting misconduct – conclusions which were further verified and accepted by the Company's outside auditing firm and the SEC which formally closed its investigation into the matter after determining not to initiate any enforcement action.  *Id.*  Lead Plaintiffs also faced serious risks in proving the Settlement Class's full amount of damages.  *Id.* at ¶11.

Aside from these legal hurdles, there was no insurance available to fund a settlement or satisfy a future judgment in this Action, and based on Lead Plaintiffs' independent review of the Company's publicly-filed financial statements, and retention of an investment banker as a valuation expert, it was Lead Plaintiffs' assessment that SunPower's cash position was diminishing, resulting in at least a serious question as to whether Lead Plaintiffs would be able to obtain a recovery for the Settlement Class in an amount materially greater than the Settlement Amount, even if successful through motion practice, trial, and appeals.  *Id.* at ¶¶103, 139.  In light of these risks, Lead Counsel respectfully submit that the Settlement is a testament to their hard work and the quality of legal representation.  Given the recovery obtained, the quantity of the work involved during the 3-plus year pendency of the Action, the skill and expertise required, and the substantial risks that Lead Counsel undertook in this Action, Lead Counsel respectfully submit that the 25% fee request (the Ninth Circuit's "benchmark" fee award) is fair

---

[2] On March 19, 2010, SunPower filed a restatement with the SEC which revealed that the Company's previously reported financial results had been misstated for fiscal year ended December 28, 2008, each quarterly period in 2008, and the first three quarters in fiscal year 2009, ended January 3, 2010 (hereinafter referred to as the "Restatement").  Lead Counsel Decl. at ¶18.

and reasonable.  This fee request is substantially less than the total lodestar value of the time that Lead Counsel have dedicated to the Action, representing a significant discount on the actual work performed by Lead Counsel through March 31, 2013 (*i.e.*, resulting in the application of a *negative* multiplier).  Lead Counsel Decl. at ¶¶126-27.  In addition, Lead Counsel submit that their request for reimbursement of Litigation Expenses in the amount of $483,859.23, is both fair and reasonable and should be approved by the Court.  *Id.* at ¶144.

This fee and expense request is made with the full approval of the Court-appointed Lead Plaintiffs, three sophisticated institutional investors who were directly involved in the prosecution and settlement of this Action.  *See* Joint Declaration of Lead Plaintiffs in Support of Final Approval of Settlement and Lead Counsel's Application for an Award of Attorneys' Fees and Litigation Expenses ("Lead Plaintiffs' Declaration" or "Lead Plaintiffs' Decl."), attached as Exhibit A to the Lead Counsel Declaration, at ¶11.  In addition, Notice of the proposed Settlement, including the maximum amount of attorneys' fees and Litigation Expenses that would be sought, was sent to over 89,000 potential Settlement Class Members and nominees.[3] The deadline to object to any aspect of the Settlement, including Lead Counsel's fee and expense request, expires on June 12, 2013.  To date, not a single objection has been filed challenging the maximum request for attorneys' fees and Litigation Expenses set forth in the Notice.

## II.   HISTORY OF THE ACTION

Lead Counsel respectfully refer the Court to the accompanying Lead Counsel Declaration for a detailed description of the procedural history of the Action, the nature of the claims asserted, the investigation and discovery undertaken, the Settling Parties' extensive motion

---

[3]   The Notice of Pendency of Class Action and Proposed Settlement, Final Approval Hearing, and Motion for Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") advises recipients that Lead Counsel will be applying to the Court for an award of attorneys' fees from the Settlement Fund in an amount not to exceed 25% of the Settlement Amount, net of Court-approved Litigation Expenses of Lead Counsel, and reimbursement of certain Litigation Expenses paid or incurred in connection with the prosecution and resolution of the Action in an amount not to exceed $900,000, plus interest earned on both amounts at the same rate and for the same period as earned by the Settlement Fund.  *See* Declaration of Stephanie A. Thurin Re Notice Dissemination and Publication (the "Thurin Decl."), submitted on behalf of the Court-authorized claims administrator for the Settlement, Epiq Systems, Inc. ("Epiq") attached to the Lead Counsel Decl. as Exhibit B, at ¶6.

practice, the negotiations and formal mediation process resulting in the Settlement and the risks and uncertainties involved in prosecuting this Action through trial.

## III.   THE REQUESTED ATTORNEYS' FEES ARE FAIR AND REASONABLE

### A.   A Reasonable Percentage Of The Fund Recovered Is An Appropriate Approach To Awarding Attorneys' Fees In Common Fund Cases

In common fund cases, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).  Courts have long held that "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Trustees v. Greenough*, 105 U.S. 527 (1881).

To recover fees from a common fund, attorneys must demonstrate that their services were of some benefit to the fund or enhanced the adversarial process.  The Ninth Circuit has specifically found that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994); *see In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).  The common fund doctrine is also designed to prevent the unjust enrichment of class members who benefit from a lawsuit without paying for it.  *Boeing*, 444 U.S. at 478; *see also Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *4 (D. Nev. Oct. 19, 2012) ("The common fund doctrine permits sharing of the burden of the litigation expenses among those who are benefited by the litigation.").  Fee awards in meritorious cases also promote private enforcement of, and compliance with, the federal securities laws which "seek to maintain public confidence in the marketplace.  They do so by deterring fraud, in part, through the availability of private securities fraud actions." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (citation omitted); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), "Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys'

fees awards in federal securities class actions." *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 586 (S.D.N.Y. 2008); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005).  By its plain terms, the "PSLRA limits any award of attorneys' fees and expenses to a 'reasonable percentage' of any recovery." *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 461 F. Supp. 2d 383, 385 (D. Md. 2006).  The Ninth Circuit has also expressly approved the percentage method which has become the prevailing method for awarding fees in common fund cases in this Circuit. *See Glass v. UBS Fin. Servs., Inc.*, 331 Fed. Appx. 452, 456-57 (9th Cir. 2009) (unpubl.) (affirming 25% fee award, overruling objection based on use of percentage-of-the-fund approach); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F. 2d 1301, 1311 (9th Cir. 1990); *Graulty*, 886 F.2d at 272.

The percentage-of-recovery method most fairly correlates the compensation of counsel with the benefit conferred upon the class.  *See OmniVision*, 559 F. Supp. 2d at 1046 (citing authorities that have "described thoroughly" the advantages of the percentage method).  First, it closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery.  Second, it decreases the burden imposed on courts by eliminating a detailed and time-consuming lodestar analysis and assuring the beneficiaries do not experience undue delay in receiving their share of the settlement. "Simply put, it is much easier and far less demanding of scarce judicial resources to calculate a percentage of the fund fee than to review hourly billing practices over a long, complex litigation."[4]  The percentage-of-recovery method is also consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery.  *See generally Mo. v. Jenkins*, 491 U.S. 274, 285 (1989).

---

[4]   *In re Copley Pharm., Inc.,* 1 F. Supp. 2d 1407, 1411 (D. Wyo. 1998); *see also In re WorldCom, Inc. Sec. Litig.*, 2004 WL 2591402, at *21 (S.D.N.Y. Nov. 12, 2004) ("[O]ne of the benefits of using the percentage-based method for assessing an award of attorneys' fees is that it relieves a court of the need to undertake a mind-numbing detailed review of time records and removes some of the incentive to pad those records…."); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1377-78 (N.D. Cal. 1989).

1

## B. <u>The Requested Fee Percentage Is Reasonable</u>

District courts in this Circuit have discretion to apply either the percentage-of-recovery method or lodestar method in determining attorneys' fees in a common fund case. *Wash. Pub.*, 19 F.3d at 1295; *see also Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *5 (N.D. Cal. Feb. 2, 2009). Although district courts retain discretion over which of the two methods to apply, the percentage-of-recovery method, as set forth above, is the prevailing method for awarding fees in common fund cases in this Circuit.[5] Courts may also perform a lodestar cross-check on the reasonableness of the requested fee. *See Vizcaino*, 290 F.3d at 1047 (affirming use of percentage method in calculating fees and application of lodestar method as a cross-check); *West v. Circle K Stores, Inc.*, 2006 U.S. Dist. LEXIS 76558, at *21-22 (E.D. Cal. Oct. 20, 2006) (applying percentage method with lodestar cross-check). No matter which method is chosen, the fees awarded must be fair and reasonable under the circumstances of a particular case. *See Wash. Pub.*, 19 F.3d at 1295.

Courts in this Circuit also consider the following five factors to determine whether a fee is fair and reasonable: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of the work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; and (5) awards made in similar cases.[6] Lead Counsel respectfully submit that an analysis of the foregoing *Vizcaino* factors, as well as an analysis under the percentage-of-recovery and lodestar methods, demonstrates that the present fee request is reasonable and appropriate and should be approved by the Court.

---

[5]  *See Ariz. Citrus*, at 1311 ("a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery"); *see also, e.g.,* Manual for Complex Litigation, Fourth, § 14.121 at 187 (2004) (commenting that "the vast majority of courts of appeals now permit or direct district courts to use the percentage-fee method in common fund cases").

[6]  *Vizcaino*, 290 F.3d at 1048-50. "The relative degree of importance to be attached to any particular factor will depend upon . . . the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Atlas v. Accredited Home Lenders Holding Co.*, 2009 WL 3698393, at *3 (S.D. Cal. Nov. 4, 2009).

C.      **Analyses Under The Percentage Method, The Lodestar Method And The *Vizcaino* Factors Supports Lead Counsel's Fee Request**

1.      **The Results Achieved When Viewed In Light Of The Risks Of Litigation**

Courts have consistently recognized that the settlement achieved is an important factor to be considered in determining an appropriate fee award. *See OmniVision*, 559 F. Supp. 2d at 1046; *UBS*, 331 Fed. Appx. at 456-57; *In re DJ Orthopedics, Inc. Sec. Litig.*, 2004 WL 1445101, at *7 (S.D. Cal. Jun. 21, 2004). Here, through their extensive efforts during the pendency of this Action as detailed at length in the Lead Counsel Declaration, Lead Counsel obtained a $19.7 million recovery for the Settlement Class. This Settlement confers a substantial and immediate benefit on the Settlement Class in contrast to the delays, costs and uncertainty of continued litigation. The $19.7 million recovery is even more significant given the various risks involved in the Action. As detailed below and in the Lead Counsel Declaration, this Settlement was obtained not only in the face of certain legal challenges, but also the additional uncertainties regarding Defendants' ability to fund a future settlement or satisfy a judgment for more than the Settlement Amount. Lead Plaintiffs, aided by Lead Counsel, carefully considered these risks when negotiating the present Settlement, and that such a result was secured in the face of such risks evinces the significance of the Settlement.

2.      **The Risks Of Litigation**[7]

In a case undertaken on a contingent fee basis, the risk of litigation is a key factor in determining an appropriate fee award. *See, e.g.*, *OmniVision*, 559 F. Supp. 2d at 1047; *Wash. Pub.*, 19 F.3d at 1299-301; *In re Heritage Bond Litig.*, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005) ("The risks assumed by Plaintiffs' Counsel, particularly the risk of non-payment or reimbursement of expenses is a factor in determining counsel's proper fee award."). While courts have always recognized that securities class actions carry significant risks, post-PSLRA

---

[7]   The risks of litigation are also detailed in the Lead Counsel Declaration (¶¶132-42) and discussed in Lead Plaintiffs' Notice of Motion and Motion for Final Approval of Class Action Settlement; Memorandum of Points and Authorities in Support Thereof ("Settlement Memorandum") submitted herewith.

1  rulings make it clear that the risk of no recovery has increased significantly since the PSLRA's

2  enactment.  *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)

3  ("securities actions have become more difficult from a plaintiff's perspective in the wake of the

4  PSLRA").   Had the Action proceeded, there existed real uncertainties concerning liability,

5  damages and ability of Lead Plaintiffs to recover on a substantial judgment.

6                          a)      **The Risks Of Proving Liability And Damages**

7              While Lead Counsel and Lead Plaintiffs continue to maintain that the claims have merit,

8  they also recognize that Defendants possessed compelling arguments against Lead Plaintiffs'

9  ability to prove Defendants' liability, particularly scienter and damages, at trial.   Lead Counsel

10  Decl. at ¶¶7, 139.

11             For example, Defendants vigorously asserted throughout the Action, and would continue

12  to assert if the Action continued, that they did not act with the requisite scienter and that their

13  actions did not cause the Settlement Class's losses.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361

14  F.3d 566, 576 (9th Cir. 2004).   With respect to scienter, Defendants would argue that the

15  accounting misconduct that led to the Company's Restatement occurred entirely in the

16  Philippines (*i.e.*, in SunPower's Philippine manufacturing subsidiary, by Philippine accountants

17  and at the direction of Philippine personnel) and was completely unknown to SunPower's top

18  management in the United States.  Lead Counsel Decl. at ¶139.  In further support, Defendants

19  would point to, among other things: (i) the independent investigation commissioned by

20  SunPower's Audit Committee (at a cost of more than $8 million) which concluded that

21  SunPower's senior management neither directed nor were aware of the accounting misconduct,

22  and (ii) the SEC's decision not to initiate any enforcement action in connection with this matter.

23  *Id*.   Additionally, at the time the Settlement was reached, Defendants' motion for partial

24  judgment on the pleadings was *sub judice*, and if successful, could have substantially narrowed

25  the scope of the case.  In their motion, Defendants argued that they were entitled to judgment on

26  Lead Plaintiffs' claims based on forward-looking statements in the Complaint.   Specifically,

27  Defendants argued that the purported forward-looking statements were protected by the

28  PSLRA's safe harbor provisions and that Lead Plaintiffs failed to plead that the forward-looking

statements were false.  Defendants further argued that the alleged false statements were in fact "statements of corporate optimism" and not actionable as a matter of law.  *Id*. at ¶89.

Lead Plaintiffs would also face substantial challenges in establishing the full amount of the Settlement Class's damages.[8]  Lead Counsel Decl. at ¶5.  Defendants raised certain defenses to damages in their Answer to the Complaint, including *inter alia*, that: (i) Lead Plaintiffs' damages, if any, resulted from the acts and omissions of third parties – constituting intervening or superseding causes of harm; (ii) Lead Plaintiffs' damages, if any, are subject to offset in the amount of any benefit received by Lead Plaintiffs through their investments, including but not limited to any tax, insurance, or indemnification benefit; (iii) Lead Plaintiffs suffered no harm and incurred no damages due to the fact that their investments in SunPower Securities were hedged; and (iv) Lead Plaintiffs failed to mitigate, reduce, or otherwise avoid the damages, and are therefore barred from recovering such damages, if any.[9]  *Id*. at ¶103(c).

Indeed, the Settling Parties' arguments on causation and damages would have ultimately hinged upon extensive expert discovery and testimony.  As the Court is doubtless aware, one should never comfortably predict how a jury or court will ultimately weigh the testimony of competing experts.  *See In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("establishing damages at trial would lead to a 'battle of experts'…with no guarantee whom the jury would believe").  Lead Counsel have sufficient experience to recognize that a trier of fact could be swayed by Defendants' expert, who would undoubtedly seek to minimize or eliminate the amount of the Settlement Class's damages by showing that the losses were attributable to factors other than the alleged misstatements and omissions, potentially limiting substantially, or

---

[8]  Lead Plaintiffs would be required to prove that the alleged false and misleading statements attributed to Defendants artificially inflated the price of SunPower publically traded securities (*i.e.*, SunPower's Class A common stock, Class B common stock and 4.75% Senior Convertible Debentures (collectively, the "SunPower Securities")) during the Settlement Class Period, and that once these allegedly false statements were corrected, the prices of SunPower Securities dropped, damaging Lead Plaintiffs and the Settlement Class.  *See Dura*, 544 U.S. at 341-42. Lead Plaintiffs would also be required to prove the amount of the artificial inflation.

[9]  *See* Defendants' Answer to First Amended Consolidated Class Action Complaint filed January 27, 2012 (ECF No. 182).

completely, Lead Plaintiffs' ability to prove damages.  Lead Counsel Decl. at ¶¶101, 102(d), 136, 140.

### b)     Ability To Pay Considerations

In addition to the risks of proving liability and damages set forth above, Lead Plaintiff assessed that there were ability to pay issues.  Lead Counsel Decl. at ¶¶7, 10, 79, 98, 102(f), 138. During the Settling Parties' settlement negotiations, Defendants represented that there was no insurance available to fund a settlement or satisfy a future judgment in the Action, and it was Lead Plaintiffs' assessment based on review of the Company's publicly-filed financial position that SunPower's cash position was diminishing.  *Id.* at ¶¶7, 103(f), 139.  In addition, Lead Plaintiffs retained an investment banker to serve as a valuation expert regarding SunPower's financial condition.  *Id.* at ¶¶24, 102(f).  Lead Plaintiffs were also mindful of the challenges facing the solar industry.  Thus, Lead Plaintiffs knew that, even if they were entirely successful, even after trial and appeals, they may actually recover substantially less than the amount obtained in this Settlement for the benefit of the Settlement Class, or nothing at all.  *See, e.g.*, *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1175-76 (S.D. Cal. 2007) ("Risk is also a relevant factor in addressing the proposed fee award….[T]his case involved complex issues of both fact and law, which were highly disputed by Parties. Additionally, Plaintiffs claim that prolonging a resolution of the case would increase the risk that the funds available for a judgment would be depleted due to litigation expenses.").

These risks facing Lead Plaintiffs, the Settlement Class – and Lead Counsel – further support the requested fee.

### 3.     The Skill Required And The Quality Of Representation

The skill and quality of legal counsel also support the requested fee award.  *See Mark v. Valley Ins. Co.*, 2004 U.S. Dist. LEXIS 20602, at *4 (D. Or. Oct. 6, 2004).  "The 'prosecution and management of a complex national class action requires unique legal skills and abilities.' This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss."  *OmniVision*, 559 F. Supp. 2d at 1047; *see*

1   *also Heritage Bond*, 2005 WL 1594403, at *12.  Lead Counsel are among the nation's most

2   experienced and skilled practitioners in the securities litigation field, and each firm has

3   successfully litigated these types of cases on behalf of major institutional investors throughout

4   the country – including within this Circuit.[10]  Given the complexity of the issues presented in this

5   Action, it is Lead Counsel's opinion that highly skilled counsel was required to successfully

6   represent the Settlement Class and obtain such a favorable recovery.

7           From the outset, Lead Counsel engaged in a concerted effort to obtain the maximum

8   recovery for the Settlement Class.  As detailed in the Lead Counsel Declaration, through Lead

9   Counsel's persistent work, Lead Plaintiffs were able to plead detailed allegations based on their

10  extensive investigation and develop a convincing case, including by obtaining and reviewing

11  millions of pages of documents from Defendants and third-parties and consulting extensively

12  with experts and consultants at various stages throughout the Action.  Lead Counsel's extensive

13  efforts and skill leading to the Settlement strongly support the requested percentage fee.

14          The quality of opposing counsel is also important in evaluating the quality of the services

15  rendered.  *See In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal.

16  1977) (recognizing that "plaintiffs' attorneys in this class action have been up against established

17  and skillful defense lawyers, and should be compensated accordingly").  In this Action, the

18  SunPower Defendants are represented by a highly experienced and skilled defense firm,

19

20

21

22  [10] *See, e.g., In re McKesson HBOC, Inc. Sec. Litig.*, 99-CV-20743 RMW (N.D. Cal.) (successful recovery of over $1.04 billion); *In re Maxim Integrated Prods., Inc. Sec. Litig.*, 08-00832-JW

23  (N.D. Cal.) ($173 million); *In re Connetics Sec. Litig.*, 07-02940 SI (N.D. Cal.) ($12.75 million); *In re New Century*, 07-cv-00931 (FMOx) (C.D. Cal.) ($125 million); *In re*

24  *Int'l Rectifier Corp. Sec. Litig.*, 07-02544-JFW (C.D. Cal.) ($90 million); *In re Gemstar-TV Guide Int'l Inc. Sec. Litig.*, 02-CV-2775-MRP (C.D. Cal.) ($92.5 million); *In re Wells Fargo*

25  *Mortgage-Backed Certificates Litig.*, 09-cv-01376-LHK (N.D. Cal.) ($125 million); *In re Tenet Healthcare Corp. Sec. Litig.*, CV 02-8462-RSWL (C.D. Cal.) ($281.5 million); *In re: Brocade*

26  *Sec. Litig.*, 05-CV-02042-CRB (N.D. Cal.) ($160 million); *In re Marvell Tech. Group Ltd. Sec. Litig.*, 06-cv-6286 RMW (N.D. Cal.) ($72 million); *In re 3Com Sec. Litig.*, 97-cv-21083 (N.D.

27  Cal.) ($259 million); *In re Informix Corp. Sec. Litig.*, 97-cv-1289 (N.D. Cal.) ($136.5 million); *see also* Firm Resumes, previously submitted as ECF Nos. 32-5, 32-6 and 32-7.

28

1  Morrison & Foerster LLP, which spared no effort in the defense of its clients' claims.[11]

2  Defendants' Counsel vigorously defended their clients and, in the face of this formidable

3  opposition, Lead Counsel developed their case so as to persuade Defendants to agree to a

4  favorable financial recovery for the Settlement Class.

### 4.       The Contingent Nature Of The Fee And The Financial Burden Carried By Lead Counsel

7          It is an established practice in the private legal market to reward attorneys for taking the

8  risk of non-payment by paying them a premium over their normal hourly rates for winning

9  contingency cases.   Contingent fees that may far exceed the market value of the services

10  rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of

11  assuring competent representation for plaintiffs who could not afford to pay on an hourly basis

12  regardless of whether they win or lose.[12]

13          Here, Lead Counsel have received no compensation during the course of this 3-plus year

14  litigation – investing, through March 31, 2013, a total of 15,940.44 hours for an aggregate

15  lodestar of $8,301,244.25 (nearly twice the amount of the fee request), and expending hundreds

16  of thousands of dollars to pay for expenses incurred in connection with prosecuting and resolving

17  this case.[13]   Moreover, although not included in the lodestar figure, Lead Counsel have expended

---

[11]   Additional defendants in this Action were also represented by highly experienced and skilled defense firms - the underwriter defendants were represented by Shearman & Sterling LLP, and defendant Trinidad was represented by Sidley Austin, LLP.  Lead Counsel Decl. at ¶131.

[12]   *Wash. Pub.*, 19 F. 3d at 1299-300.  *See also IBEW*, 2012 WL 5199742, at *4 ("Plaintiffs' counsel shouldered the risk of non-payment by taking the class action suit on a contingency fee basis.  'It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.'") (citation omitted); *Immune Response*, 497 F. Supp. 2d at 175-76; *OmniVision*, 559 F. Supp. 2d at 1047.

[13]   *See* Lead Counsel Decl. at ¶133; *see also* Declaration of David R. Stickney of Bernstein Litowitz Berger & Grossmann LLP in Support of Lead Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Stickney Decl."), Declaration of Laurence D. King of Kaplan Fox & Kilsheimer, LLP in Support of Lead Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "King Decl."), and Declaration of David Kessler of Kessler Topaz Meltzer & Check, LLP in Support of Lead Counsel's Application for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Kessler Decl."), attached as Exhibits C-1 through C-3 to the Lead Counsel Declaration, respectively.

1  additional time in connection with the Settlement since March 31, 2013, and will continue to

2  perform legal work on behalf of the Settlement Class and spend additional resources assisting

3  Settlement Class Members with their Proofs of Claim and related inquiries and working with the

4  claims administrator to ensure the smooth progression of claims processing.  Lead Counsel Decl.

5  at ¶127 n.15.

6       In addition, Lead Counsel have borne all the risk of this Action − including the risks of

7  surviving dispositive motions, obtaining class certification, adequately pleading liability and

8  litigating the Action through an appeal.  Lead Counsel understood from the outset that they were

9  embarking on a complex, expensive and lengthy litigation, which would require the investment

10  of hundreds of thousands of dollars and thousands of hours of attorney time, with no guarantee

11  of ever being compensated.  Lead Counsel also understood that the defendants would (and, in

12  fact, did) retain large, highly experienced corporate defense firms to mount strong defenses.  In

13  undertaking this risk, Lead Counsel were obligated to assure that sufficient resources were

14  dedicated to the prosecution of this Action.  Lead Counsel Decl. at ¶133.

15       "[T]he risk of non-payment in complex cases [such as this] is very real."  *In re Veeco*

16  *Instruments Sec. Litig.*, 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007).  The commencement

17  of a class action is no guarantee of success; these cases are not always settled, nor are plaintiffs'

18  lawyers always successful.  Indeed, there have been numerous hard-fought lawsuits where,

19  because of discovery of facts unknown when the case was commenced, or changes in the law

20  during the pendency of the case, or a decision of a judge or jury following a trial on the merits,

21  excellent professional efforts of members of the plaintiffs' bar produced no fee to plaintiffs'

22  counsel.[14]  Thus, there existed a real risk that Lead Counsel (and the Settlement Class) would

23

24  [14]  *See, e.g., In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501 (2d Cir. 2010) (affirming

25  summary judgment in favor of defendant on loss causation grounds); *see also In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants'

26  judgment as a matter of law following plaintiff verdict); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (after the jury rendered a verdict for plaintiffs after an

27  extended trial, the court overturned the verdict); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm

28  reversed on appeal); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996)

1   invest substantial resources and efforts and receive nothing.  Any fee award has always been at

2   risk, and completely contingent on the result achieved and on this Court's discretion in awarding

3   fees and expenses.

4                        **5.    <u>Awards In Similar Cases</u>**

5          The Ninth Circuit recognizes 25% of a fund recovered for the benefit of a class as the

6   "benchmark" for fee awards in common fund cases.  *See UBS,* 331 Fed. Appx. at 457*; Hanlon v.*

7   *Chrysler Corp.,* 150 F.3d 1011, 1029 (9th Cir. 1998) (referring to 25% in attorneys' fees as a

8   "benchmark award").   Indeed, "in most common fund cases, the award exceeds that

9   benchmark."[15]

10         Ultimately, ample precedent exists in this Circuit for granting fees to plaintiff's counsel

11  that are equal to or greater than the fees requested herein which confirms the requested 25% fee's

12  reasonableness.  *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000)

13  (affirming award of one-third of the total recovery); *In re Webkinz Antitrust Litig.,* Case No. M

14  08-cv-01987-RS, ECF No. 159 (N.D. Cal. Sept. 17, 2012) (approving 30% fee award); *Johnson*

15  *v. Aljian*, Case No. CV 03-5986 DMG (PJWx), ECF No. 283 (C.D. Cal. Sept. 16, 2010)

16  (approving 33⅓% fee award); *In re Wireless Facilities, Inc. Sec. Litig.*, Master File. No.

17  04cv1589 NLS, ECF No. 192 (S.D. Cal. Jan. 13, 2009) (approving 25% fee award); *Jenson v.*

18  *First Trust Corp.*, 2008 U.S. Dist. LEXIS 45078, at *10 (C.D. Cal. June 9, 2008) (approving

19  33% fee award); *In re Avista Corp. Sec. Litig.*, No. CV-02-0328-FVS, ECF No. 456 (E.D. Wash.

20  Dec. 20, 2007) (approving 30% fee award)*; Immune Response*, 497 F. Supp. 2d at 1172

21  (approving 25% award); *In re CV Therapeutics, Inc., Sec. Litig*., 2007 WL 1033478, at *1 (N.D.

22  Cal. Apr. 4, 2007) (approving 30% fee award); *In re Amerco Sec. Litig.*, No. Civ-04-2182-PHX-

23  ─────────────────────────────────────────

24  (overturning securities class action jury verdict for plaintiffs case filed in 1973 and tried in
     1988).

25  [15]   *OmniVision*, 559 F. Supp. 2d at 1047-48 (approving fee award of 28%); *see also Vizcaino*,
     290 F. 3d at 1048-50 (affirming fee award of 28%); *Heritage Bond*, 2005 WL 1594403, at *18
26  n.12 (awarding fee award of 33⅓% because "courts in this circuit, as well as other circuits, have
     awarded attorneys' fees of 30% or more in complex class actions"); *see IBEW*, 2012 WL
27  5199742, at *2 ("the benchmark should be thirty percent rather than the twenty-five percent
     recommended"); *Immune Response*, 497 F. Supp. 2d at 1175-76 ("a proposed fee of 25% is
28  consistent, if not below, the average award in similar complex actions").

1    RJB, ECF No. 290 (D. Ariz. Nov. 3, 2006) (approving 30% fee award); *Circle K Stores*, 2006

2    U.S. Dist. LEXIS 76558, at *29 (approving 25% fee award); *In re Ligand Sec. Litig.*, Master File

3    No. 04-CV-1620-DMS (CAB), ECF No. 98 (S.D. Cal. Oct. 16, 2006) (approving 25% fee

4    award).  Lead Counsel's present fee request is therefore consistent with, and in many cases lower

5    than, fee award percentages granted in this Circuit.

6                        **6.      An Analysis Of Lead Counsel's**
                                  <u>**Lodestar Supports The Requested Fee Award**</u>
7

8           A cross-check of the requested fee with Lead Counsel's lodestar further demonstrates the

9    proposed fee's reasonableness.  *See Vizcaino*, 290 F.3d at 1048-50; *In re Petroleum Prods.*

10   *Antitrust Litig.*, 109 F.3d 602 (9th Cir. 1997); *Heritage Bond*, 2005 WL 1594403, at *22.  As

11   detailed herein and in the accompanying Lead Counsel Declaration, the work undertaken by

12   Lead Counsel wholly supports the Court's approval of the present fee request.  Through

13   March 31, 2013, Lead Counsel devoted 15,940.44 hours to this Action, amounting to

14   $8,301,244.25 in billable time.  *See* Ex. C-4 to Lead Counsel Decl.; *see also* Stickney Decl. at

15   Ex. 1; King Decl. at Ex. 1; and Kessler Decl. at Ex. 1.  As a result, Lead Counsel's fee request of

16   $4,804,035.19 (25% of the $19.7 million Settlement Amount, net of Court-approved Litigation

17   Expenses) amounts to substantially less than the straight time Lead Counsel spent on this case,

18   without any augmentation.  In other words, Lead Counsel's request for attorneys' fees reflects a

19   substantial discount on the time Lead Counsel actually spent litigating the matter and results in a

20   *negative* multiplier.  Lead Counsel Decl. at ¶15, 126-27.[16]  This fact militates in favor of the

21   reasonableness of the present fee request, as courts have recognized that the reasonableness of

22

23   ─────────────────────

24   [16]   As courts in this jurisdiction often award multipliers in the 1-4 range, this Court should find
     that the lodestar cross-check underscores the reasonableness of the fee application.  *See, e.g.*,
25   *Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055, at *1-2 (N.D. Cal. June 30, 2011)
     (awarding 25% fee, representing a multiplier of 4.3); *In re Brocade Sec. Litig.*, Consolidated
26   Case No. 05-CV-02042-CRB, slip op at 13 (N.D. Cal. Jan. 26, 2009) (awarding 25% fee
     representing a multiplier of 3.5); *In re Broadcom Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS
27   41993, at *16 (C.D. Cal. Sept. 12, 2005) (applying 1.64 multiplier to current billing rates and
     noting that "[t]his multiplier is in the bottom range approved by courts"); *In re Veritas Software*
28   *Corp. Sec. Litig.*, 2005 WL 3096079, at *13 (N.D. Cal. Nov. 15, 2005) (applying 4.0 multiplier
     where motion to dismiss was pending and no formal discovery taken).

1    the fee request under the percentage method "is reinforced by evidence that the percentage fee

2    would represent a negative multiplier of the lodestar." *In re Blech Sec. Litig.*, 2000 WL 661680,

3    at *5 (S.D.N.Y. May 19, 2000); *see In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at

4    *16 (N.D. Cal. Nov. 26, 2007) (negative multiplier suggests a percentage-based award is fair and

5    reasonable).

6    **D.    The Reaction Of The Settlement Class To Date Supports The Fee Request**

7           This fee and expense request is made with the full approval of the Court-appointed Lead

8    Plaintiffs, three sophisticated institutional investors who were directly involved in the

9    prosecution and settlement of this Action. *See* Lead Plaintiffs' Decl. at ¶10. In addition, the

10   reaction to date of the other members of the Settlement Class supports the fee request. *See Red*

11   *Door Salons*, 2009 WL 248367, at *4; *Immune Response*, 497 F. Supp. 2d at 1177. Here,

12   beginning on April 8, 2013, notice of the proposed Settlement was mailed to over 89,000

13   potential Settlement Class Members and nominees, advising that Lead Counsel would be

14   requesting an award of attorneys' fees from the Settlement Fund in an amount not to exceed 25%

15   of the Settlement Amount, net of Court-approved Litigation Expenses of Lead Counsel, and

16   reimbursement of certain Litigation Expenses paid or incurred in connection with the prosecution

17   and resolution of the Action in an amount not to exceed $900,000, plus interest earned on both

18   amounts at the same rate and for the same period as earned by the Settlement Fund. Lead

19   Counsel Decl. at ¶¶106, 143. In addition, the Summary Notice was published in the national

20   edition of *Investor's Business Daily* and transmitted over the *PR Newswire*. *Id*. at ¶143; *see also*

21   Thurin Decl. at ¶13. While the deadline for filing an objection to Lead Counsel's fee request

22   does not expire until June 12, 2013, to date, no Settlement Class Member has filed an objection

23   to the maximum amount of attorneys' fees and Litigation Expenses set forth in the Notice. Lead

24   Counsel Decl. at ¶143.[17]

25

26

27
     _____

28   [17]   As stated above, if any objections are received following this submission, Lead Counsel will
     address them in their reply brief to be filed with the Court on or before June 26, 2013.

## IV.    LEAD COUNSEL ARE ENTITLED TO REIMBURSEMENT FOR THEIR REASONABLE LITIGATION EXPENSES

Lead Counsel also request reimbursement of Litigation Expenses in the amount of $483,859.23, incurred in connection with the prosecution and resolution of the Action on behalf of the Settlement Class, plus interest on such amount at the same rate as earned by the Settlement Fund.  Lead Counsel Decl. at ¶145.  Attorneys who create a common fund for the benefit of a class are entitled to be reimbursed for their out-of-pocket expenses incurred in creating the fund so long as the submitted expenses are reasonable, necessary and directly related to the prosecution of the action.  *See OmniVision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").  "Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement."  *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995).

From the beginning of the case, Lead Counsel were aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the Action was successfully resolved.  Lead Counsel Decl. at ¶146.  Lead Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds advanced to prosecute the Action.  *Id*.  Thus, Lead Counsel were motivated to, and did, take significant steps to minimize expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the Action.  *Id*.

The types of expenses for which Lead Counsel seek reimbursement are necessarily incurred in litigation and routinely charged to clients billed by the hour.  Lead Counsel Decl. at ¶147.  As set forth in the sworn declarations submitted by Lead Counsel, these expenses include, among others, payments to experts and consultants; document management related services; computer research devoted to this case; costs incurred for travel; charges for photocopying; telephone, postal and express mail charges; and similar case-related costs.  *Id*. at ¶¶148-52; *see also* Stickney Decl. at ¶7, Ex. 2; King Decl. at ¶7, Ex. 2; Kessler Decl. at ¶7, Exs. 2-3.  These

1   expense items are billed separately by Lead Counsel, and such charges are not duplicated in their

2   billing rates. *Id.*[18]

3          As detailed in the Stickney, King, and Kessler Declarations, a large portion of Lead

4   Counsel's expenses reflect: (i) payments to experts and consultants (*i.e.*, $233,879.27, or nearly

5   half of the total amount of expenses); (ii) document management system and database costs[19]

6   (*i.e.*, $25,964.55); (iii) online legal and factual research (*e.g.*, *LexisNexis* and *Westlaw*) vital to

7   Lead Plaintiffs' investigation and analysis of the Settlement Class's claims (*i.e.*, $110,500.00);

8   (iv) travel (*i.e.*, $37,848.66); and (v) outside international investigative services (*i.e.,* 23,614.99).

9   Lead Counsel Decl. at ¶¶148-52; *see also* Stickney Decl. at Ex. 2; King Decl. at Ex. 2; Kessler

10  Decl. at Exs. 2-3.[20]   These expenses were critical to Lead Counsel's success in achieving the

11  proposed Settlement.   Lead Counsel Decl. at ¶154.   To date, no objections have been received

12  regarding the maximum expense number set forth in the Notice.   Lead Counsel Decl. at ¶155.

13  Accordingly, Lead Counsel respectfully request reimbursement of their out-of-pocket or incurred

14  expenses in the amount of $483,859.23, plus interest.

15          \\

16          \\

17          \\

18          \\

19          \\

20

21  [18]   Lead Counsel maintained strict control over the Litigation Expenses.   Indeed, many of the

22  Litigation Expenses were paid out of a litigation fund created by Lead Counsel and maintained
    by KTMC (the "Litigation Fund").   Lead Counsel collectively contributed $246,000.00 to the

23  Litigation Fund.   A description of the payments from the Litigation Fund by category is set forth
    in the individual firm declaration submitted on behalf of KTMC (Exhibit C-2).   Currently, a

24  balance of $3,428.70 remains in the Litigation Fund.   This amount has been credited to KTMC
    and removed from its expense request so as to avoid any double counting of expenditures.   *See*

25  KTMC Decl. at ¶9.

26  [19]   A document management system and database was necessary in order to effectively and
    efficiently review and analyze the more than 2.5 million pages of documents produced by

27  Defendants and third-parties.   Lead Counsel Decl. at ¶149.

28  [20]   *See* Exhibit C-4 to the Lead Counsel Declaration for a summary of Lead Counsel's expenses.

1    **V.    <u>CONCLUSION</u>**

2          With no assurance of success and in the face of substantial risks, Lead Plaintiffs and Lead

3    Counsel pursued the Action and have successfully obtained a $19.7 million cash recovery for the

4    benefit of the Settlement Class.   For the reasons set forth herein, Lead Counsel respectfully

5    request that the Court award: (i) attorneys' fees of 25% of the Settlement Amount, net of Court-

6    approved Litigation Expenses, plus interest; and (ii) reimbursement of $483,859.23 in Litigation

7    Expenses incurred by Lead Counsel in connection with the prosecution and resolution of this

8    Action, plus interest.

9    Dated:  May 15, 2013                      Respectfully Submitted,

10                                             BERNSTEIN LITOWITZ BERGER
11                                                & GROSSMANN LLP

12                                                  */s/ David R. Stickney*
                                             DAVID R. STICKNEY
13

14                                           DAVID R. STICKNEY
                                             NIKI L. MENDOZA
15                                           BENJAMIN GALDSTON
                                             12481 High Bluff Drive, Suite 300
16                                           San Diego, CA 92130
                                             Tel:    (858) 793-0070
17                                           Fax:    (858) 793-0323

18                                           *Attorneys for Lead Plaintiffs Arkansas*
19                                           *Teacher Retirement System, Första AP-*
                                             *fonden and Danske Invest Management A/S*
20

21                                           KAPLAN FOX & KILSHEIMER LLP
                                             LAURENCE D. KING
22                                           MARIO M. CHOI
                                             350 Sansome Street, Suite 400
23                                           San Francisco, CA 94104
                                             Tel:    (415) 772-4700
24                                           Fax:    (415) 772-4707

25                                                        -and-

26
                                             FREDERIC S. FOX (*pro hac vice*)
27                                           JOEL B. STRAUSS (*pro hac vice*)
                                             CHRISTINE M. FOX (*pro hac vice*)
28                                           850 Third Avenue, 14th Floor

New York, NY 10022
Tel:    (212) 687-1980
Fax:    (212) 687-7714
ffox@kaplanfox.com
jstrauss@kaplanfox.com
cfox@kaplanfox.com

*Attorneys for Lead Plaintiffs Arkansas
Teacher Retirement System, Första AP-
fonden and Danske Invest Management A/S*

KESSLER TOPAZ MELTZER
    & CHECK LLP
RAMZI ABADOU
ELI R. GREENSTEIN
STACEY KAPLAN
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:    (415) 400-3000
Fax:    (415) 400-3001

-and-

DARREN J. CHECK
JENNIFER L. ENCK
280 King of Prussia Road
Radnor, PA 19087
Tel:    (610) 667-7706
Fax:    (610) 667-7056
dcheck@ktmc.com
jenck@ktmc.com

*Attorneys for Lead Plaintiffs Arkansas
Teacher Retirement System, Första AP-
fonden and Danske Invest Management A/S,
and additional Plaintiff Bobby J. Reynolds*